# EXHIBIT 7

Excerpt of Casino

Control Act

# EXHIBIT 7

**Casino Control Act**
**(CHAPTER 33A)**

**Table of Contents**

**Long Title**

**Part I PRELIMINARY**

1 Short title and commencement

2 Interpretation

3 Meaning of "associate"

4 Minister may revoke order for designated site or cancel casino licence in public interest

**Part II CASINO REGULATORY AUTHORITY OF SINGAPORE**

**Division 1 — Establishment, incorporation and constitution of Authority**

5 Establishment and incorporation of Casino Regulatory Authority of Singapore

6 Common seal

7 Constitution of Authority

**Division 2 — Functions, duties and powers of Authority**

8 Objects of Authority

9 Functions and duties of Authority

10 Powers of Authority

11 Directions by Minister

12 Appointment of committees and delegation of powers

**Division 3 — Provisions relating to staff and inspectors**

13 Appointment of Chief Executive and other employees, etc.

14 Functions of inspectors

15 Powers of inspectors

16 Power to require names and addresses

17 Seizure and forfeiture of equipment, etc.

**Division 4 — Financial provisions**

18 Funds and property of Authority

19 Financial year

20 Moneys recovered or collected by Authority

21 Grants-in-aid

22 Power to borrow

23 Issue of shares, etc.

24 Bank account

25 Application of moneys

26 Power of investment

27 (Repealed)

28 (Repealed)

29 (Repealed)

30 (Repealed)

**Division 5 — General**

31 (Repealed)

32 Symbol or representation of Authority

**Division 6 — Transfer of property, assets, liabilities and employees**

33 Transfer to Authority of property, assets and liabilities

34 Transfer of employees

35 Service rights, etc., of transferred employees to be preserved

36 Existing contracts

37 Pending proceedings

38 Continuation and completion of disciplinary proceedings

39 Misconduct or neglect of duty by employee before transfer

**Part III LICENSING OF CASINOS**

40 Certain contracts in relation to gaming valid and enforceable

41 Two casinos only

42 Main shareholder of casino operator not to divest stake or participate in other casino for certain period

43 Operating casino without casino licence prohibited

44 Application for casino licence

45 Matters to be considered in determining applications

45A Evaluation panel to form opinion on integrated resort

46 Investigation of application

47 Authority may require further information, etc.

48 Updating of application

49 Grant or refusal of casino licence

49A Casino licence fee

49B Renewal of casino licence

50 Amendment of conditions

51 Authority to define casino premises

52 Duration of casino licence

53 Transfer, mortgage, etc., of casino licence

54 Disciplinary action against casino operator

55 Surrender of casino licence

56 Appointment of manager if casino licence cancelled, surrendered or suspended

## Part IV SUPERVISION AND CONTROL OF CASINO OPERATORS

## Division 1 — Directions, investigations, etc.

57 Directions to casino operator

58 General investigations

59 Regular investigations of casino operator's suitability, etc.

60 Casino operator to provide information

61 Change in situation of casino operator

62 Change in situation of associate

63 On-going monitoring of associates and others

**Division 2 — Controlled shareholdings**

64 Application and interpretation of this Division

65 Control of substantial shareholdings in corporation with casino licence

66 Control of shareholdings and voting power in corporation with casino licence

67 Approval of applications

68 Power to exempt

69 Objection to existing control of casino operator

70 Power to make directions

71 Offences, penalties and defences

**Division 3 — Contracts**

72 Application and interpretation of this Division

73 Requirements for controlled contracts

74 Notifiable contracts

75 Parties to contract to provide information

000881

76 Notice to show cause why controlled contract or notifiable contract should not be terminated

77 Effect of suspension or termination of contract

78 No effect to be given to suspended or terminated contract

## Part V SPECIAL EMPLOYEES

79 Interpretation of this Part

80 Special employees to be licensed

81 Application for special employee licence

82 Direction to apply for special employee licence

83 Updating of application for special employee licence

84 Authority may require further information

85 Investigation and determination of application

86 Conditions of special employee licence

87 Identification

88 Provisional licences

89 Duration of special employee licence

90 Renewal of special employee licence

91 Variation of special employee licence

92 Loss, etc., of special employee licence

93 Cancellation, etc., of special employee licence

000882

93A Suspension of licence pending disciplinary action

94 Effect, etc., of suspension

95 Return of special employee licence on suspension or cancellation

96 Termination of employment on cancellation of special employee licence

97 Casino operator to provide information relating to employees

97A Special employees to provide information, etc., to Authority

98 Change in situation of licensee

**Part VI CASINO OPERATIONS**

**Division 1 — Casino layout, games, gaming machines, etc.**

99 Casino layout to comply with prescribed requirements

100 Approval of games and rules for games

101 Directions as to games not to be played

102 Approval of gaming equipment

103 Gaming machines in casinos

103A Approved manufacturers and approved suppliers of gaming machines and approved test service providers for gaming equipment

104 Simulated gaming

**Division 2 — Gaming measures**

105 Linked jackpot arrangement unlawful without approval

106 Assistance to patrons

107 Operation of security equipment, etc.

108 Credit, etc.

109 Automatic teller machines prohibited within casino premises

110 Prohibited casino marketing arrangements

110A Persons required to be licensed as international market agent or international market agent representative

110B Supervision and control of international market agents and international market agent representatives

110C Authority may suspend or cancel international market agent licence or international market agent representative licence in public interest

**Division 3 — Disputes between casino operator and patron**

111 Resolution of dispute as to winnings, losses or manner in which game conducted

112 Reconsideration of inspector's decision

113 Payment of claim after decision

114 Appeal to Authority

**Division 4 — Entry to casino premises**

115 Right of entry to casino premises

116 Entry levy

117 Supplementary provisions relating to entry levy

118 Entry of inspector to casino premises

119 Entry of police officer, etc., to casino premises

120 Exclusion orders by casino operator

121 Exclusion orders by Authority

122 Exclusion orders by Commissioner of Police

123 Duration of exclusion orders

124 List of persons excluded by casino operator

125 Excluded person not to enter casino premises

126 Casino operator to bar excluded persons from casino premises

127 Removal of excluded persons from casino premises

128 Forfeiture of winnings

**Division 5 — Prohibited acts within casino premises**

129 Conduct within casino premises

**Part VII MINORS**

130 Interpretation of this Part

131 Part applies only during hours of operation of casino

132 Minors not to enter casino premises

133 Casino operator to bar minors from casino premises

134 Entry of minors to be prevented

135 Proof of age may be required

136 Minor using false evidence of age

137 Notices to be displayed

000885

**Part VIII CASINO INTERNAL CONTROLS**

138 Approved system of controls to be implemented

139 Customer due diligence measures to combat money laundering and terrorism financing

140 Banking

141 Accounts to be kept

142 Statement of accounts

143 Keeping of records

144 Audit

144A Special audit

145 Submission of reports

**Part IX CASINO TAX**

146 Payment of casino tax

146A Responsibility of Comptroller

146B Power of Comptroller to assess tax due

146C Revisions and objections

146D Right of appeal

146E Time within which payment is to be made

147 Penalty for late payment

148 Recovery of tax and penalty

148A Remission of tax

149 Repayment of tax

149A Penalty for incorrect return

150 Evasion of tax

150A Power to appoint agent for recovery of tax

151 Power of Comptroller to obtain information

151A Official secrecy for tax-related information

152 Composition of offences by Comptroller

**Part X NATIONAL COUNCIL ON PROBLEM GAMBLING**

**Division 1 — Interpretation**

153 Interpretation of this Part

**Division 2 — Establishment and functions of National Council on Problem Gambling**

154 Establishment of Council

155 Functions of Council

156 Validity of Council's actions

**Division 3 — Family exclusion orders, visit limits and other exclusion orders**

157 Committee of Assessors for making exclusion orders and visit limits

158 Committee to hear and determine applications for family exclusion orders and visit limits

159 Application for family exclusion order

000887

160 Application by or on behalf of person below 21 years

161 Application on behalf of incapacitated applicant

162 Grounds for making family exclusion order

163 Terms of family exclusion order

163A Visit limit application by family member

164 Provisional family exclusion order

165 Committee may make exclusion order or visit limit in certain circumstances

165A Persons to be excluded by law or self-excluded from casino

165B Voluntary application for visit limit

165C Making family exclusion order, visit limit or exclusion order in respondent's absence

165D Effect of visit limit

166 Variation or revocation of family exclusion order, visit limit or exclusion order by Council

167 Service of family exclusion order, visit limit or exclusion order

168 List of excluded persons

169 Secrecy of proceedings of Committee

170 Rules

## Part XA CASINO ADVERTISING AND RESPONSIBLE GAMBLING

170A Casino advertising and promotions

170B Responsible gambling requirements

170C Audit on advertising or responsible gambling

## Part XI GENERAL OFFENCES

171 Possession, use, etc., of certain things prohibited

172 Unlawful interference with gaming equipment

172A Cheating at play

173 Possession of chips outside designated site

174 Forgery and counterfeiting

175 Impersonation

175A Entering casino on false pretences

175B Commissioner of Police and authorised police officer may obtain information

176 Refusal to provide information, etc.

177 Destroying or falsifying documents

178 False or misleading information

179 Obstructing officer of Authority, etc.

## Part XII ENFORCEMENT POWERS AND PROCEEDINGS

180 Detention of suspected person

181 Powers of enforcement

182 Powers of arrest

183 Arrest on refusal to give name and residence

183A Power to enter premises

184 Request for review by Authority or appeal to Minister

185 No right to compensation for cancellation, etc.

185A Grant of licence or approval a revocable privilege

185B Investigations of suitability

185C Security deposit

185D Enforceable undertakings

186 Information gathering for law enforcement purposes

187 Protection of informers

188 Evidence

## Part XIII MISCELLANEOUS

189 Offences by bodies corporate, etc.

190 Preservation of secrecy

191 Co-operation between Authority and foreign casino regulatory bodies

192 Protection from liability

193 Public servants

194 Jurisdiction of court

195 General penalty

196 Composition of offences

197 Fines and financial penalties to be paid to Authority

197A Amendment of Second Schedule

198 General exemption

199 Service of summonses and notices, etc.

200 Regulations

200A Adoption of codes, standards of performance or specifications

200B Codes, standards of performance or specifications issued or approved by Authority

200C Guidelines on compliance

201 Related amendments to Civil Law Act

202 Related amendments to Income Tax Act

**FIRST SCHEDULE Constitution and Proceedings of Authority**

**SECOND SCHEDULE Persons to whom information may be disclosed**

**Legislative Source Key**

**Legislative History**

# CASINO CONTROL ACT

## (CHAPTER 33A)

**(Original Enactment: Act 10 of 2006)**

**REVISED EDITION 2007**

(31st October 2007)

An Act to make provision for the operation and regulation of casinos and gaming in casinos; to establish the Casino Regulatory Authority of Singapore, to provide for its functions and powers and for matters connected therewith.

[1st June 2006: Section 2 only ;

1st July 2008: Sections 34, 35, 36, 37 (in relation to any employee transferred to the service of the Authority under section 34), 38 and 39 ;

2nd April 2008: Sections 3, 4, 5 to 33 and 37 (in relation any property, assets, interests, rights, privileges, liabilities or obligations transferred to the Authority under section 33), Parts III to XIII and the Schedule ]

PART I

PRELIMINARY

**Short title and commencement**

**1.** This Act may be cited as the Casino Control Act and shall come into operation on such date as the Minister may, by notification in the *Gazette*, appoint.

