# EXHIBIT 12

# Casino Control (Prevention of Money Laundering and Terrorism Financing) Regulations 2009

# EXHIBIT 12

**Casino Control (Prevention of Money Laundering and Terrorism Financing) Regulations 2009**

**Table of Contents**

**Enacting Formula**

**Part I PRELIMINARY**

    1 Citation and commencement

    2 Definitions

**Part II CASH TRANSACTIONS IN CASINOS**

    3 Duty to file cash transaction report

    4 (Deleted)

    5 Offences

**Part III CUSTOMER DUE DILIGENCE AND RECORD-KEEPING**

    6 (Deleted)

    7 No anonymous accounts or fictitious names

    8 Identification measures for opening of patron account

    9 Verification of identity for opening of patron account

    10 Identification and verification of identity of beneficial owners

    11 Identification and verification of identity for cash transaction of $10,000 or more

12 Identification and verification of identity for deposit of $5,000 or more

13 On-going monitoring of transactions

13A Customer due diligence measures for existing customers

14 Enhanced customer due diligence for higher-risk patrons

15 (Deleted)

16 (Deleted)

**Part IV FRAMEWORK FOR PREVENTION OF MONEY LAUNDERING AND TERRORISM FINANCING, ETC.**

17 Framework for prevention of money laundering and terrorism financing

18 Training

19 Suspicious transaction reporting framework

**Part V MISCELLANEOUS**

20 Independent audit

21 Disciplinary action against casino operator

**No. S 507**

CASINO CONTROL ACT
(CHAPTER 33A)

CASINO CONTROL (PREVENTION OF MONEY LAUNDERING AND
TERRORISM FINANCING) REGULATIONS 2009

In exercise of the powers conferred by section 200 of the Casino Control Act, the Casino Regulatory Authority of Singapore, with the approval of the Minister for Home Affairs, hereby makes the following Regulations:

PART I

PRELIMINARY

**Citation and commencement**

**1.** These Regulations may be cited as the Casino Control (Prevention of Money Laundering and Terrorism Financing) Regulations 2009 and shall come into operation on 21st October 2009.

**Definitions**

**2.** In these Regulations, unless the context otherwise requires —

"authorised employee", in relation to any function, means an employee of a casino operator authorised by the casino operator to perform that function;

"beneficial owner", in relation to a patron account, means —

(*a*)   in the case of a patron account opened in the name of a body corporate or unincorporate, an individual who ultimately owns or controls that body corporate or unincorporate; or

(*b*)   a person on whose behalf the patron account is opened or the transactions in the patron account are conducted;

"branch office", in relation to a casino operator, means a place (other than any part of the casino operator's casino in Singapore), whether in Singapore or elsewhere, that offers all or any of the following services in relation to the casino operator:

(*a*)   the processing of an application to open a deposit account;

(*b*)   the receipt of an application for a credit line;

(*c*)   the receipt from a patron of any deposit or any payment for an amount owed to the casino operator;

(*d*)   the processing of a patron's request to make a withdrawal, by way of cheque or electronic funds transfer, from the patron's deposit account;

*[S 320/2015 wef 02/06/2015]*

"cash" means currency notes and coins (whether of Singapore or of a foreign

001021

country) which are legal tender and circulate as money in the country of issue;

"cash transaction report" means a report of a significant cash transaction required under regulation 3(1);

"foreign country" means a country or territory outside Singapore;

"higher-risk patron" means a patron, or a beneficial owner of a patron account, who presents a higher risk of money laundering and terrorism financing, or is a politically-exposed person;

*[S 320/2015 wef 02/06/2015]*

"identifying information" means all of the following information:

> (*a*)  full name, including any alias used;
>
> (*b*)  date of birth, for an individual, or date of incorporation or registration, for a body corporate or unincorporate;
>
> (*c*)  address, which shall be —
>
>> (i)  for an individual, the address of his usual place of residence; or
>>
>> (ii)  for a body corporate or unincorporate, the address of its principal place of business or office;
>
> (*d*)  contact number or numbers;
>
> (*e*)  nationality, for an individual, or place of incorporation or registration, for a body corporate or unincorporate;
>
> (*f*)  identification number, which shall be —
>
>> (i)  for an individual, an identity card number, a passport number, a taxpayer identification number or the number of any other document of identity issued by any government as evidence of the individual's nationality or residence and bearing a photograph of the individual; or
>>
>> (ii)  for a body corporate or unincorporate, a registration number or the number of any other document issued by any government certifying the incorporation or existence of the body corporate or unincorporate;
>
> (*g*)  the type of identifying document referred to in paragraph (*f*) and its expiry date, if any;

