# EXHIBIT 25

Judgment filed in Action No. 997 of 2017 between Marina Bay Sands Pte. Ltd. and Li Chi Yan, dated 11/13/2017 (High Court of the Hong Kong Special Administrative Court of First Instance)

# EXHIBIT 25

HCA 997/2017

# IN THE HIGH COURT OF THE
# HONG KONG SPECIAL ADMINISTRATIVE REGION
## COURT OF FIRST INSTANCE
ACTION NO 997 OF 2017

---

BETWEEN

MARINA BAY SANDS PTE. LTD      Plaintiff

and

LI CHI YAN (李志仁)      Defendant

---

Before: Hon Au-Yeung J in Chambers

Date of Hearing: 26 October 2017

Date of Judgment: 13 November 2017

---

## JUDGMENT

---

*Introduction*

1.        This is an application for summary judgment by a licensed casino to recover a debt due under a credit agreement or a dishonoured cheque. The defendant disputes the identity of the creditor and raised the defence of *non est factum* as regards the credit agreement

001098

- 2 -

*Undisputed facts*

2.　　　The Plaintiff is a licensed casino in Singapore. The defendant is a Hong Kong permanent resident and was a patron of the Plaintiff at the material time.

3.　　　The credit relationship between the Plaintiff and the Defendant and the advancement of credit were evidenced by the following documents:

(a)　A "贷款申请" signed by the Defendant ("**the Application for Credit**") dated 24 July 2015 to apply for credit facility from the Plaintiff;

(b)　A credit agreement entitled "滨海湾金沙有限公司信贷合同" signed between the Plaintiff and the Defendant ("**the Credit Agreement**") on the same day which set out the terms and conditions and the credit limit; "信贷限额（新币）" was stated to be SGD2,000,000;

(c)　A cheque payable to the Plaintiff signed by the defendant in blank at the time of delivery to the Plaintiff;

(d)　7 markers in the total sum of SGD700,000 and a Premium Player Qualification Withdrawal Slip in the sum of SGD100,000 (collectively "**the Markers**") signed by the Defendant from 24 to 26 July 2015, as evidence of receipt of gaming chips of the amounts stated on the Markers.

001099

4.        A number of partial payments was made to reduce the original balance of SGD800,000 represented by the Markers to SGD478,927.

5.        On 16 March 2016, the Plaintiff completed the blank cheque. The cheque was dishonoured upon presentation for payment on 30 March 2016 for the reason of "awaiting drawer's confirmation".

6.        The Plaintiff seeks to recover the following sums in the alternative:

(a)    SGD478,927 being the outstanding amount due to it under the Credit Agreement; or

(b)    HK$2,495,303 being the amount of the dishonoured cheque ("**the Cheque**") to settle the outstanding balance under the Credit Agreement.   This amount was slightly less than item (a) when converted into Singapore dollar at the date of presentation, because when the Cheque was presented the Plaintiff gave the Defendant credit for some commissions under a Player Program Agreement, to which the Defendant was no longer entitled after the Cheque was dishonoured.

*The parties' respective case*

7.        The Plaintiff's case is simple, being premised on the Credit Agreement and the Markers, alternatively the Cheque.

8.        The Defendant claims not to know English.  He challenges the enforceability of the credit and the identity of his creditor.

9.          He claims that his creditors were junkets called Mr Dai Deming ("**Mr Dai**"), his boss, Mr Chan Lo Shang ("**Mr Chan**") who was Mr Dai's boss and Mr Jimmy Wai ("**Mr Wai**").  One or more of them would accompany him to the Plaintiff's casino in Singapore and lent him money.

10.          Each time at the Plaintiff's casino, the Defendant was asked to sign some documents in English which he understood was a requirement before he would be allowed to turn over the cards of the banker at the baccarat table ("**the Requirement**").

11.          In July 2015, the time when the subject transactions took place, it was Mr Dai who went with the Defendant to the Plaintiff's casino.  He agreed to pay 20% of his winnings to Mr Dai if he won and repay Mr Dai by 10 instalments if he lost, at an agreed exchange rate of SGD1 to HK$6.

12.          The Defendant lost SGD800,000 in this trip. He had repaid a total of HK$2.4 million and the balance debt is HK$2,400,000.

13.          The defences are therefore:

(a)    *Non est factum*;

(b)    Enforceability of the credit; and

(c)    The identity of the true creditor.

14.          The Defendant said nothing about the dishonoured Cheque.

001101

*Legal principles*

15.        There is no dispute on the principles governing the grant of summary judgment.  It is for the defendant to show a triable issue which is believable, and not that it is to be believed: *Ng Shou Chun v Hung Chun San* [1994] 1 HKC 155, p4, Godfrey JA.  Whether the defendant's assertions are believable is a question to be answered not by taking those assertions in isolation by rather by taking them in the context of so much of the background as is either undisputed or beyond reasonable dispute: *Re Safe Rich Industries Ltd,* CACV 81/1994, p5, Bokhary JA (as he then was).

16.        If the defence asserted is less than probably but more than shadowy, unconditional leave should be granted; where shadowy, then it may be appropriate to grant conditional leave: *Tong Nai Kan v Francis Cheung King Fung* [1999] HKCU 357, at p5, per Stock J (as he then was).

17.        The court will not embark on a mini-trial on the basis of affidavit evidence.

*Defence A: non est factum*

18.        The defendant claims not to know English. He was told that if he did not sign the documents, he would not be allowed to uncover the cards.