**Interpretation**

**2.**—(1)  In this Act, unless the context otherwise requires —

"appointed day" means —

      (*a*)   in relation to this Act, the date of commencement of this Act; and

      (*b*)   in relation to a particular provision of this Act, the date of commencement of that particular provision;

"authorised bank" means any bank authorised by the Authority for the purposes of this Act;

"authorised person" means any person authorised to perform any function or duty or to exercise any power under section 13(6);

"Authority" means the Casino Regulatory Authority of Singapore established under section 5;

"casino" means any premises, or part of premises, within a designated site where persons may participate in one or more games approved by the Authority under section 100;

000892

*[Act 36 of 2012 wef 31/01/2013]*

"casino employee" means an employee having functions in or in relation to a casino;

"casino licence" means a casino licence granted under section 49 that is in force;

"casino marketing arrangement" means an arrangement whereby a person organises, promotes or facilitates the playing of any game in a casino by one or more patrons, for which the first-mentioned person receives from the casino operator or from the person for the time being in charge of the casino —

    (*a*)   a commission based on the turnover of play in the casino attributable to the patron or patrons or otherwise derived from the play of the patron or patrons;

    (*b*)   a share of the casino operator's gross gaming revenue from the patron or patrons; or

    (*c*)   such other form of payment or rebate, monetary or otherwise, as may be prescribed;

*[Act 36 of 2012 wef 31/01/2013]*

"casino operator" means a person who is the holder of a casino licence;

"casino premises" means the casino premises referred to in section 51;

"Chairman" means the Chairman of the Authority and includes any temporary Chairman of the Authority;

"Chief Executive" means the Chief Executive of the Authority, and includes any individual acting in that capacity;

*[Act 5 of 2018 wef 01/04/2018]*

"chip purchase voucher" means a voucher issued by a casino operator to a patron named in the voucher entitling the patron to be issued with chips of an equivalent value to that specified in the voucher;

*[Act 36 of 2012 wef 31/01/2013]*

"chips" means any tokens used instead of money for the purpose of gaming and includes any voucher or other instrument that has a fixed dollar wagering value;

*[4/2010 wef 05/02/2010]*

"Comptroller" means the Comptroller of Income Tax appointed under section 3(1) of the Income Tax Act (Cap. 134) and includes, for all purposes of this Act except the exercise of the powers conferred on the Comptroller by sections 146A(2) and 152, a Deputy Comptroller or an Assistant Comptroller appointed

000893

under section 3(1) of the Income Tax Act;

*[Act 36 of 2012 wef 31/01/2013]*

"corporation" has the same meaning as in section 4(1) of the Companies Act (Cap. 50);

"Council" means the National Council on Problem Gambling established under section 154;

"deposit account" means an account established under section 108(2);

"designated site" means any parcel or parcels of land designated by the Minister under subsection (2) as a site on which a casino may be located;

"Development Agreement" means an agreement in writing by a statutory body to lease a designated site to a person (referred to hereinafter as the lessee) for the development of an integrated resort thereon by the lessee on the terms and conditions stated in the agreement, and includes any supplemental agreement or other document amplifying or modifying those terms and conditions;

*[Act 36 of 2012 wef 31/01/2013]*

"electronic monitoring system" means any electronic or computer or communications system or device that is so designed that it may be used, or adapted, to send or receive data from gaming equipment in relation to the security, accounting or operation of gaming equipment;

"electronic table game" means a gaming machine used for the purpose of playing a game traditionally played at tables, and includes any electronic device through which bets may be placed on a game played at a table;

*[Act 36 of 2012 wef 31/01/2013]*

"employ" includes engage under a contract for services;

"excluded person" means a person barred from entering or remaining on any casino premises by —

    (*a*)   an exclusion order under section 120, 121 or 122;

    (*b*)   a family exclusion order, provisional family exclusion order or exclusion order under Part X;

*[Act 36 of 2012 wef 31/01/2013]*
*[22/2009 wef 15/10/2009]*

    (*c*)   section 165A; or

*[Act 36 of 2012 wef 31/01/2013]*
*[22/2009 wef 15/10/2009]*

    (*d*)   section 165D for the remainder of any month by reason of his having made the maximum number of visits to any casino for the month as

000894

specified by a visit limit imposed on him;

[Act 36 of 2012 wef 31/01/2013]

"game" means a game of chance or a game that is partly a game of chance and partly a game requiring skill;

"gaming equipment" means any device or thing (including chips) used, or capable of being used, for or in connection with gaming and includes —

   (*a*)   a gaming machine;

   (*b*)   linked jackpot equipment;

   (*c*)   an electronic monitoring system; and

   (*d*)   a part of, or a replacement part for, any such machine, equipment or system;

"gaming machine" means any device, whether wholly or partly mechanically or electronically operated, that is so designed that —

   (*a*)   it may be used for the purpose of playing a game of chance or a game of mixed chance and skill; and

   (*b*)   as a result of making a bet on the device, winnings may become payable,

and includes any machine declared by the Authority to be a gaming machine;

"Inland Revenue Authority of Singapore" means the Inland Revenue Authority of Singapore established under section 3 of the Inland Revenue Authority of Singapore Act (Cap. 138A);

[22/2009 wef 22/10/2009]

"inspector" means an inspector appointed under section 13(3);

[Act 5 of 2018 wef 01/04/2018]

"integrated resort" means a development comprising hotel, retail, dining, entertainment, recreation and other facilities, and of which a casino may be a part;

[Act 36 of 2012 wef 31/01/2013]

"international market agent" means a person, other than an employee of a casino operator, who performs any of the functions specified in section 110A(2) in relation to one or more casino marketing arrangements;

[Act 36 of 2012 wef 31/01/2013]

"international market agent licence" means a licence issued by the Authority to an international market agent under section 110B;

*[Act 36 of 2012 wef 31/01/2013]*

"international market agent representative" means an individual who is employed by an international market agent to organise, promote or conduct a casino marketing arrangement on behalf of the international market agent;

*[Act 36 of 2012 wef 31/01/2013]*

"international market agent representative licence" means a licence issued by the Authority to an international market agent representative under section 110B;

*[Act 36 of 2012 wef 31/01/2013]*

"jackpot" means the combination of letters, numbers, symbols or representations required to be displayed on the reels or video screen of a gaming machine so that the winnings in accordance with the prize payout scale displayed on the machine are payable from money which accumulates as contributions are made to a special prize pool;

[*Deleted by Act 36 of 2012 wef 31/01/2013*]

[*Deleted by Act 36 of 2012 wef 31/01/2013*]

[*Deleted by Act 36 of 2012 wef 31/01/2013*]

"linked jackpot arrangement" means an arrangement whereby 2 or more gaming machines are linked to a device that —

> (*a*)  records, from time to time, an amount which, in the event of a jackpot or other result being obtained on one of those machines, may be payable, or part of which may be payable, as winnings;
>
> (*b*)  for the purpose of recording the amount referred to in paragraph (*a*), receives data from each gaming machine to which the device is linked; and
>
> (*c*)  is not capable of affecting the outcome of a game on a gaming machine to which the device is linked;

"linked jackpot equipment" means any jackpot meter, payout display, linking equipment, computer equipment, programming or other device (other than a gaming machine) forming, or capable of forming, part of a linked jackpot arrangement;

"match play coupon" means a coupon issued by a casino operator to a patron which, when presented by the patron together with chips in any wager, augments the patron's wager according to a ratio, percentage or value specified in the coupon;

*[Act 36 of 2012 wef 31/01/2013]*

000896

"member" means a member of the Authority;

"Minister", except in section 45A and Parts IX and X, means the Minister for Home Affairs;

<i>[Act 36 of 2012 wef 31/01/2013]</i>

"operations", in relation to a casino, means —

 (*a*) the conduct of gaming in the casino;

 (*b*) the management and supervision of the conduct of gaming in the casino;

 (*c*) money counting in, and in relation to, the casino;

 (*d*) accounting procedures in, and in relation to, the casino;

 (*e*) the use of storage areas within the casino premises; and

 (*f*) other matters affecting or arising out of activities in the casino;

"owner", in relation to a designated site, means the person who is registered in the land-register under the Land Titles Act (Cap. 157) as the purchaser of a leasehold interest in the designated site or, if no one has been registered in the land-register, the person who has entered into a Development Agreement to lease the designated site;

<i>[Act 36 of 2012 wef 31/01/2013]</i>

"premium player" means a patron of a casino who opens a deposit account with the casino operator with a credit balance of not less than $100,000, where —

 (*a*) the deposit is in such form as may be prescribed;

 (*b*) the period during which the credit balance in the deposit account is below $100,000 does not exceed such period as may be prescribed; and

 (*c*) the deposit account fulfils such other conditions as may be prescribed;

<i>[Act 36 of 2012 wef 31/01/2013]</i>

"record" includes any book, account, document, paper or other source of information compiled, recorded or stored in written form, or on microfilm, or by electronic process, or in any other matter or by any other means;

"share" includes stock except where a distinction between stock and shares is express or implied;

"special employee" means a person, whether or not an employee of a casino

000897

operator, who —

    (*a*)   is employed or working in a casino in a managerial capacity or who is authorised to make decisions, involving the exercise of his discretion, that regulate the operations of a casino; or

    (*b*)   is employed or working in a casino in any capacity relating to any of the following activities:

        (i)   the conduct of gaming;

        (ii)   the movement of money or chips about the casino premises;

        (iii)   the exchange of money or chips to patrons of the casino;

        (iv)   the counting of money or chips on the casino premises;

        (v)   the security and surveillance of the casino;

        (vi)   the operation, maintenance, construction or repair of gaming equipment;

        (vii)   the supervision of any of the above activities;

        (viii)   any other activity relating to the operations of the casino that is specified by the Authority for the purposes of this definition by notice in writing given to the casino operator;

*[Act 36 of 2012 wef 31/01/2013]*

"special employee licence" means a special employee licence issued by the Authority under Part V;

"voting share" has the same meaning as in section 4(1) of the Companies Act (Cap. 50).

(2) For the purposes of this Act, the Minister may, by order published in the *Gazette* —

    (*a*)   designate any parcel or parcels of land as a site on which a casino may be located for such period as may be specified in the order; and

    (*b*)   extend any period under paragraph (*a*) for such further period as may be specified in the order.

(3) In this Act —

    (*a*)   a reference to a function includes a reference to a power, authority or duty;

000898

and

    (*b*)   a reference to the exercise of a function includes, in relation to a duty, a reference to the performance of the duty.

*[Vic. CCA 1991, ss. 3, 37]*

## Meaning of "associate"

**3.**—(1)  For the purposes of this Act (other than Division 2 of Part IV), a person is an "associate" of a casino operator or an applicant for a casino licence if the person, in the opinion of the Authority, is able or will be able to exercise a significant influence over or with respect to the management or operation of the casino business of the casino operator or applicant.

*[Act 36 of 2012 wef 31/01/2013]*

   (1A)  In determining whether a person is able or will be able to exercise the significant influence referred to in subsection (1), the Authority may consider all or any of the following:

    (*a*)   whether the person holds or will hold any relevant financial interest in the casino business of the casino operator or applicant;

    (*b*)   whether the person is or will be entitled to exercise any relevant power (whether in right of the person or on behalf of any other person) in the casino business of the casino operator or applicant;

    (*c*)   whether the person holds or will hold any relevant position (whether in right of the person or on behalf of any other person) in the casino business of the casino operator or applicant;

    (*d*)   the degree of direct or indirect influence that the person has in the management or operation of the casino business of the casino operator or applicant;

    (*e*)   any other matter that the Authority considers relevant.

*[Act 36 of 2012 wef 31/01/2013]*

  (2)  In this section —

"relevant financial interest", in relation to a business, means —

    (*a*)   any share in the capital of the business;

*[Act 36 of 2012 wef 31/01/2013]*

    (*b*)   any entitlement to receive any income derived from the business; or

*[Act 36 of 2012 wef 31/01/2013]*

    (*c*)   any contribution to the capital of the business, whether by a loan or

000899

otherwise;

*[Act 36 of 2012 wef 31/01/2013]*

"relevant position", in relation to a business, means the position of director or manager, or other executive position, however that position is designated;

*[Act 36 of 2012 wef 31/01/2013]*

"relevant power" means any power, whether exercisable by voting or otherwise and whether exercisable alone or in association with others —

> (*a*)   to participate in any directorial, managerial or executive decision; or
>
> (*b*)   to elect or appoint any person to any relevant position.
>
> *[Vic. CCA 1991, s. 4]*

## Minister may revoke order for designated site or cancel casino licence in public interest

**4.**—(1)  Notwithstanding any other provision of this Act, if it appears to the Minister to be necessary in the public interest to do so, the Minister may, after consultation with the Authority —

> (*a*)   revoke any order made under section 2(2); or
>
> (*b*)   cancel any casino licence,

and give such directions to the Authority or the casino operator concerned as are necessary to give effect to the revocation of the order or the cancellation of the casino licence, as the case may be.

(2)  The Authority or casino operator, as the case may be, shall give effect to any direction given by the Minister under subsection (1).

(3)  Where the Minister has revoked an order under subsection (1)(*a*), any casino licence granted for a casino on the site to which that order relates shall be deemed to be cancelled.

(4)  The Minister shall pay such fair compensation as the Minister may determine for any damage caused to the casino operator concerned by reason of the revocation of the order or cancellation of the casino licence by the Minister under subsection (1).

(5)  If the amount of compensation to be paid under subsection (4) is disputed by the casino operator, the dispute shall be referred to arbitration, and parties shall be deemed as having submitted the dispute to arbitration under the Arbitration Act (Cap. 10) to be decided in accordance with Singapore law.