001022

(*h*)  occupation, for an individual, or ordinary course of business, for a body corporate or unincorporate;

[S 320/2015 wef 02/06/2015]

(*i*)  such other information as the Authority may specify in writing in any particular case;

[S 320/2015 wef 02/06/2015]

"immediate family member", in relation to an individual, means a spouse, a child, an adopted child, a stepchild, a sibling, an adopted sibling, a stepsibling, a parent or a step-parent of the individual;

[S 320/2015 wef 02/06/2015]

"patron" means any person who —

(*a*)  opens a patron account with a casino operator; or

(*b*)  is involved in a cash transaction with a casino operator within its casino premises,

whether or not that person participates in gaming in the casino;

"patron account" means a credit account, a cheque cashing account, a deposit account or any other account opened by or on behalf of a patron with a casino operator;

"politically-exposed person" means —

(*a*)  an individual who has been entrusted with any prominent public function —

(i)   in Singapore or in a foreign country; or

(ii)  in an international organisation;

(*b*)  an immediate family member of an individual referred to in paragraph (*a*); or

(*c*)  an individual who is a close associate (in a personal or professional capacity) of an individual referred to in paragraph (*a*);

[S 320/2015 wef 02/06/2015]

"prominent public function" includes the role held by a head of state, a head of government, a government minister, a senior public servant, a senior judicial or military official, a senior executive of a state-owned corporation or an international organisation, a member of the legislature or a senior official of a political party;

[S 320/2015 wef 02/06/2015]

001023

"significant cash transaction" means a single cash transaction referred to in regulation 3(1)(*a*) or collectively, the multiple cash transactions referred to in regulation 3(1)(*b*);

"suspicious transaction report" means a report disclosing any knowledge, suspicion or other matter made under section 39 of the Corruption, Drug Trafficking and Other Serious Crimes (Confiscation of Benefits) Act (Cap. 65A);

"Suspicious Transaction Reporting Officer" has the same meaning as in the Corruption, Drug Trafficking and Other Serious Crimes (Confiscation of Benefits) Act.

## PART II

## CASH TRANSACTIONS IN CASINOS

### Duty to file cash transaction report

**3.**—(1)  A casino operator shall, before the end of the applicable reporting period, file with a Suspicious Transaction Reporting Officer a cash transaction report of the following in accordance with paragraph (2):

    (*a*)    every cash transaction with a patron involving either cash in or cash out of $10,000 or more in a single transaction;

    (*b*)    multiple cash transactions which the casino operator knows are entered into by or on behalf of a patron, the aggregate of which is either cash in or cash out of $10,000 or more in any gaming day.

(2)  A cash transaction report shall —

    (*a*)    be in the form provided by the Suspicious Transaction Reporting Office established within the Commercial Affairs Department of the Singapore Police Force; and

    (*b*)    contain full and accurate information relating to the significant cash transaction being reported as specified in the form.

(3)  Any casino operator filing a cash transaction report shall, at the time the report is filed or immediately thereafter, submit a copy of the report to the Authority.

(4)  For the purposes of sub-paragraph (*b*) of paragraph (1), a casino operator is taken to have the knowledge referred to in that sub-paragraph, until the contrary is proved, if an officer, a director, or an employee of the casino operator, acting within the scope of his employment —

001024

> (a) knows that such multiple cash transactions by or on behalf of a patron have occurred; or
>
> (b) has such knowledge from examining the books, records, logs, information retained on magnetic disk, tape or other machine-readable media, or in any manual system, or similar documents and information, which the casino operator maintains pursuant to any requirement under written law or in the ordinary course of its business, and which contain information that such multiple cash transactions by or on behalf of a patron have occurred.

(5) For a period of 5 years from the date of filing a cash transaction report, the casino operator shall keep a copy of the cash transaction report filed and any supporting documentation and records relating to the transaction or transactions the subject of the cash transaction report, which shall be produced to the Authority or to a Suspicious Transaction Reporting Officer on demand.