19.        An adult with full capacity will be bound by a document signed by him.  Negligence or careless on his part would exclude the defence of *non est factum*: *Chitty on Contracts,* 32nd ed, Vol 1, §3-054.

- 6 -

20.      Mr Wong (with Mr Chong), counsel for the Defendant, accepts that he has an uphill fight on this defence.

21.      The Defendant is of full age and capacity. He admits that he was given documents to sign by the staff *of the Plaintiff.* He was told of the Requirement by Mr Dai but there was no evidence that Mr Dai was the agent of the Plaintiff. Mr Wong has confirmed in his oral and written submission that the junkets were *of the Defendant* and not of the Plaintiff.

22.      Notwithstanding the small font size, the Application for Credit and the Credit Agreement had Chinese characters like 貸款申請/借貸 and figures clearly printed on them. Although the Markers were not in Chinese, they clearly bore figures of varying amounts. Chips of the stated amounts were given to the Defendant on credit.

23.      The Defendant was a seasoned gambler who had gambled in other casinos before, including a sister casino of the Plaintiff in Las Vegas. He knew he was gambling with chips the money for which was borrowed. However, there was no evidence that he had checked or asked why different figures were stated on all those documents.

24.      Mr Wong has not shown authority in support of the proposition that the Plaintiff had a duty to explain the contents of the Credit Agreement or the Markers to the Defendant.

25.      The Defendant could hardly show that he was not careless or negligent. The defence of *non est factum* is not available to him.

001103

*Defence B: enforceability of the credit*

26.        Gaming credit is enforceable if the loan agreement was valid under its governing law: *Wong Hon v Sheraton Desert Inn Corporation* [1995] 3 HKC 331.

27.        The Plaintiff has filed an affirmation by a Singaporean legal expert which shows that gaming credit provided by the Plaintiff as a licensed casino is an enforceable contract under the Casino Control Act of Singapore.  The enforceability of gaming credit granted by the Plaintiff has been judicially recognized by the Court of Appeal in Singapore in the past.

28.        There is no legal expert evidence from the Defendant to contradict the Plaintiff's evidence on Singaporean law.  Nor is there evidence to show that the 3 junkets were the Plaintiff's agents.  In fact, Mr Wong has in his oral and written submission confirmed that the junkets were *of the Defendant*.  This line of defence is simply unarguable.

*Defence C: identity of the true creditor*

29.        The strongest piece of evidence of the Defendant is that he had made repayments to Mr Dai or his sister between July and December 2015 and there were bank documents in support.  One of those payments was for HK$480,000 transferred by the Defendant to Mr Dai's sister on 30 July 2015, just a few days after the Defendant had gambled at the Plaintiff's casino.

001104

- 8 -

30.        The Plaintiff denies that it had any gaming promoter. It asserted that Mr Wai was a marketing employee of its holding company Las Vegas Sands whereas Mr Chan was its patron and Mr Dai Las Vegas Sands' patron.  The Plaintiff had received repayments made on behalf of the Defendant through third parties (including Mr Chan) and a cashier order.

31.        The Plaintiff's version in the preceding paragraph only appeared in its affirmations in reply although the Defendant has never sought leave to file further affirmation in response.

32.        However, even on the Plaintiff's own evidence, the Defendant has never repaid the Plaintiff directly and yet the balance due has been reduced by about half.  The documents showing purported repayments by third parties were the Plaintiff's internal documents.  One of the third parties was purportedly Mr Chan; but none of the third parties were Mr Dai.  And yet, "coincidentally", the Plaintiff received the cashier order for HK$500,000 from an unknown source on the same day (18 December 2015) that the Defendant transferred $480,000 to Mr Dai.

33.        The defence as to identity of the creditor is more than shadowy.

*The Dishonoured Cheque*

34.        The Cheque, being supported by consideration, is enforceable even if the underlying transaction may not be enforceable, as

long as the same is not illegal: *Melco Crown Gaming (Macau) Limited v Huang Haichao,* CACV 153/2013, CA, 7 August 2015, §9, Barma JA.

35.    There is no evidence to show that the underlying transaction was illegal. The Defendant was completely silent as to how his *personal* cheque came into the Plaintiff's possession. Even if there is any issue concerning the enforceability of the Credit Agreement, the Defendant still has no defence to the claim under the Cheque.

*Conclusion*

36.    I order as follows:

(1)    There be partial judgment to the Plaintiff on the Cheque in the sum of HK$2,495,303;

(2)    On a *nisi* basis, there be interest from 30 March 2016 to the date of judgment at judgment rate and thereafter at judgment rate until the date of payment;

(3)    The Defendant shall have unconditional leave to defend for the difference between SGD478,927 and HK$2,495,303.

(4)    The defence shall be filed and served within 28 days from the date of this judgment.

(5)    Unless any party objects in writing with reasons within 14 days from the date of handing down of this judgment, this case shall be transferred to the District Court.

37.    The evidence concerning the Cheque was limited but the bulk of the defence has failed. I order, on a nisi basis, that 75% of the

001106

costs should follow the event and be to the Plaintiff, summarily assessed at HK$112,500.

38.    I thank Mr Law, Mr Wong and Mr Chong for their assistance.

(Queeny Au-Yeung)
Judge of the Court of First Instance
High Court

Mr Vincent Law (Solicitor Advocate) of Mayer Brown JSM, for the plaintiff

Mr Timothy Y H Wong and Mr Gilbert H W Chong, instructed by Chan, Evans, Chung & To, for the defendant

001107