000900

(6)  Any sum required by the Minister for paying compensation under subsection (4) shall be paid out of the Consolidated Fund.

(7)  If any doubt arises as to whether any act done under this section was in the public interest, a certificate signed by the Minister shall be conclusive evidence of the matters stated therein.

(8)  Any decision of the Minister under subsection (1) shall be final.
*[Telcom. Act, s. 5]*

## PART II

## CASINO REGULATORY AUTHORITY OF SINGAPORE

*Division 1 — Establishment, incorporation and constitution of Authority*

**Establishment and incorporation of Casino Regulatory Authority of Singapore**

**5.**  There is hereby established a body to be known as the Casino Regulatory Authority of Singapore which shall be a body corporate with perpetual succession and shall, by that name, be capable of —

(*a*)  suing and being sued;

(*b*)  acquiring, owning, holding and developing or disposing of property, both movable and immovable; and

(*c*)  doing and suffering such other acts or things as bodies corporate may lawfully do and suffer.

**Common seal**

**6.**—(1)  The Authority shall have a common seal and such seal may from time to time be broken, changed, altered or made anew as the Authority thinks fit.

(2)  All deeds and other documents requiring the seal of the Authority shall be sealed with the common seal of the Authority.

(3)  All instruments to which the common seal is affixed shall be signed by any 2 members generally or specially authorised by the Authority for the purpose or by one member and the Chief Executive.

(4)  All courts, judges and persons acting judicially shall take judicial notice of the common seal of the Authority affixed to any document and shall presume that it was duly affixed.

000901

**Constitution of Authority**

**7.**—(1)  The Authority shall consist of the following members:

(*a*)  a Chairman; and

(*b*)  such other members, not being less than 4 or more than 16, as the Minister may, from time to time, determine.

(2)  The First Schedule shall have effect with respect to the Authority, its members and its proceedings.

*[Act 36 of 2012 wef 31/01/2013]*

*Division 2 — Functions, duties and powers of Authority*

**Objects of Authority**

**8.**  The objects of the Authority are to maintain and administer systems for the licensing, supervision and control of casinos, for the purpose of —

(*a*)  ensuring that the management and operation of a casino is carried out by persons who are suitable, and remains free from criminal influence or exploitation;

*[Act 36 of 2012 wef 31/01/2013]*

(*b*)  ensuring that gaming in a casino is conducted honestly; and

(*c*)  containing and controlling the potential of a casino to cause harm to minors, vulnerable persons and society at large.

*[Vic. CCA 1991, s. 140]*

**Functions and duties of Authority**

**9.**—(1)  Subject to the provisions of this Act, the functions and duties of the Authority shall be to —

(*a*)  license and regulate the operation of casinos;

(*b*)  approve any system of controls and administrative and accounting procedures of a casino;

(*c*)  advise the Minister concerning policy in relation to supervision and inspection of casinos;

(*d*)  do all things it is authorised or required to do under this Act, including but not limited to —

000902

(i)    supervising the operation of casinos, the persons responsible for such operations and the conduct of gaming within the casinos;

(ii)    ensuring that the handling, collection, disbursement and counting of money within casino premises is supervised;

(iii)    detecting offences committed within casino premises or in relation to casinos;

(iv)    receiving and investigating complaints from casino patrons concerning the conduct of gaming in the casino;

(v)    adjudicating cases of dispute between a casino operator and patrons of the casino;

(vi)    investigating the suitability of applicants for licences;

(vii)    checking casino records as required;

(viii)    inspecting, testing and approving gaming equipment and chips used in casinos; and

(ix)    preparing and giving to the Minister such reports concerning the operation of casinos and the conduct of gaming in them as the Authority thinks fit or as the Minister may request; and

(e)    perform such other functions as are conferred or imposed on the Authority by or under this Act or any other written law.

(2) The Authority may undertake such other functions and duties as the Minister may assign to the Authority and in so doing, the Authority shall be deemed to be fulfilling the purposes of this Act, and the provisions of this Act shall apply to the Authority in respect of such functions and duties.

(3) Nothing in this section shall be construed as imposing on the Authority, directly or indirectly, any form of duty or liability enforceable by proceedings before any court to which it would not otherwise be subject.
*[Vic. CCA 1991, s. 141]*

**Powers of Authority**

**10.**—(1) Subject to the provisions of this Act, the Authority may carry on such activities as appear to the Authority to be advantageous, necessary or expedient for it to carry on for or in connection with the performance of its functions and the discharge of

000903

its duties under this Act or any other written law.

(2)  Without prejudice to the generality of subsection (1), the Authority may —

(*a*)  conduct such investigations as may be necessary for enforcing this Act;

(*b*)  require any person to furnish such returns and information as may be necessary for implementing the provisions of this Act;

(*c*)  issue or approve codes of practice relating to casino operations;

(*d*)  publish educational materials or carry out research or other educational activities relating to casino gaming, or to support (financially or otherwise) the carrying out by others of such activities or the provision by others of information or advice;

(*e*)  enter into such contracts as may be necessary or expedient for the purpose of performing its functions or discharging its duties;

(*f*)  become a member or an affiliate of any international body, the functions, objects or duties of which are similar to those of the Authority;

(*g*)  acquire and hold property, both movable and immovable, and to sell, lease, mortgage or otherwise dispose of the property;

(*h*)  make provision for gratuities, pensions, allowances or other benefits for employees or former employees of the Authority; and

(*i*)  make provision for the specialised training of any employee of the Authority and, in that connection, to offer scholarships to intending trainees or otherwise pay for the cost of the training and all expenditure incidental thereto.

(3) This section shall not be construed as limiting any power of the Authority conferred by or under any other written law.

(4) The Authority shall furnish the Minister information with respect to its property and activities in such manner and at such times as the Minister may, from time to time, require.

## Directions by Minister

**11.** The Minister may give to the Authority any direction under section 5 of the Public Sector (Governance) Act 2018.

*[Act 5 of 2018 wef 01/04/2018]*

## Appointment of committees and delegation of powers

**12.**—(1) The Authority may appoint from amongst its own members or from other persons who are not members such number of committees as it thinks fit for purposes which, in the opinion of the Authority, would be better regulated and managed by means of such committees.

(2) The Authority may, subject to such conditions or restrictions as it thinks fit, delegate to any such committee appointed under subsection (1) or to the Chairman or Chief Executive or to any other member, officer or employee of the Authority, any of the functions or powers of the Authority under this Act or any other written law, except —

    (*a*)   the power of delegation conferred by this section; and

    (*b*)   the power to make any subsidiary legislation.

(3) Any function or power delegated under subsection (2) to any committee or person may be performed or exercised by the committee or person to whom it has been delegated in the name and on behalf of the Authority.

(4) [*Deleted by Act 5 of 2018 wef 01/04/2018*]

*Division 3 — Provisions relating to staff and inspectors*

**Appointment of Chief Executive and other employees, etc.**

**13.**—(1) There must be a Chief Executive of the Authority, whose appointment, removal, discipline and promotion must be in accordance with the Public Sector (Governance) Act 2018.

*[Act 5 of 2018 wef 01/04/2018]*

(2) The Authority may, subject to the Public Sector (Governance) Act 2018, appoint an individual to act temporarily as the Chief Executive during any period, or during all periods, when the Chief Executive —

    (*a*)   is absent from duty or Singapore; or

    (*b*)   is, for any reason, unable to perform the duties of the office.

*[Act 5 of 2018 wef 01/04/2018]*

(3) The Authority may, subject to the Public Sector (Governance) Act 2018, appoint and employ, on such terms and conditions as it may determine, such other officers, employees, consultants, inspectors and agents as may be necessary for the effective performance of its functions.

*[Act 5 of 2018 wef 01/04/2018]*

(4) [*Deleted by Act 5 of 2018 wef 01/04/2018*]

(5) [*Deleted by Act 5 of 2018 wef 01/04/2018*]

000905

but no order, ruling or direction had been made thereon, the committee shall complete the hearing or investigation and shall make such order, ruling or direction as it could have made under the authority vested in it before that day.

(3) Any order, ruling or direction made by a committee under this section shall be treated as an order, a ruling or a direction of the Authority and have the same force or effect as if it had been made by the Authority under this Act.

**Misconduct or neglect of duty by employee before transfer**

**39.** The Authority may reprimand, reduce in rank, retire, dismiss or punish in some other manner a person who had, whilst he was in the employment of the Government, been guilty of any misconduct or neglect of duty which would have rendered him liable to be reprimanded, reduced in rank, retired, dismissed or punished in some other manner if he had continued to be in the employment of the Government, and if this Act had not been enacted.

PART III

LICENSING OF CASINOS

**Certain contracts in relation to gaming valid and enforceable**

**40.** Section 5(1) and (2) of the Civil Law Act (Cap. 43) shall not apply in relation to —

(*a*) any contract entered into with a casino operator or his agent for the playing in the casino of a game that is conducted by or on behalf of the casino operator or his agent, as the case may be, at any time while the casino licence is in force;

(*b*) any contract entered into with a casino operator or his agent for the use of a gaming machine in the casino, at any time while the casino licence is in force; and

(*c*) any contract for any transaction permitted under section 108, at any time while the casino licence is in force.

**Two casinos only**

**41.**—(1) The Authority shall, during the period of 10 years commencing from the date on which a second site for a casino is designated by an order made under section 2(2), ensure that there are not more than 2 casino licences in force under this Act at any particular time.

000906

(2)  A casino licence is to apply to one casino only.
*[NSW CCA 1992, s. 6]*

**Main shareholder of casino operator not to divest stake or participate in other casino for certain period**

**42.**—(1)  During the period of 10 years commencing from the date on which a second site for a casino is designated by an order made under section 2(2) —

> (*a*)  the main shareholder of a casino operator shall not, without the prior written approval of the Authority, transfer or dispose of any part of his stake in the casino operator to the extent that after the transfer or disposal, the percentage of the total votes attached to his stake in the casino operator —
>
>> (i)   is less than 20% of the total votes attached to all voting shares in the casino operator; or
>>
>> (ii)  is equal to or less than the percentage of the total votes attached to the stake of any other stakeholder in the casino operator; and
>
> (*b*)  no person other than the main shareholder of a casino operator shall, without the prior written approval of the Authority, acquire any stake in the casino operator to the extent that after the acquisition, the percentage of the total votes attached to the stake of that person in the casino operator —
>
>> (i)   is equal to or more than 20% of the total votes attached to all voting shares in the casino operator; and
>>
>> (ii)  is equal to or more than the percentage of the total votes attached to the main shareholder's stake in the casino operator.

(2)  The main shareholder of a casino operator shall not, at any time where there are only 2 casinos in Singapore —

> (*a*)  acquire or hold any stake in the other casino operator;
>
> (*b*)  participate in the management or operation of the other casino operator, whether by nominating or appointing any director or officer of the other casino operator or otherwise; or
>
> (*c*)  enter into any agreement for the management or operation of the other casino.

(3)  Any person who contravenes subsection (1) or (2) shall be guilty of an offence and shall be liable on conviction —

000907

(*a*)    in the case of an individual, to a fine not exceeding $125,000; or

(*b*)    in any other case, to a fine not exceeding $250,000.

(4)  Without prejudice to subsection (3), the Minister may, by notice in writing, do one or more of the following:

(*a*)    where the Minister is satisfied that the main shareholder of a casino operator has contravened subsection (1)(*a*), direct the main shareholder to acquire a stake in the casino operator, in such manner, within such time and subject to such conditions as may be specified in the notice, to the extent that after the acquisition, the percentage of the total votes attached to his stake in the casino operator —

  (i)    is equal to or more than 20% of the total votes attached to all voting shares in the casino operator; and

  (ii)    is more than the percentage of the total votes attached to the stake of every other stakeholder in the casino operator;

(*b*)    where the Minister is satisfied that any person has contravened subsection (1)(*b*) or (2)(*a*), direct that person to transfer or dispose of the whole or any part of his stake in the casino operator which has been acquired or held in contravention of that provision in such manner, within such time and subject to such conditions as may be specified in the notice;

(*c*)    where the Minister is satisfied that the main shareholder of a casino operator has contravened subsection (2)(*b*), direct the main shareholder to cease all participation in contravention of that provision within such time as may be specified in the notice;

(*d*)    where the Minister is satisfied that the main shareholder of a casino operator has contravened subsection (2)(*c*), direct the main shareholder to terminate any agreement made in contravention of that provision within such time as may be specified in the notice;

(*e*)    give such other direction as the Minister considers appropriate.