(6) In paragraph (1) —

"applicable reporting period" means the period ending 15 days after —

> (a) the date on which the single cash transaction in paragraph (1)(a) takes place; or
>
> (b) in the case of multiple cash transactions in paragraph (1)(b), the date the last transaction of the multiple cash transactions takes place;

"cash in" means a transaction involving the receipt of cash paid by or on behalf of a patron to a casino operator, and includes —

> (a) cash received by the casino operator in exchange for chips;
>
> (b) a deposit of cash (whether at the casino or at a branch office of the casino operator) to be credited into the patron's account with the casino operator;
>
> (c) cash received (whether at the casino or at a branch office of the casino operator) in settlement of any debt owed by the patron to the casino operator or for the redemption of any cheque held by the casino operator; and

*[S 320/2015 wef 02/06/2015]*

> (d) cash inserted into a gaming machine;

"cash out" means a transaction involving the payout of cash by a casino operator to or on behalf of a patron, and includes —

> (a) cash paid by the casino operator to redeem chips;

001025

(b)   cash paid (whether at the casino or at a branch office of the casino operator) upon a withdrawal made from the patron's account with the casino operator;

(c)   cash paid by the casino operator as a complimentary item; and

(d)   cash paid by the casino operator as winnings in any tournament, contest, or other draw or game,

but does not include the payment of cash winnings derived from a jackpot obtained on a gaming machine;

"gaming day" means a 24-hour period which constitutes a normal business day of a casino, being the same period by which the casino keeps its books and records for business, accounting and tax purposes.

**4.** [*Deleted by S 412/2019 wef 03/06/2019*]

## Offences

**5.**—(1)  Any casino operator which fails to comply with regulation 3(1) shall be guilty of an offence and shall be liable on conviction to a fine not exceeding $20,000.

(2)  [*Deleted by S 412/2019 wef 03/06/2019*]

## PART III

## CUSTOMER DUE DILIGENCE AND RECORD-KEEPING

**6.** [*Deleted by S 320/2015 wef 02/06/2015*]

## No anonymous accounts or fictitious names

**7.**  A casino operator shall not open or maintain any anonymous patron account or any patron account in the name of a fictitious person.

## Identification measures for opening of patron account

**8.**—(1) A casino operator shall establish the identity of each patron who opens a patron account with the casino operator, in accordance with these Regulations and its system of internal controls.

(2)  Before opening a patron account, an authorised employee shall obtain and record, at the minimum, all of the following information:

(a)   the patron's identifying information and signature;

(b)   the amount of the initial deposit into the patron account (including the type of foreign currency and conversion rate, if applicable);

(c)   the date the patron account is opened;

*[S 320/2015 wef 02/06/2015]*

(ca)   the type and purpose of the patron account;

*[S 320/2015 wef 02/06/2015]*

(d)   the name and signature of the authorised employee who approved the opening of the patron account.

*[S 320/2015 wef 02/06/2015]*

(3)  Where the patron is a body corporate or unincorporate, the casino operator shall, apart from identifying the patron —

(a)   take reasonable measures to understand the ownership and control structure of the patron; and

(b)   establish the identities of the persons having executive authority in the body corporate or unincorporate, including but not limited to, all the directors or partners thereof.

## Verification of identity for opening of patron account

**9.**—(1)  A casino operator shall, before opening a patron account for a patron —

(a)   verify the identity of the patron, and the persons referred to in regulation 8(3) where applicable, using reliable and independent sources; and

(b)   retain a copy of all documents used in verifying the matters in sub-paragraph (a).

(2)  A casino operator shall not allow any debit or withdrawal from a patron account to be made without a licensed special employee having, on at least one prior occasion, had face-to-face contact at the casino premises with the patron in whose name the patron account is opened and verified his identity.

## Identification and verification of identity of beneficial owners

**10.**  Where there is one or more beneficial owner in relation to a patron account, the casino operator shall take reasonable measures to obtain information sufficient to identify and verify the identity of every beneficial owner of the patron account.

---

001027

**Identification and verification of identity for cash transaction of $10,000 or more**

**11.** A casino operator shall, before carrying out any cash transaction involving $10,000 or more in a single transaction with a patron —

  (*a*)  establish the identity of the patron and record the patron's identifying information; and

  (*b*)  verify the patron's identity using reliable and independent sources.