(5)  Any person who fails, without reasonable excuse, to comply with a direction made under subsection (4) shall be guilty of an offence and shall be liable on conviction —

(*a*)    in the case of an individual, to a fine not exceeding $12,500 for every day or part thereof that he fails to comply with the direction; or

000908

(*b*)  in any other case, to a fine not exceeding $25,000 for every day or part thereof that he fails to comply with the direction.

(6)  Where any direction has been made under subsection (4)(*b*), then, until a transfer or disposal is effected in accordance with the direction, and notwithstanding anything in the Companies Act (Cap. 50) or in the memorandum or articles of association of the casino operator —

(*a*)  no voting rights shall be exercisable in respect of any voting shares in the casino operator which are comprised in any part of any stake in the casino operator acquired or held in contravention of subsection (1)(*b*) or (2)(*a*) (referred to in this subsection as the relevant shares), unless the Minister expressly permits such rights to be exercised;

(*b*)  no shares in the casino operator shall be issued or offered (whether by way of rights, bonus or otherwise) in respect of the relevant shares unless the Minister expressly permits such issue or offer; and

(*c*)  except in a liquidation of the casino operator, no payment shall be made by the casino operator of any amount (whether by way of dividends or otherwise) in respect of the relevant shares unless the Minister expressly permits such payment.

(7)  For the purposes of this section —

(*a*)  a person holds a stake in a casino operator if he —

(i)  holds any voting share in the casino operator; or

(ii)  is deemed under subsection (8) to control any percentage of the total votes attached to all voting shares in the casino operator; and

(*b*)  the percentage of the total votes attached to a person's stake in a casino operator at a particular time is the aggregate of —

(i)  the percentage which represents the proportion that the votes attached to the voting shares which he holds in the casino operator at that time bear to the total votes attached to all voting shares in the casino operator at that time; and

(ii)  every percentage of the total votes attached to all voting shares in the casino operator which he is deemed under subsection (8) to control at that time.

000909

(8) For the purposes of this section, if —

    (*a*)   a person —

        (i)   holds one or more units of equity interests in an entity (referred to in this subsection as the first level entity) and by virtue of that holding controls; or

        (ii)   is deemed under this subsection to control,

    a certain percentage (referred to in this subsection as the first level percentage) of the total votes attached to all equity interests in the first level entity; and

    (*b*)   the first level entity holds one or more units of equity interests in another entity (referred to in this subsection as the second level entity) and by virtue of that holding controls a certain percentage (referred to in this subsection as the second level percentage) of the total votes attached to all equity interests in the second level entity,

then the person shall be deemed to control a percentage of the total votes attached to all equity interests in the second level entity which is equal to the product of the first level percentage and the second level percentage.

(9) In this section —

    "business trust" has the same meaning as in section 2 of the Business Trusts Act (Cap. 31A);

    "entity" includes a corporation, an unincorporated association, a sole proprietorship, a partnership, a limited liability partnership and a business trust;

    "equity interest" —

        (*a*)   in relation to a corporation, means a voting share in that corporation; and

        (*b*)   in relation to any entity other than a corporation, means any right or interest, whether legal or equitable, in the entity, by whatever name called, which gives the holder of that right or interest voting power in that entity;

    "hold", in relation to any stake, voting share or unit of equity interest, includes holding that stake, voting share or unit through a nominee, and "holder" and "holding" shall be construed accordingly;

    "limited liability partnership" means a limited liability partnership formed under

000910

section 4(1) of the Limited Liability Partnerships Act (Cap. 163A) or any equivalent foreign law;

"main shareholder", in relation to a casino operator, means such person as the Minister may, by notification in the *Gazette*, designate as the main shareholder of the casino operator.

(10) This section shall apply to every individual, whether resident in Singapore or not, and to every body corporate or unincorporate, whether incorporated or carrying on business in Singapore or not.

(11) Where the main shareholder of a casino operator is not resident or does not have a place of business in Singapore, it shall be a condition of the casino licence that the casino operator shall notify the Authority of an address within Singapore for the service of any summons, notice, order or legal process upon its main shareholder and of a person or persons authorised by the main shareholder to accept service on its behalf.

**Operating casino without casino licence prohibited**

**43.**—(1) No person shall operate a casino without a valid casino licence in force.

(2) Any person who contravenes subsection (1) shall be guilty of an offence and shall be liable on conviction to a fine not exceeding $200,000 and, in the case of a continuing offence, to a further fine not exceeding $20,000 for every day or part thereof during which the offence continues after conviction.

(3) The court before which a person is convicted of an offence under this section shall, in addition to imposing on that person any other punishment, order the payment by him of a sum which is equal to his gross gaming revenue for the period that the offence was committed, and any such payment ordered shall be recoverable as a fine.

(4) In this section, "gross gaming revenue" has the same meaning as in section 146 as if the person who operated the casino had been a casino operator.

**Application for casino licence**

**44.**—(1) An application for a casino licence may be made to the Authority only by the owner of a designated site on which a casino is intended to be located or, with the approval of the Authority, by a person nominated by that owner.

(2) Every application for a casino licence shall be —

    (*a*)   made to the Authority in a form specified by the Authority;

    (*b*)   accompanied by the prescribed application fee; and

000911

> (*c*)  accompanied by such documents and information as may be required by the Authority as regards that licence.
>
> *[Act 36 of 2012 wef 31/01/2013]*

(3)  If an application is refused under subsection (4) or withdrawn by the applicant, the Authority, in its discretion, may refund the whole or part of the application fee.

(4)  If a requirement under this section is not complied with, the Authority may refuse to consider the application.
*[Vic. CCA 1991, s. 8]*

## Matters to be considered in determining applications

**45.**—(1)  The Authority shall not grant an application for a casino licence unless the Authority is satisfied that the applicant, and each associate of the applicant, is a suitable person to be concerned in or associated with the management and operation of a casino.

(2)  In particular, the Authority shall consider whether —

> (*a*)  each such person is of good repute, having regard to character, honesty and integrity;
>
> (*b*)  each such person is of sound and stable financial background;
>
> (*c*)  in the case of an applicant that is not a natural person, the applicant has, or has arranged, a satisfactory ownership, trust or corporate structure;
>
> (*d*)  the applicant has or is able to obtain financial resources that are adequate to ensure the financial viability of the proposed casino and the services of persons who have sufficient experience in the management and operation of a casino;
>
> (*e*)  the applicant has sufficient business ability to establish and maintain a successful casino;
>
> (*f*)  any of those persons has any business association with any person, body or association who or which, in the opinion of the Authority, is not of good repute having regard to character, honesty and integrity or has undesirable or unsatisfactory financial resources;
>
> (*g*)  each director, partner, trustee, executive officer and secretary and any other officer or person determined by the Authority to be associated or connected with the ownership, administration or management of the operations or business of the applicant is a suitable person to act in that capacity;
>
> (*h*)  any person proposed to be engaged or appointed to manage or operate the

casino is a suitable person to act in that capacity;

*[Act 36 of 2012 wef 31/01/2013]*

(*ha*)  the applicant is a suitable person to develop, maintain and promote the integrated resort (of which the casino is a part) as a compelling tourist destination which meets prevailing market demand and industry standards and contributes to the tourism industry in Singapore; and

*[Act 36 of 2012 wef 31/01/2013]*

(*i*)  any other matter that may be prescribed.

(3)  The Authority shall, in determining the matter set out in subsection (2)(*ha*), have regard to the opinion of the evaluation panel under section 45A.

*[Act 36 of 2012 wef 31/01/2013]*

*[Vic. CCA 1991, s. 9]*

## Evaluation panel to form opinion on integrated resort

**45A.**—(1)  The Minister may appoint 3 or more persons to form an evaluation panel to evaluate the following, in relation to any integrated resort:

(*a*)  the visitor appeal of the integrated resort;

(*b*)  the comparability of the integrated resort or any part thereof to similar attractions or facilities internationally or to the prevailing industry standards in respect of each such attraction or facility;

(*c*)  the degree to which the integrated resort or any attraction or facility therein meets the prevailing market demand in respect of the integrated resort, attraction or facility; and

(*d*)  the contribution of the integrated resort to the tourism industry in Singapore.

(2)  Each member of the evaluation panel shall be appointed on such conditions and for such term as the Minister may determine.

(3)  The Minister may appoint a secretary and such other officers as may be required to enable the evaluation panel to carry out its functions under this section.

(4)  In formulating its opinion on the matters in subsection (1) in relation to any integrated resort, the evaluation panel shall call for and consider the views of the applicant for the casino licence and any party to the Development Agreement concerning that integrated resort and may also do all or any of the following:

(*a*)  request the applicant for the casino licence to furnish one or more of the following:

000913

      (i)     revenue and other financial information on the integrated resort, including such itemised information about each attraction in the integrated resort;

      (ii)     the reinvestment plans or maintenance plans for any part of the integrated resort;

      (iii)     any survey carried out about a performance indicator for any aspect of the integrated resort;

      (iv)     such other documents or information relating to the integrated resort as the evaluation panel may consider necessary;

    (b)   enter any part of the integrated resort and inspect it;

    (c)   call for and consider the views of persons with the necessary experience or expertise;

    (d)   assess the quality of the integrated resort, or any part thereof, against such performance indicators and standards, and using such methodology, as may be prescribed.

(5) The evaluation panel shall, upon the conclusion of its evaluation —

    (a)   give the Authority its opinion on the matters in subsection (1); and

    (b)   state, in its opinion, when the next evaluation should be carried out.

(6) Nothing in this section shall prejudice the enforcement of any right or claim by or against any party to a Development Agreement arising out of an opinion of the evaluation panel under subsection (5).

(7) The Minister may make regulations generally for the carrying out of or giving effect to the purposes of this section, and may prescribe anything required or permitted to be prescribed under this section.

(8) In this section, "Minister" means the Minister charged with the responsibility for tourism development and promotion.

*[Act 36 of 2012 wef 31/01/2013]*

## Investigation of application

**46.**—(1) On receiving an application for a casino licence, the Authority shall cause to be carried out all such investigations and inquiries as it considers necessary to enable it to consider the application properly.

000914

(2) In particular, the Authority may —

    (*a*)    require any person it is investigating in relation to the person's suitability to be concerned in or associated with the management or operation of a casino to consent to having his photograph, finger prints and palm prints taken; and

    (*b*)    send a copy of the application and of any such photograph, finger prints and palm prints taken under paragraph (*a*) and any supporting documentation to the Commissioner of Police.

(3) The Commissioner of Police or any police officer authorised by the Commissioner shall inquire into and report to the Authority on such matters concerning the application as the Authority requests.

(4) The Authority may refuse to consider an application for a casino licence if any person from whom it requires a photograph, finger prints or palm prints under this section refuses to allow his photograph, finger prints or palm prints to be taken.
*[Vic. CCA 1991, s. 10]*

## Authority may require further information, etc.

**47.**—(1) The Authority may, by notice in writing, require a person who is an applicant for a casino licence or a person whose association with the applicant is, in the opinion of the Authority, relevant to the application to do any one or more of the following:

    (*a*)    to provide, in accordance with directions in the notice, any information, that is relevant to the investigation of the application and is specified in the notice;

    (*b*)    to produce, in accordance with directions in the notice, any records relevant to the investigation of the application that are specified in the notice and to permit examination of the records, the taking of extracts from them and the making of copies of them;

    (*c*)    to authorise a person described in the notice to comply with a specified requirement of the kind referred to in paragraph (*a*) or (*b*);

    (*d*)    to furnish to the Authority any authorisations and consents that the Authority directs for the purpose of enabling the Authority to obtain information (including financial and other confidential information) concerning the person and his associates or relations from other persons.
*[Act 36 of 2012 wef 31/01/2013]*

(2) If a requirement made under this section is not complied with, the Authority may

000915

refuse to consider the application concerned.
*[Vic. CCA 1991, s. 11]*

### Updating of application

**48.**—(1) If a change occurs in the information provided in or in connection with an application for a casino licence (including in any documents lodged with the application) before the application is granted or refused, the applicant shall, without delay, give the Authority written particulars of the change.

(2) If —

> (*a*)  the Authority requires information (including information in any records) from a person referred to in section 47 whose association with the applicant is in the opinion of the Authority relevant to the application; and

> (*b*)  a change occurs in that information before the application is granted or refused,

that person shall, without delay, give the Authority written particulars of the change.

(3) Any person who fails to comply with subsection (1) or (2) shall be guilty of an offence and shall be liable on conviction to a fine not exceeding $200,000 and, in the case of a continuing offence, to a further fine not exceeding $20,000 for every day or part thereof during which the offence continues after conviction.