**Identification and verification of identity for deposit of $5,000 or more**

**12.**—(1) Where a deposit of $5,000 or more in a single transaction is made into a patron's deposit account, the casino operator shall —

  (*a*)  establish the identity of the person making the deposit; and

  (*b*)  where the deposit is made in person —

    (i)  record the identifying information of the person making the deposit; and

    (ii)  verify his identity using reliable and independent sources.

  (2) The casino operator shall, in addition, keep the following records in respect of every deposit referred to in paragraph (1):

  (*a*)  the date of the deposit;

  (*b*)  the amount of the deposit;

  (*c*)  the account number of the deposit account into which the deposit was made;

  (*d*)  the identifying information of the patron;

  (*e*)  the type of instrument by which the deposit is made, or whether the deposit is made in cash or chips;

  (*f*)  the name of the issuer of the instrument, if any;

  (*g*)  all reference numbers (including the number of any cheque, bank draft, money order or other instrument); and

  (*h*)  the name and special employee licence number of the authorised employee who carried out the transaction.

**On-going monitoring of transactions**

001028

**13.**—(1) A casino operator shall continually monitor the transactions in each of its patron accounts to ascertain whether the transactions are consistent with the casino operator's knowledge of the patron, his income and risk profile and his source or sources of funds.

*[S 320/2015 wef 02/06/2015]*

(1A) In determining whether to investigate any particular transaction or series of transactions in a patron account, a casino operator must have regard to the risk of money laundering and terrorism financing that the casino operator assesses the transaction or series of transactions, and the patron or the beneficial owner of that patron account, to present.

*[S 320/2015 wef 02/06/2015]*

(2) A casino operator shall periodically review the adequacy of information it has obtained in respect of patrons and beneficial owners of patron accounts and ensure that the information is kept current.

*[S 320/2015 wef 02/06/2015]*

(3) In determining the frequency of review under paragraph (2), the casino operator must have regard to —

    (*a*)    the risk of money laundering and terrorism financing that the casino operator assesses the patron in question, or the beneficial owner of the patron account in question, to present; and

    (*b*)    the thresholds of materiality established under regulation 17(4)(*a*).

*[S 320/2015 wef 02/06/2015]*

### Customer due diligence measures for existing customers

**13A.** A casino operator must, based on the casino operator's assessment of materiality and risk, perform the customer due diligence measures prescribed in this Part in relation to any transaction or series of transactions carried out by any existing patron, taking into account —

    (*a*)    any customer due diligence measures that were previously applied to that patron;

    (*b*)    when customer due diligence measures (if any) were last applied to that patron; and

    (*c*)    the adequacy of information already obtained by the casino operator in relation to that patron.

*[S 320/2015 wef 02/06/2015]*

### Enhanced customer due diligence for higher-risk patrons

**14.**—(1) A casino operator must implement appropriate policies, controls and

001029

procedures to determine if a patron, or a beneficial owner of a patron account, is a higher-risk patron.

*[S 320/2015 wef 02/06/2015]*

(1A)  A casino operator must, in addition to the customer due diligence measures prescribed in this Part, perform enhanced customer due diligence measures in relation to higher-risk patrons, including the following measures:

> (*a*)  requiring that prior approval be obtained from an employee holding a senior managerial or executive position in the casino operator before establishing dealings with a higher-risk patron, or before continuing dealings with a patron (or a beneficial owner of a patron account) who subsequently becomes a higher-risk patron;

> (*b*)  establishing by reasonable means the income level, source of wealth and source of funds of a higher-risk patron;

> (*c*)  conducting such enhanced monitoring of the transactions of the higher-risk patron as the casino operator considers appropriate having regard to the thresholds of materiality and thresholds of risk established under regulation 17(4)(*a*), which may include —

>> (i)  increasing the number of controls applied;

>> (ii)  shortening the intervals between the application of controls; and

>> (iii)  identifying and examining patterns of transactions or unusual transactions.

*[S 320/2015 wef 02/06/2015]*

(1B)  The casino operator must, at the minimum, keep the following records in respect of every transaction entered into, and every patron account opened, by a higher-risk patron:

> (*a*)  the identifying information of the higher-risk patron;

> (*b*)  the date, amount and type of transaction;

> (*c*)  the name, special employee licence number and signature of the authorised employee who carried out the transaction;

> (*d*)  the income level, source of wealth and source of funds of the higher-risk patron;

> (*e*)  the name, special employee licence number and signature of each authorised employee designated by the management of the casino operator to approve the establishment of dealings with the higher-risk patron or the

carrying out of the transaction.