(4) When particulars of the change are given, those particulars shall then be considered to have formed part of the original application, for the purposes of the application of subsection (1) or (2) to any further change in the information provided.
*[Vic. CCA 1991, s. 12]*

### Grant or refusal of casino licence

**49.**—(1) The Authority shall determine an application for a casino licence by either granting or refusing the application and shall notify the applicant in writing of its decision.

(2) A casino licence may be granted subject to such conditions as the Authority thinks fit.

(3) Without limiting the matters to which conditions may relate, the conditions of a casino licence may relate to any matter for which provision is made by this Act but shall not be inconsistent with a provision of this Act.

(4) If an application is granted, the casino licence is granted for the term, subject to the conditions and for the location specified in the licence.

(5) [*Deleted by Act 36 of 2012 wef 31/01/2013*]

**Casino licence fee**

**49A.**—(1) A casino operator shall pay to the Authority a casino licence fee of such amount, at such times and in such manner as may be prescribed.

(2) Any increase in the casino licence fee during the term of a casino licence shall be paid in respect of the remainder of the term for which the casino licence is valid, at the rate prescribed.

(3) Notwithstanding section 52, the casino licence shall lapse if any part of the casino licence fee payable is not paid within the time prescribed for the payment thereof.

*[Act 36 of 2012 wef 31/01/2013]*

**Renewal of casino licence**

**49B.**—(1) An application for the renewal of a casino licence shall be —

    (*a*)   made to the Authority in the form specified by the Authority not later than 6 months before the date of expiry of the casino licence;

    (*b*)   accompanied by the prescribed application for renewal fee; and

    (*c*)   accompanied by such documents and information as may be required by the Authority as regards that licence.

(2) If an application to renew a casino licence is submitted to the Authority less than 6 months before the date of expiry of the casino licence, the application must, in addition to the renewal fee, be accompanied by the prescribed late application fee.

(3) Sections 44 to 49 shall apply, with the necessary modifications and subject to this section, to an application and an applicant for the renewal of a casino licence as they do to an application and an applicant for the grant of a casino licence.

*[Act 36 of 2012 wef 31/01/2013]*

**Amendment of conditions**

**50.**—(1) The conditions of a casino licence may be amended in accordance with this section.

(2) An amendment may be proposed —

    (*a*)   by the casino operator by requesting the Authority in writing to make the amendment; or

    (*b*)   by the Authority by giving notice in writing of the proposed amendment to

000917

the casino operator.

(3)  The Authority shall allow the casino operator such period as it may specify to make submissions to the Authority concerning any proposed amendment (whether proposed by the Authority or the casino operator) and shall consider the submissions made.

(4)  The Authority shall then decide whether to make the proposed amendment, either with or without changes from that originally proposed, and shall notify the casino operator of its decision.

(5)  Any amendment that the Authority decides upon takes effect when notice of the decision is given to the casino operator or on any later date that may be specified in the notice.

(6)  In this section, "amendment" includes the variation or revocation of any condition or the addition of a new condition.

*[Act 36 of 2012 wef 31/01/2013]*

*[Vic. CCA 1991, s. 16]*

## Authority to define casino premises

**51.**—(1)  The boundaries of any casino premises, as at the time when a casino licence is granted, shall be defined by the casino licence within the designated site for which the casino licence is granted.

(2)  The Authority may, from time to time, redefine the boundaries of the casino premises, within the designated site for which the casino licence is granted, as the Authority thinks fit and may do so of its own motion or on the application of the casino operator.

(3)  An application for the redefining of the boundaries of the casino premises shall be accompanied by the prescribed fee.

(4)  The defining or redefining of the boundaries of casino premises takes effect when the Authority gives written notice of it to the casino operator concerned or any later date specified in the notice.

*[Vic. CCA 1991, s. 17]*

## Duration of casino licence

**52.**  A casino licence remains in force for the period for which it is granted, as specified in the licence, unless it is sooner cancelled or surrendered under this Act.

*[Vic. CCA 1991, s. 18]*

**Transfer, mortgage, etc., of casino licence**

**53.**—(1) No casino licence shall be transferable except with the prior approval in writing of the Authority.

(2) A casino operator shall not mortgage, charge or otherwise encumber the casino licence except with the prior approval in writing of the Authority.
*[Vic. CCA 1991, s. 19]*

**Disciplinary action against casino operator**

**54.**—(1) In this section —

"disciplinary action", in relation to a casino operator, means one or more of the following:

    (*a*) the cancellation or suspension of a casino licence;

    (*b*) the issuing of a letter of censure;

    (*c*) the variation of the terms of a casino licence;

    (*d*) the imposition of a financial penalty for each ground of disciplinary action —

        (i) in respect of a serious breach, of a sum not exceeding 10% of the annual gross gaming revenue (as defined in section 146(6)) of the casino operator for the financial year immediately preceding the date the financial penalty is imposed, as ascertained from the casino operator's latest audited accounts; or

        (ii) in respect of any other ground of disciplinary action, of a sum not exceeding $1 million;
*[Act 36 of 2012 wef 31/01/2013]*

"grounds for disciplinary action", in relation to a casino operator, means any of the following grounds:

    (*a*) that the casino licence was improperly obtained in that, at the time the casino licence was granted or renewed, there were grounds for refusing it;
*[Act 36 of 2012 wef 31/01/2013]*

    (*b*) that the casino operator, a person in charge of the casino, an agent of the casino operator or a casino employee has contravened a provision of this Act or a condition of the casino licence;

000919

(c)    that the casino premises are, for specified reasons, no longer suitable for the conduct of casino operations;

*[Act 36 of 2012 wef 31/01/2013]*

(d)    the casino operator is, for specified reasons, in the opinion of the Authority no longer a suitable person to hold the casino licence having regard to the matters in section 45(2);

*[Act 36 of 2012 wef 31/01/2013]*

(e)    the casino operator has failed to comply with a direction under subsection (7) of section 63 within the time referred to in that subsection to terminate an association with an associate;

*[Act 36 of 2012 wef 31/01/2013]*

(f)    the casino operator has failed to provide information that it is required by this Act to provide or has provided information knowing it to be false or misleading or reckless as to whether it is so;

*[Act 36 of 2012 wef 31/01/2013]*

"serious breach", in relation to a casino operator, means a contravention of a provision of this Act or a condition of the casino licence by the casino operator, a person in charge of the casino, an agent of the casino operator or a casino employee which, in the opinion of the Authority —

(a)    severely affects the integrity of the casino operations or the integrity of gaming in the casino or severely undermines a measure intended to safeguard individuals or society against harm from casino gambling;

(b)    has caused or could cause significant gain of property to a person not legally entitled to it or significant loss of property to a person legally entitled to it;

(c)    has occurred as a result of wilful intent or reckless disregard for regulatory compliance;

(d)    has arisen from or in connection with a systemic failure or multiple failures in the management or operation of the casino; or

(e)    is injurious to the public interest or public order.

*[Act 36 of 2012 wef 31/01/2013]*

(2)    The Authority may serve on a casino operator a notice in writing affording the casino operator an opportunity to show cause within 14 days, or such longer period as the Authority may allow on application by the casino operator, why disciplinary action should not be taken on grounds for disciplinary action specified in the notice.

*[Act 36 of 2012 wef 31/01/2013]*

000920

(3)  The casino operator may, within the period allowed under subsection (2), arrange with the Authority for the making of submissions to the Authority as to why disciplinary action should not be taken and the Authority shall consider any submissions so made.

*[Act 36 of 2012 wef 31/01/2013]*

(4)  The Authority may then take such disciplinary action against the casino operator as the Authority sees fit by giving written notice to the casino operator of the disciplinary action that the Authority intends to take.

(5)  The cancellation, suspension or variation of a casino licence under this section takes effect when the notice under subsection (4) is given or on a later date specified in the notice.

(6)  A letter of censure may censure the casino operator in respect of any matter connected with the operation of the casino and may include a direction to the casino operator to rectify within a specified time any matter giving rise to the letter of censure.

(7)  If any direction given under subsection (6) is not complied within the specified time, the Authority may, by giving written notice to the casino operator, cancel, suspend or vary the terms of the casino licence or impose a financial penalty not exceeding the appropriate sum in paragraph (*d*) of the definition of "disciplinary action" in subsection (1) without affording the casino operator a further opportunity to be heard.

*[Act 36 of 2012 wef 31/01/2013]*

(8)  If a casino operator operates a casino during the suspension of the casino licence, the Authority may, by written notice, impose a financial penalty not exceeding the appropriate sum in paragraph (*d*) of the definition of "disciplinary action" in subsection (1) on the casino operator for every day or part thereof that the casino operations continue while the casino licence is suspended, without affording the casino operator a further opportunity to be heard.

*[Act 36 of 2012 wef 31/01/2013]*

(9)  A member of the Authority who has participated in the consideration of disciplinary action against a casino operator is not prevented by that reason alone from considering whether further disciplinary action should be taken against that casino operator.

*[Vic. CCA 1991, s. 20]*

(10)  Any error in, revision to or adjustment of a casino operator's gross gaming revenue ascertained from its latest audited accounts shall not affect the validity of any financial penalty imposed by the Authority under this section.

*[Act 36 of 2012 wef 31/01/2013]*

## Surrender of casino licence

**55.**—(1)  A casino operator may surrender the casino licence by giving notice in

writing to the Authority.

(2)  The surrender takes effect only if the Authority consents to the surrender.
*[Vic. CCA 1991, s. 21]*

**Appointment of manager if casino licence cancelled, surrendered or suspended**

**56.**—(1)  If a casino licence is cancelled, surrendered or suspended, the Authority may, with the approval of the Minister, appoint a manager of the casino for the purposes of this section.

(2)  In appointing a person to be a manager, the Authority shall have regard to the suitability of the person.

(3)  A manager is appointed on such terms and conditions as the Authority thinks fit.

(4)  The appointment of a manager of a casino may be terminated at any time by the Authority and is terminated by the grant of another casino licence in respect of the casino.

(5)  If the appointment of the manager is terminated, the manager ceases to be deemed to be the holder of a casino licence.

(6)  A manager —

　　(*a*)　is deemed to be the holder of a casino licence on the same terms as those on which the casino operator held the licence before its cancellation, suspension or surrender, subject to such modifications as the Authority determines;

　　(*b*)　assumes full control of and responsibility for the business of the casino operator in respect of the casino and may retain for use in the casino any property of the casino operator;

　　(*c*)　shall conduct, or cause to be conducted, casino operations in accordance with this Act;

　　(*d*)　has, in connection with the conduct of those operations, all the functions of the casino operator; and

　　(*e*)　may employ such staff as may be required to operate the casino.

(7)  Regulations made under this Act may make provision for or with respect to the appointment and functions of a manager appointed under this section.

(8)  The following provisions have effect in respect of the net earnings of a casino while operations in the casino are being conducted by a manager under this section:

000922

(a)   subject to paragraph (*b*), no payment of net earnings is to be made to the former casino operator without the prior approval of the Authority;

(b)   the former casino operator is entitled to a fair rate of return out of net earnings (if any) on any property of the former casino operator retained by the manager;

(c)   the Authority may direct that all or any part of net earnings (other than that referred to in paragraph (*b*)) shall be paid to the Authority, with any balance to be paid to the former casino operator.

*[Vic. CCA 1991, s. 22]*

## PART IV

### SUPERVISION AND CONTROL OF CASINO OPERATORS

*Division 1 — Directions, investigations, etc.*

**Directions to casino operator**

**57.**—(1)  The Authority may give to a casino operator a written direction that relates to the conduct, supervision or control of casino operations, whether within the casino premises or elsewhere, and the casino operator shall comply with the direction as soon as it takes effect.

*[Act 36 of 2012 wef 31/01/2013]*

(2)  The direction takes effect when the direction is given to the casino operator or on a later date specified in the direction.

(3)  The power conferred by this section includes a power to give a direction to a casino operator to adopt, vary, cease or refrain from any practice in respect of the conduct of casino operations, whether within the casino premises or elsewhere.

*[Act 36 of 2012 wef 31/01/2013]*

(4)  A direction under this section shall not be inconsistent with this Act or the conditions of the casino licence.

(5)  Any casino operator who fails to comply with a direction under this section shall be liable to disciplinary action.

(6)  Where a casino operator has been subject to disciplinary action under subsection (5) (referred to in this section as the first disciplinary action) and continues to fail to comply with the direction of the Authority, such failure shall constitute a fresh ground of disciplinary action for every day or part thereof that the failure continues after

000923

the first disciplinary action.
*[Vic. CCA 1991, s. 23]*

## General investigations

**58.**—(1) The Authority may investigate a casino from time to time and at any time that the Authority thinks it desirable to do so and, if it is directed to do so by the Minister, shall investigate the casino.