*[S 320/2015 wef 02/06/2015]*

(2)  The casino operator shall keep a record in writing of its findings and decisions in relation to the matters in paragraphs (1) and (1A), which shall be produced to the Authority or to a Suspicious Transaction Reporting Officer on demand.

*[S 320/2015 wef 02/06/2015]*

(3)  [*Deleted by S 320/2015 wef 02/06/2015*]

**15.**  [*Deleted by S 320/2015 wef 02/06/2015*]

**16.**  [*Deleted by S 320/2015 wef 02/06/2015*]

## PART IV

### FRAMEWORK FOR PREVENTION OF MONEY LAUNDERING AND TERRORISM FINANCING, ETC.

*[S 320/2015 wef 02/06/2015]*

**Framework for prevention of money laundering and terrorism financing**

**17.**—(1)  A casino operator must develop and implement a framework for the prevention of money laundering and terrorism financing.

(2)  The casino operator must ensure that the framework referred to in paragraph (1) (and any subsequent alterations to the framework) —

(*a*)  is approved by the Board of Directors of the casino operator;

(*b*)  is communicated to the employees and officers of the casino operator; and

(*c*)  applies to the casino operator and all of the casino operator's branch offices.

(3)  The casino operator must include in the framework referred to in paragraph (1) —

(*a*)  policies, controls and procedures for the identification, assessment, monitoring, management and mitigation of the risks of money laundering and terrorism financing; and

(*b*)  measures relating to —

(i)  the implementation of customer due diligence measures required under the Act and these Regulations;

(ii)  the record-keeping requirements under these Regulations and in

any directions or codes issued by the Authority;

 (iii) the monitoring of the implementation of the framework;

 (iv) the prevention of transactions which would exceed the thresholds of risk established under paragraph (4)(*a*);

 (v) the appointment of an individual who holds a Category A special employee licence under the Casino Control (Licensing of Special Employees) Regulations 2009 (G.N. No. S 415/2009) as a compliance officer;

 (vi) the establishment of procedures for the screening of potential employees; and

 (vii) the regular training of employees on the framework referred to in paragraph (1) and any subsequent alterations to that framework.

(4) In formulating the framework referred to in paragraph (1), the casino operator must —

 (*a*) establish thresholds of materiality and thresholds of risk to prevent, and to mitigate the risks of, money laundering and terrorism financing;

 (*b*) take note of any new or developing thing, including any product, business practice or technology (especially technology that favours anonymity) or any other activity that may increase the risks of money laundering and terrorism financing being conducted through or facilitated by the casino;

 (*c*) consider, before any sale, supply, provision or implementation of the new or developing thing referred to in sub-paragraph (*b*) commences, the risks of money laundering and terrorism financing that may arise as a result of such sale, supply, provision or implementation of the thing; and

 (*d*) consider all relevant risk factors relating to money laundering and terrorism financing, including —

  (i) the risks posed by individual patrons or categories of patrons;

  (ii) whether individual patrons or categories of patrons are from any jurisdiction —

   (A) that the casino operator identifies to have inadequate

> > measures to prevent money laundering or terrorism financing;
>
> > (B)  that the Authority or any regulatory authority (whether local or foreign) notifies the casino operator has inadequate measures to prevent money laundering or terrorism financing;
>
> > (C)  that the casino operator knows any regulatory authority (whether local or foreign), or the intergovernmental body known as the Financial Action Task Force, has identified to have inadequate measures to prevent money laundering or terrorism financing; or
>
> > (D)  in relation to which the intergovernmental body known as the Financial Action Task Force has called for the imposition of measures to prevent money laundering or terrorism financing; and
>
> (iii)  the type of services and transactions provided, the modes of payment for those services and transactions, and whether any of those services or transactions will be conducted outside Singapore.

(5)  The casino operator must review the framework referred to in paragraph (1) at least once every year, and must —

> (a)  assess and enhance the effectiveness of that framework in monitoring and reducing the risks of money laundering and terrorism financing being conducted through the casino or facilitated by the casino operator; and
>
> (b)  identify any developments which may increase the risks of money laundering and terrorism financing, and establish new policies, controls and procedures to minimise the casino operator's, and the casino's, exposure to such risks.