(2) The investigation may include (but is not limited to) an investigation of any or all of the following matters:

> (*a*)  the casino and operations in the casino;
>
> (*b*)  the casino operator or a person who, in the opinion of the Authority, is an associate of the casino operator;
>
> (*c*)  any person who, in the opinion of the Authority, could affect the exercise of functions in or in relation to the casino;
>
> (*d*)  any person who, in the opinion of the Authority, could be in a position to exercise direct or indirect control over the casino operator, or an associate of the casino operator, in relation to functions in or in relation to the casino;
>
> *[Act 36 of 2012 wef 31/01/2013]*
>
> (*e*)  any person, body or association having a business association with the casino operator or with an associate of the casino operator.
>
> *[Act 36 of 2012 wef 31/01/2013]*

(3) The Authority may make a report to the Minister on the results of such an investigation if it thinks it desirable to do so and shall make such a report if the investigation was made at the direction of the Minister.
*[Vic. CCA 1991, s. 24]*

## Regular investigations of casino operator's suitability, etc.

**59.** The Authority shall, at such intervals as it may determine, investigate whether or not —

> (*a*)  the casino operator is a suitable person to continue to hold the casino licence; and
>
> (*b*)  the casino licence should continue in force,

and shall take whatever action the Authority considers appropriate in the light of its findings.
*[Vic. CCA 1991, s. 25]*

000924

**Casino operator to provide information**

**60.**—(1) The Authority may, by notice in writing, require a casino operator or a person who was a casino operator or a person who, in the opinion of the Authority, is or was directly or indirectly associated with the casino operator —

(*a*)   to provide the Authority or an authorised person, in accordance with directions in the notice, with such information relevant to the casino operator or that association or to the casino, or with such information as the Authority requires, as is specified in the notice;

(*b*)   to produce to the Authority or an authorised person, in accordance with the directions in the notice, such records relevant to the casino operator or that association or to the casino, or to matters specified by the Authority, as are specified in the notice and to permit examination of those records, the taking of extracts from them and the making of copies of them; or

(*c*)   to attend before the Authority or an authorised person for examination in relation to any matters relevant to the casino operator or that association or to the casino, or to matters specified by the Authority, and to answer questions relating to those matters.

(2)  If records are produced under this section, the Authority or authorised person to whom they are produced may retain possession of the records for such period as may reasonably be necessary for investigations to be carried out.

(3)  At any reasonable time during the period for which records are retained, the Authority or authorised person shall permit inspection of the records by a person who would be entitled to inspect them if they were not in the possession of the Authority or an authorised person.

(4)  A person who complies with a requirement of a notice under this section does not on that account incur a liability to another person.

(5)  Any casino operator who fails to comply with a requirement of a notice under this section shall be liable to disciplinary action.

(6)  Any person (other than a casino operator) who fails to comply with a requirement of a notice under this section shall be guilty of an offence and shall be liable on conviction to a fine not exceeding $200,000 and, in the case of a continuing offence, to a further fine not exceeding $20,000 for every day or part thereof during which the offence continues after conviction.
[*Vic. CCA 1991, s. 26*]

**Change in situation of casino operator**

000925

**61.**—(1) In this section —

"major change", in the situation existing in relation to a casino operator, means —

    (*a*)   any change which results in a person becoming an associate of the casino operator;

    (*b*)   any change in the person engaged or appointed to manage or operate the casino; or

    (*c*)   any other change which is of a class or description prescribed as major for the purposes of this section;

"minor change", in the situation existing in relation to a casino operator, means any change in that situation that is prescribed as a minor change for the purposes of this section.

(2)  A casino operator shall —

    (*a*)   take all reasonable steps to ensure that a major change in the situation existing in relation to the casino operator which is within the casino operator's power to prevent occurring does not occur except with the prior approval in writing of the Authority;

    (*b*)   where paragraph (*a*) does not apply, notify the Authority in writing of any major change in the situation existing in relation to the casino operator within 3 days after the casino operator becomes aware of the change; and

    (*c*)   notify the Authority in writing of any minor change in the situation existing in relation to the casino operator within 14 days after becoming aware that the change has occurred.

(3)  Sections 46 and 47 apply to and in respect of an application for approval under this section in the same manner that they apply to and in respect of an application for a casino licence.

(4)  If a major change is proposed or has occurred involving a person becoming an associate of a casino operator —

    (*a*)   in a case which also requires —

        (i)   an application to be made under section 65 or 66 by a shareholder or prospective shareholder of the casino operator;

        (ii)   notice of a controlled contract to be given under section 73; or

        (iii)   an application for a special employee licence to be made under section 81,

000926

the casino operator shall be deemed to have complied with subsection (2)(*a*) if such application is made or such notice is given, as the case may be; or

(*b*)   in any other case, the Authority shall inquire into the change to determine whether it is satisfied that the person is a suitable person to be associated with the management of a casino having regard to the matters in section 63(4) and if it is not so satisfied, shall take such action as it considers appropriate under section 63.

(5)  Any casino operator who fails to comply with subsection (2) shall be liable to disciplinary action.

*[Vic. CCA 1991, s. 28]*

## Change in situation of associate

**62.**—(1)  Where a change of a kind specified by the Authority in writing given to an associate of a casino operator takes place in the situation existing in relation to the associate of the casino operator, the associate shall notify the Authority in writing of the change within 14 days after it takes place.

(2)  Any associate of a casino operator who fails to comply with subsection (1) shall be guilty of an offence and shall be liable on conviction to a fine not exceeding $25,000 and, in the case of a continuing offence, to a further fine not exceeding $2,500 for every day or part thereof during which the offence continues after conviction.

*[Vic. CCA 1991, s. 28AA]*

## On-going monitoring of associates and others

**63.**—(1)  The Authority may, from time to time, investigate —

(*a*)   an associate, or a person likely to become an associate, of a casino operator; or

(*b*)   any person, body or association having a business association with a person referred to in paragraph (*a*).

(2)  A casino operator shall notify the Authority in writing that a person is likely to become an associate as soon as practicable after the casino operator becomes aware of the likelihood.

(3)  If the Authority, having regard to the relevant matters referred to in section 45(2), determines that an associate is unsuitable to be concerned in or associated with the business of the casino operator, the Authority may, by notice in writing, require the associate to terminate the association with the casino operator.

*[Act 36 of 2012 wef 31/01/2013]*

(4)  [*Deleted by Act 36 of 2012 wef 31/01/2013*]

(5)  If the Authority determines that an associate of a casino operator has engaged or is engaging in conduct that, in the Authority's opinion, is unacceptable for a person who is concerned in or associated with the ownership, management or operation of the business of the casino operator, the Authority may —

> (*a*)  issue a written warning to the associate that the conduct is unacceptable; or
>
> (*b*)  give written notice to the associate requiring the associate to give a written undertaking to the Authority, within the period specified in the notice, regarding the future conduct of the associate.

(6)  If the associate fails to give an undertaking required under subsection (5)(*b*) or breaches an undertaking given under that subsection, the Authority may give the associate written notice requiring the associate to terminate, within 14 days or a longer period agreed with the Authority, the association with the casino operator.

(7)  If the association is not terminated within 14 days from the date of the notice referred to in subsection (3) or (6) or any longer period agreed with the Authority, the Authority may, by notice in writing, direct the casino operator to take all reasonable steps to terminate the association and the casino operator shall comply with the direction within 14 days or any longer period agreed with the Authority.

(8)  The Authority may —

> (*a*)  require an associate or a person likely to become an associate to consent to having his photograph, finger prints and palm prints taken; and
>
> (*b*)  send a copy of such photograph, finger prints and palm prints and any supporting documents to the Commissioner of Police.

(8A)  The Commissioner of Police or any police officer authorised by the Commissioner shall inquire into and report to the Authority on such matters concerning the associate or person likely to become an associate as the Authority requests.

*[30/2008 wef 17/12/2008]*

(9)  Any casino operator who fails to comply with subsection (2) or (7) shall be liable to disciplinary action.

*[Vic. CCA 1991, s. 28A]*

## Division 2 — Controlled shareholdings

## Application and interpretation of this Division

casino operator.

*[Act 36 of 2012 wef 31/01/2013]*

(8B)  Every licensed international market agent shall be liable for every act, omission, neglect or default of any agent or employee of the licensed international market agent under this section, as fully and effectually as if the act, omission, neglect or default were done or committed by the licensed international market agent.

*[Act 36 of 2012 wef 31/01/2013]*

(8C)  Nothing in subsection (8A) or (8B) shall affect any liability of the agent of the casino operator, casino employee or agent or employee of the licensed international market agent by the operation of any other law.

*[Act 36 of 2012 wef 31/01/2013]*

(9)  Any person who —

    (*a*)  provides chips on credit to persons other than as permitted in subsection (7) or (7A) shall be deemed to be a moneylender for the purposes of the Moneylenders Act (Cap. 188); and

*[Act 36 of 2012 wef 31/01/2013]*

    (*b*)  lends money in accordance with this section shall be deemed not to be a moneylender for the purposes of the Moneylenders Act.

(10)  In this section, "cheque" means a cheque (other than a traveller's cheque) that —

    (*a*)  is drawn on an account of any bank for a specific amount payable on demand; and

*[Act 36 of 2012 wef 31/01/2013]*

    (*b*)  is dated but not post-dated.

*[Vic. CCA 1991, s. 68]*

## Automatic teller machines prohibited within casino premises

**109.**—(1)  A casino operator shall not provide or allow another person to provide any automatic teller machine within the boundaries of the casino premises.

(2)  Any casino operator who contravenes subsection (1) shall be liable to disciplinary action.

*[Vic. CCA 1991, s. 81AA]*

## Prohibited casino marketing arrangements

**110.**—(1)  No person shall organise or conduct a casino marketing arrangement which involves the participation of any citizen of Singapore or permanent resident of Singapore (as defined in section 116(9)).

000929

(2)  Any person who receives a commission or other payment from a casino operator or the person for the time being in charge of a casino, which commission or payment is solely or partly based on the turnover of play in the casino of any other person, or otherwise derived from the play of any other person, shall be presumed, until the contrary is proved, to be organising or conducting a casino marketing arrangement.

(3)  Any person who contravenes subsection (1) shall be guilty of an offence and shall on conviction be punished —

>  (*a*)  in the case of an individual —
>
>> (i)  for a first offence, with a fine of not less than $30,000 and not more than $300,000 and with imprisonment for a term not exceeding 4 years; and
>>
>> (ii)  for a second or subsequent offence, with a fine of not less than $30,000 and not more than $300,000 and with imprisonment for a term not exceeding 7 years; or
>
>  (*b*)  in any other case, with a fine of not less than $50,000 and not more than $500,000.

(4)  Any casino operator, licensed special employee, licensed international market agent or licensed international market agent representative which or who allows the organisation or conduct of, or is a party to, a casino marketing arrangement in contravention of subsection (1) shall be liable to disciplinary action.

*[Act 36 of 2012 wef 31/01/2013]*

**Persons required to be licensed as international market agent or international market agent representative**

**110A.**—(1)  Subject to subsection (3), no person shall perform any of the functions of an international market agent unless that person holds a valid licence granted by the Authority to be an international market agent or an international market agent representative.

(2)  The functions of an international market agent are any of the following:

>  (*a*)  organising or conducting a casino marketing arrangement (other than a casino marketing arrangement prohibited under section 110(1));
>
>  (*b*)  giving chips on credit to any patron participating in a casino marketing arrangement;
>
>  (*c*)  such other function related to a casino marketing arrangement as may be specified in the regulations made under section 110B.

000930

(3)  Regulations made under section 110B may specify any persons or class of persons who are not required to be licensed as an international market agent or an international market agent representative.

(4)  If, in the opinion of the Authority —

    (a)  any person, by reason of his remuneration or function in relation to any casino marketing arrangement, is performing a function of an international market agent or an international market agent representative; or

    (b)  the commission or other payment received by any person forms part of a series of such commission or other payments that may reasonably be considered to have been arranged for the purpose of avoiding the requirement to be licensed as an international market agent or an international market agent representative,

the Authority may, by a notice in writing given to the person, require that person to apply for the appropriate licence within the period specified in the notice.

(5)  Any person who contravenes subsection (1) shall be guilty of an offence and shall on conviction be punished —

    (a)  in the case of an individual —

        (i)  for a first offence, with a fine of not less than $30,000 and not more than $300,000 and with imprisonment for a term not exceeding 4 years; and

        (ii)  for a second or subsequent offence, with a fine of not less than $30,000 and not more than $300,000 and with imprisonment for a term not exceeding 7 years; or

    (b)  in any other case, with a fine of not less than $50,000 and not more than $500,000.