(6)  If the framework referred to in paragraph (1) is assessed under paragraph (5)(*a*) to be inadequate, the casino operator must take steps to enhance the effectiveness of the framework.

(7)  The casino operator must —

> (a)  keep a record in writing of its findings and decisions, and the reasons for

001033

those findings and decisions, in relation to the matters referred to in paragraphs (1) to (6); and

(b)    produce that record to the Authority on demand.

*[S 320/2015 wef 02/06/2015]*

## Training

**18.** A casino operator shall take all necessary steps to ensure that its employees (whether based in Singapore or elsewhere) are regularly trained on —

(a)    the laws relating to the prevention of money laundering and financing of terrorism, and in particular —

(i)    the customer due diligence measures required to be carried out;

(ii)    the detection and reporting of significant cash transactions; and

(iii)    the detection and reporting of suspicious transactions;

(b)    the prevailing techniques, methods and trends in money laundering and financing of terrorism; and

(c)    the casino operator's policies, controls and procedures and the roles and responsibilities of its employees in preventing money laundering and financing of terrorism.

*[S 320/2015 wef 02/06/2015]*

## Suspicious transaction reporting framework

**19.**—(1) A casino operator must develop and implement a suspicious transaction reporting framework.

(2) The casino operator must ensure that the framework referred to in paragraph (1) (including any subsequent alterations of the framework) —

(a)    is approved by the Board of Directors of the casino operator;

(b)    is communicated to the employees and officers of the casino operator; and

(c)    applies to the casino operator and all of the casino operator's branch offices.

(3) The casino operator must include in the framework referred to in paragraph (1) —

(a)    policies, controls and procedures for the detection of unusual or suspicious applications or transactions, and for the filing of suspicious transaction

reports and the making of disclosures under the Terrorism (Suppression of Financing) Act (Cap. 325); and

(b) measures relating to —

(i) the training of employees in the identification and reporting of unusual or suspicious transactions (including significant cash transactions);

(ii) the implementation of procedures using all relevant information available to the casino operator to detect any unusual or suspicious transactions and any unusual or suspicious patterns of transactions; and

(iii) the use of automated programs to aid in the identification and reporting of suspicious transactions.

(4) In formulating the framework referred to in paragraph (1), the casino operator must —

(a) ensure that the framework takes into account the thresholds of risk established under regulation 17(4)(a); and

(b) include policies, controls and procedures for compliance with the framework and any written law relating to the reporting of suspicious transactions.

(5) The casino operator must review the framework referred to in paragraph (1) at least once every year, and must assess the effectiveness of that framework.

(6) If the framework referred to in paragraph (1) is assessed under paragraph (5) to be inadequate, the casino operator must take steps to enhance the effectiveness of the framework.

(7) The casino operator must —

(a) keep a record in writing of its findings and decisions, and the reasons for those findings and decisions, in relation to the matters referred to in paragraphs (1) to (6); and

(b) produce that record to the Authority on demand.

(8) The casino operator must, at the time or immediately after it files a suspicious transaction report, submit a copy of the report to the Authority.

[S 320/2015 wef 02/06/2015]

PART V

MISCELLANEOUS

*[S 320/2015 wef 02/06/2015]*

**Independent audit**

**20.**—(1)  A casino operator must conduct an independent audit at least once every year to ensure that the requirements in regulations 17 and 19 have been complied with.

(2)  The casino operator must —

(*a*)  keep a written record of the findings of each independent audit conducted under paragraph (1) and any actions taken by the casino operator to address those findings; and

(*b*)  produce that record to the Authority on demand.

*[S 320/2015 wef 02/06/2015]*

**Disciplinary action against casino operator**

**21.**  A casino operator is liable to disciplinary action under section 54 of the Act if the casino operator fails to comply with —

(*a*)  regulation 3(3) or (5), 17(1), (2), (3), (4), (5), (6) or (7), 18, 19(1), (2), (3), (4), (5), (6), (7) or (8) or 20(1) or (2); or

(*b*)  any requirement in Part III.

*[S 320/2015 wef 02/06/2015]*

Made this 16th day of October 2009.

RICHARD MAGNUS
*Chairman,*
*Casino Regulatory Authority of Singapore.*

[CRA 20/4/6C Vol. 1; AG/LEG/SL/33A/2006/7 Vol. 1]