(6)  Any casino operator which allows the organisation or conduct of, or is a party to, any casino marketing arrangement with an unlicensed international market agent shall be liable to disciplinary action.

(7)  The Authority may give a direction to a casino operator to cease any further business association with —

    (a)  an unlicensed international market agent; or

    (b)  a person who failed to comply with a notice requiring him to apply for a licence under subsection (4),

from such date as may be specified in the direction, and any casino operator which fails to comply with such direction shall be liable to disciplinary action.

*[Act 36 of 2012 wef 31/01/2013]*

**Supervision and control of international market agents and international market agent representatives**

**110B.**—(1) An application to be licensed as an international market agent or an international market agent representative shall be made in the form and manner prescribed and shall be accompanied by —

    (*a*)   such fee as may be prescribed; and

    (*b*)   such documents and information as may be prescribed.

(2) The Authority may grant an international market agent licence or international market agent representative licence if, and only if, it is satisfied that the criteria specified in the regulations made under this section are met.

(3) The Authority may give a written direction to a casino operator or a licensed international market agent, or to both, that relates to the organisation or conduct of a casino marketing arrangement, including a direction as to the maximum commission or other payment which may be paid by any casino operator to a licensed international market agent for organising or conducting the casino marketing arrangement.

(4) Any casino operator or licensed international market agent which or who fails to comply with any direction under subsection (3) shall be liable to disciplinary action.

(5) The Authority may, with the approval of the Minister, make regulations for or with respect to —

    (*a*)   regulating or prohibiting the organisation and conduct of casino marketing arrangements;

    (*b*)   the licensing of international market agents and international market agent representatives;

    (*c*)   the obligations of licensed international market agents in relation to patrons participating in a casino marketing arrangement; and

    (*d*)   the obligations of casino operators in relation to international market agents and patrons participating in a casino marketing arrangement.

(6) Without prejudice to the generality of subsection (5), the regulations may —

    (*a*)   impose restrictions on who may be eligible to organise or conduct a casino marketing arrangement;

000932

(*b*)   prescribe the procedure for the application for any licence;

(*c*)   prescribe the fees to be charged;

(*d*)   require the international market agent or the casino operator concerned to give the Authority advance notice of a casino marketing arrangement and to furnish to the Authority detailed information concerning the conduct of and the arrangements for any casino marketing arrangement;

(*e*)   require any contract or other agreement that relates to the organisation or conduct of a casino marketing arrangement to be in a form, and to contain provisions, approved by the Authority;

(*f*)   require the international market agent or the casino operator concerned to give specified information concerning a casino marketing arrangement to patrons participating in the casino marketing arrangement;

(*g*)   require the international market agent or the casino operator concerned to give the Authority advance notice of, and such specified information as the Authority may require about, any casino marketing arrangement, including the patrons participating in the casino marketing arrangement;

(*h*)   require the international market agent to establish and implement a system of internal controls in accordance with prescribed requirements;

(*i*)   prescribe anti-money-laundering requirements;

(*j*)   regulate the conduct of licensed international market agents and licensed international market agent representatives and provide for disciplinary action against them, including a financial penalty not exceeding —

    (i)   $400,000 against any licensed international market agent; and

    (ii)   $10,000 against any licensed international market agent representative; and

(*k*)   provide that any contravention of any provision of the regulations shall be an offence punishable with a fine not exceeding $100,000 or with imprisonment for a term not exceeding 12 months or with both.

*[Act 36 of 2012 wef 31/01/2013]*

**Authority may suspend or cancel international market agent licence or international market agent representative licence in public interest**

**110C.**—(1) Notwithstanding any provision of this Act or the regulations made under section 110B, in any case where it appears to be necessary to the Authority to prevent

000933

any threat to the security of the public or of casino operations, the Authority may —

    (*a*)   suspend the licensed international market agent or licensed international market agent representative concerned, pending the conclusion of any investigation or disciplinary proceedings against that licensed international market agent or licensed international market agent representative; or

    (*b*)   if the Authority thinks it necessary in the public interest that the licensed international market agent or licensed international market agent representative concerned should immediately cease to perform any function in relation to any casino marketing arrangement, cancel the licence of that international market agent or international market agent representative.

(2) Any —

    (*a*)   international market agent who is aggrieved by any suspension or cancellation of his or its international market agent licence under subsection (1); or

    (*b*)   international market agent representative who is aggrieved by any suspension or cancellation of his international market agent representative licence under subsection (1) or by virtue of subsection (4),

may, within 10 days after the licence is suspended or cancelled, make representations in writing to the Authority and the Authority, after considering such representations, may confirm, vary or reverse its decision.

(3) The suspension or cancellation under subsection (1) and, where applicable, subsection (4) shall take effect notwithstanding that any representation under subsection (2) is pending, until the expiry of the period of suspension or the reversal of the decision of the Authority, if any.

(4) If the licence of any international market agent is suspended or cancelled under this section, the licence of every international market agent representative employed by that international market agent shall also be suspended for the same period or cancelled, as the case may be.

*[Act 36 of 2012 wef 31/01/2013]*

*Division 3 — Disputes between casino operator and patron*

**Resolution of dispute as to winnings, losses or manner in which game conducted**

**111.**—(1) Where a casino operator and a patron of the casino are unable to resolve to the satisfaction of the patron any dispute as to alleged winnings, alleged losses or the

000934

*[Act 36 of 2012 wef 31/01/2013]*

**Notices to be displayed**

**137.**—(1)  The Authority may, by written direction given to a casino operator, require a notice or notices to be displayed within the casino premises with respect to the exclusion from the casino premises of persons below the age of 21 years.

(2)  The direction may impose requirements as to the form, position and matter to be displayed on any such notice.

(3)  A casino operator is liable to disciplinary action if such a direction is not complied with in relation to the casino.
*[Vic. CCA 1991, s. 89]*

## PART VIII

## CASINO INTERNAL CONTROLS

**Approved system of controls to be implemented**

**138.**—(1)  A casino operator shall establish and implement a system of internal controls for the casino operations which satisfies the prescribed internal controls requirements.

*[Act 36 of 2012 wef 31/01/2013]*

(2)  The Authority may require a casino operator to submit any part of the casino operator's system of internal controls for approval by the Authority.

*[Act 36 of 2012 wef 31/01/2013]*

(3)  Any approved internal controls shall remain in force until amended or substituted with the approval of the Authority.

*[Act 36 of 2012 wef 31/01/2013]*

(4)  The casino operator shall ensure that the system of internal controls or part thereof approved for the time being under this section for the casino is implemented.

*[Act 36 of 2012 wef 31/01/2013]*

(5)  Any casino operator who fails to comply with subsection (1) or (4) shall be liable to disciplinary action.
*[Vic. CCA 1991, s. 121]*

**Customer due diligence measures to combat money laundering and terrorism financing**

**139.**—(1)  A casino operator shall, in the following circumstances, perform such customer due diligence measures to detect or prevent money laundering and the

000935

financing of terrorism as may be prescribed in regulations:

    (*a*)    when the casino operator opens a patron account;

    (*b*)    when the casino operator enters into a cash transaction with a patron involving $10,000 or more in a single transaction;

    (*c*)    when the casino operator receives a sum of $5,000 or more in a single transaction to be deposited in a deposit account;

    (*d*)    when the casino operator has a reasonable suspicion that a patron is engaged in any money laundering or terrorism financing activity;

    (*e*)    when the casino operator has doubts about the veracity or adequacy of any information previously obtained about a patron;

    (*f*)    when carrying out such other activities, or under such other circumstance, as may be prescribed.

(2) A casino operator shall not proceed with the opening of any patron account or with any transaction for any patron account, or with any cash transaction or deposit, as the case may be —

    (*a*)    if the casino operator is unable to complete the applicable customer due diligence measures for any reason;

    (*b*)    if the patron in question is unable or unwilling to provide any information requested by the casino operator, or decides to withdraw the application for the opening of the patron account or withdraw the cash transaction or deposit when requested to provide information; or

    (*c*)    under such other circumstances as may be prescribed.

(3) A casino operator shall keep all records obtained through the customer due diligence measures taken under subsection (1), including (but not limited to) all copies or records of any identification document, accounts and business correspondence, as well as the results of any analysis undertaken.

(4) Any casino operator which fails to comply with subsection (1), (2) or (3) shall be liable to disciplinary action.

(5) In this section —

    "cash" means currency notes and coins (whether of Singapore or of a foreign country) which are legal tender and circulate as money in the country of issue;

    "patron" means any person who —

        (*a*)    opens a patron account with a casino operator; or

000936

(*b*)    is involved in a cash transaction with a casino operator within its casino premises,

whether or not that person participates in gaming in the casino;

"patron account" means a credit account, a cheque cashing account, a deposit account or any other account opened by or on behalf of a patron with a casino operator.

*[Act 4 of 2014 wef 10/03/2014]*

**Banking**

**140.**—(1)  Subject to subsection (1A), a casino operator shall —

(*a*)    keep and maintain separate accounts, as approved by the Authority, at an authorised bank for use for all banking transactions arising under this Act in relation to the casino operator; and

(*b*)    from time to time provide the Authority, as required, and in a form approved by the Authority, with a written authority addressed to the authorised bank referred to in paragraph (*a*) authorising the authorised bank to comply with any requirements of an inspector exercising the powers conferred by this section.

*[Act 36 of 2012 wef 31/01/2013]*

(1A) The Authority may, on the application of a casino operator, allow specific banking transactions to be carried out at another bank, subject to such conditions as the Authority may impose.

*[Act 36 of 2012 wef 31/01/2013]*

(2) An inspector may, by notice in writing, require the manager or other principal officer of an authorised bank referred to in subsection (1) to provide the inspector with a statement of an account referred to in that subsection and such other particulars relating to the account as may be specified in the notice.

(3) A person to whom a notice is given under subsection (2) shall comply with the notice.

(4) An inspector may not exercise the powers conferred by this section without the prior written approval of the Authority.

(5) Any casino operator who fails to comply with subsection (1) or any of the conditions imposed under subsection (1A) shall be liable to disciplinary action.

*[Vic. CCA 1991, s. 123]*

*[Act 36 of 2012 wef 31/01/2013]*

000937

**Accounts to be kept**

**141.**—(1) A casino operator shall keep such accounting records as correctly record and explain the transactions and financial position of the operations of the casino.

(2) The accounting records shall be kept in such a manner as will enable true and fair financial statements and accounts to be prepared from time to time and the financial statements and accounts to be conveniently and properly audited.

(3) Any casino operator who fails to comply with subsection (1) or (2) shall be liable to disciplinary action.
*[Vic. CCA 1991, s. 124]*

**Statement of accounts**

**142.**—(1) A casino operator shall, as soon as practicable after the end of its financial year, prepare financial statements and accounts, including —

> (*a*)   trading accounts, where applicable, for the financial year;

> (*b*)   a profit and loss statement or statement of comprehensive income (or its equivalent) for the financial year; and
> *[Act 36 of 2012 wef 31/01/2013]*

> (*c*)   a statement of its financial position (or its equivalent) as at the end of the financial year that gives a true and fair view of the financial operations of the casino operator in relation to the casino.
> *[Act 36 of 2012 wef 31/01/2013]*

(2) Any casino operator who fails to comply with subsection (1) shall be liable to disciplinary action.
*[Vic. CCA 1991, s. 125]*

**Keeping of records**

**143.**—(1) A casino operator shall ensure that all records relating to the operations of the casino are —

> (*a*)   kept at a location and in a manner approved by the Authority;

> (*b*)   retained for the applicable period in sub-paragraph (i) or (ii) or for such shorter period as the Authority may, on the application of the casino operator in any particular case, allow —

>> (i)    in the case of any record referred to in section 139(3), for not less than 5 years after the date of closure of the patron account (within the meaning of section 139) to which the record relates,

000938

or after the date of the transaction to which the record relates, whichever is the later; or

    (ii)    in the case of any other record, for not less than 5 years after the completion of the transaction to which the record relates; and

*[Act 4 of 2014 wef 10/03/2014]*

    (*c*)   available for inspection by an inspector at any time during that period.

*[Act 36 of 2012 wef 31/01/2013]*

(1A)  The casino operator shall ensure that all records relating to the operations of the casino are kept in such a manner as to permit a reconstruction of individual transactions (including the amount and type of currency involved, if any) so as to provide, if necessary, evidence for prosecution of an offence.

*[Act 4 of 2014 wef 10/03/2014]*

(2)  The Authority may, by instrument in writing, grant an exemption to a casino operator from all or specified requirements of this section in respect of all or specified, or specified classes of documents and may grant such an exemption subject to conditions.

(3)  Any casino operator who fails to comply with subsection (1) or (1A) shall be liable to disciplinary action.

*[Vic. CCA 1991, s. 126]*

*[Act 4 of 2014 wef 10/03/2014]*

## Audit

**144.**—(1)  A casino operator shall, as soon as practicable after the end of its financial year, cause the books, accounts and financial statements of the casino operator in relation to the casino to be audited by a person approved by the Authority to audit the accounting records of the casino operator.

(2)  An auditor shall not be approved by the Authority as an auditor for a casino operator unless he is able to comply with such conditions in relation to the discharge of his duties as may be determined by the Authority.

(3)  The Authority may impose such additional duties on an auditor in relation to his audit of a casino operator as the Authority considers necessary, the costs of which shall be borne by the casino operator.

(4)  The casino operator shall cause the auditor's report, the financial statements referred to in section 142(1)(*b*) and (*c*) and any additional information or report requested by the Authority to be lodged with the Authority within 4 months after the end of the financial year to which the report, financial statements and additional information or report, if any, relate.

*[Act 36 of 2012 wef 31/01/2013]*

000939

(5)  Any casino operator who fails to comply with subsection (1) or (4) shall be liable to disciplinary action.
*[Vic. CCA 1991, s. 127]*

**Special audit**

**144A.**—(1)  The Authority may, at any time by a notice in writing —

   (*a*)   require a casino operator to appoint a special auditor to review or investigate the casino operator's affairs and report his findings to the Authority; and

   (*b*)   specify the terms of reference for the special audit referred to in paragraph (*a*) and the time within which it must be completed.

(2)  A casino operator to whom a notice under subsection (1) is directed shall engage, at its own expense, a public accountant approved by the Authority to be the special auditor to conduct the special audit in accordance with the terms of reference and within the time specified in the notice.

(3)  The special auditor engaged under subsection (2) shall submit his report, all relevant supporting documents and such other information or report as the Authority may require in relation to the special audit, to the Authority not later than 60 days after the conclusion of the special audit or within such other period as the Authority may specify in any particular case.

(4)  Any casino operator which fails to comply with subsection (2) shall be liable to disciplinary action.

(5)  In this section, "public accountant" means a person who is registered or deemed to be registered under the Accountants Act (Cap. 2) as a public accountant.
*[Act 36 of 2012 wef 31/01/2013]*

**Submission of reports**

**145.**—(1)  A casino operator shall submit to the Authority reports relating to the operations of the casino.

(2)  The reports are to be submitted at the times, and are to contain the information, that is specified by notice in writing given to the casino operator by the Authority from time to time.

(3)  Any casino operator who fails to comply with subsection (1) or (2) shall be liable to disciplinary action.
*[Vic. CCA 1991, s. 128]*

000940

same was properly addressed, stamped and posted by registered post.

(3) Any notice, order or document required or authorised by this Act to be served on the owner or occupier of any premises or any summons issued by a court against any such owner or occupier in connection with any offence under this Act may be served by delivering it or a true copy thereof to some adult person on the premises or, if there is no such person on the premises to whom it can with reasonable diligence be delivered, by affixing the notice, order, document or summons to some conspicuous part of the premises.

(4) Any notice, order or document required or authorised by this Act to be served on the owner or occupier of any premises or any summons issued by a court against any such owner or occupier in connection with any offence under this Act shall be deemed to be properly addressed if addressed by the description of the owner or occupier of the premises without further name or description.

## Regulations

**200.**—(1) The Authority may, with the approval of the Minister, make regulations for any purpose for which regulations are required to be made under this Act and generally for carrying out the purposes and provisions of this Act.

(2) Without prejudice to the generality of subsection (1), the Authority may, with the approval of the Minister, make regulations for or with respect to all or any of the following matters:

> (*a*) the manner of appointment, conduct and discipline and the terms and conditions of service of inspectors and other employees of the Authority;
>
> (*b*) the establishment of funds for the payment of gratuities and other benefits to employees of the Authority;
>
> (*c*) the fees to be charged in respect of anything done or any services rendered by the Authority under or by virtue of this Act;
>
> (*d*) the installations, devices and equipment to be provided on casino premises for gaming, surveillance, communications and other purposes and the maintenance of the installations, devices and equipment;
>
> (*e*) the hours of operation of a casino and any temporary cessation of operation;
>
> (*f*) the facilities and amenities to be provided for patrons of, and inspectors on duty in, a casino and the maintenance of those amenities;
>
> (*g*) the provision to players of gaming machines in a casino of information

000941

relevant to gaming on gaming machines;

(*h*)  the adjudicating of disputes between a casino operator and its patrons;

(*i*)  the provision and security of drop boxes and other places for the depositing of money;

(*j*)  with respect to casino advertising and promotions —

    (i)  regulating or prohibiting advertising and promotional activities relating to a casino, including regulating the content of any advertisement or promotion;

    (ii)  applications for the approval of advertisements or promotional activities relating to a casino, including the fees, if any; and

    (iii)  the obligations of casino operators in relation to persons who carry out advertising or promotional activities relating to a casino;

*[Act 36 of 2012 wef 31/01/2013]*

(*ja*)  applications for the approval of any part of a responsible gambling programme;

*[Act 36 of 2012 wef 31/01/2013]*

(*jb*)  the responsible gambling requirements referred to in section 170B, which may include, but are not limited to —

    (i)  the establishment by a casino operator of a system to enable a patron of its casino to set limits on his gambling expenditure or period of continuous gambling;

    (ii)  the establishment by a casino operator of a system to determine and impose a maximum number of visits which a patron may make to its casino in each month;

    (iii)  patron education;

    (iv)  provision of problem gambling assistance, intervention or facilities;

    (v)  training of casino employees in relation to responsible gambling;

    (vi)  keeping of records related to responsible gambling activities; and

000942

(vii)   regular review of responsible gambling measures;

*[Act 36 of 2012 wef 31/01/2013]*

(*k*)   the submission of reports by casino operators;

(*l*)   regulating the activities of persons who are on the casino premises in the course of their employment or prohibiting any of those activities;

*[Act 36 of 2012 wef 31/01/2013]*

(*m*)   the testing of operations, or of proposed operations, in a casino;

(*n*)   regulating the conduct of gaming and provision of credit for gaming in a casino;

(*o*)   the manufacture, supply or operation of gaming equipment for use in a casino, and the provision of testing services for such gaming equipment;

*[Act 36 of 2012 wef 31/01/2013]*

(*p*)   the movement, acquisition, storage, servicing, rectification or destruction of gaming equipment used or for use in a casino;

(*q*)   the form of controlled contracts within the meaning of section 72, the approval of the Authority in relation to specified classes of those contracts and the requirements for disclosure to the Authority of any such contracts;

(*r*)   the establishment of a system of awarding demerit points for the purpose of disciplinary actions against casino operators, licensed special employees of a casino, licensed international market agents or licensed international market agent representatives;

*[Act 36 of 2012 wef 31/01/2013]*

(*s*)   the procedure for any representations to be made against, or any request for a review of, a decision by the Authority;

*[Act 36 of 2012 wef 31/01/2013]*

(*sa*)   the procedure for disciplinary proceedings against any person licensed or approved by the Authority under this Act;

*[Act 36 of 2012 wef 31/01/2013]*

(*sb*)   regulating agents of casino operators, including any licensing or approval thereof;

*[Act 36 of 2012 wef 31/01/2013]*

(*sc*)   the furnishing of any deposit, pre-payment, performance bond or other form of security required by the Authority under this Act, and the procedure for drawing on, forfeiting or returning any such deposit, pre-payment, performance bond or other form of security;

*[Act 36 of 2012 wef 31/01/2013]*

000943

    (*sd*)   the enforcement of any written undertaking given under section 185D;

*[Act 36 of 2012 wef 31/01/2013]*

    (*se*)   the system of internal controls for casino operations;

*[Act 36 of 2012 wef 31/01/2013]*

    (*sf*)   the setting up of and requirements for a compliance function by casino operators;

*[Act 36 of 2012 wef 31/01/2013]*

    (*t*)   requirements to detect or prevent money laundering and the financing of terrorism;

*[Act 4 of 2014 wef 10/03/2014]*

    (*u*)   additional duties of auditors of casino operators;

    (*v*)   any other matter or thing required or permitted to be prescribed or necessary to be prescribed to give effect to this Act.

(3)  Regulations made under this Act —

    (*a*)   may provide that any contravention of any provision of the regulations shall be an offence punishable with —

        (i)   in the case of a casino operator, a fine not exceeding $100,000; or

        (ii)   in any other case, a fine not exceeding $10,000 or imprisonment for a term not exceeding 12 months or both;

    (*b*)   may be of general or of specially limited application;

    (*c*)   may differ according to differences in time, place or circumstance; and

    (*d*)   may provide for such transitional, savings and other consequential, incidental and supplemental provisions as the Minister considers necessary or expedient.

*[Vic. CCA 1991, s. 167]*

## Adoption of codes, standards of performance or specifications

**200A.**—(1) Any regulations made under section 200 may adopt, wholly or partially or as amended by the regulations or by reference, any code, standard of performance or specification which relates to gaming equipment, surveillance systems, internal controls, casino advertising or promotions, responsible gambling or to any other matter related to casino operations that is relevant for the purposes of this Act, and which —

    (*a*)   is issued by the Authority under section 200B; or

000944

(b)    is issued by any standards organisation or person other than the Authority (whether within or outside Singapore) and approved by the Authority under section 200B.

(2)  In any proceedings under this Act, a copy of any code, standard of performance or specification adopted under subsection (1) which is certified by the Authority as a true copy thereof shall be prima facie evidence of that code, standard of performance or specification.

*[Act 36 of 2012 wef 31/01/2013]*

**Codes, standards of performance or specifications issued or approved by Authority**

**200B.**—(1)  The Authority may, from time to time —

(a)    issue one or more codes, standards of performance or specifications applicable to casino operations;

(b)    approve as a code, standard of performance or specification applicable to casino operators any document prepared by a person other than the Authority if the Authority considers the document as suitable for this purpose; or

(c)    amend, add to or revoke any code, standard of performance or specification issued under paragraph (a) or approved under paragraph (b).

(2)  If any provision in any code, standard of performance or specification is inconsistent with any provision of this Act, such provision, to the extent of the inconsistency —

(a)    shall have effect subject to the provisions of this Act; and

(b)    having regard to the provisions of this Act, shall not have effect.

(3)  Where any code, standard of performance or specification is issued, approved, amended or revoked by the Authority under subsection (1), the Authority shall —

(a)    notify each casino operator and any other person licensed or approved by the Authority who may be affected by the issuance, approval, amendment or revocation;

(b)    specify in the notice referred to in paragraph (a) the date that the issuance, approval, amendment or revocation is to take effect; and

(c)    ensure that, so long as the code, standard of performance or specification remains in force, copies of that code, standard of performance or specification are made available to the casino operators and any other person required to comply with the code, standard of performance or

000945

specification.

(4) Any code, standard of performance or specification issued or approved under this section —

> (a)  may be of general or specific application; and
>
> (b)  may specify that different provisions thereof apply to different circumstances or provide for different cases or classes of cases.

(5) The Authority may, either generally or for such time as the Authority may specify, waive the application of any code, standard of performance or specification, or part thereof, issued or approved under this section to any casino operator or other person.

*[Act 36 of 2012 wef 31/01/2013]*

## Guidelines on compliance

**200C.**—(1)  The Authority may, from time to time and with a view to enabling any person to order his affairs in compliance with the provisions of this Act, issue such guidelines as it considers appropriate for providing guidance —

> (a)  in furtherance of its regulatory objectives; or
>
> (b)  on any matter relating to casino operations.

(2) Any person who fails to comply with any of the provisions of a guideline issued under this section that applies to him shall not of itself render that person liable to criminal proceedings but any such failure may, in any proceedings whether civil or criminal, be relied upon by any party to the proceedings as tending to establish or to negate any liability which is in question in the proceedings.

(3) For the avoidance of doubt, any guideline issued under this section shall not have legislative effect.

*[Act 36 of 2012 wef 31/01/2013]*

## Related amendments to Civil Law Act

**201.**  Section 5 of the Civil Law Act (Cap. 43) is amended by inserting, immediately after subsection (3), the following subsections:

> "(3A)  Subsections (1) and (2) shall not apply to —
>
> > (a)  a contract for gaming that is conducted under the control or supervision of a person or an organisation that is exempted under section 24 of the Common Gaming Houses Act (Cap. 49) from the provisions of that Act in respect of such gaming;