John P. Aldrich, Esq.
NV Bar No. 6877
**Aldrich Law Firm, Ltd.**
7866 West Sahara Ave.
Las Vegas, NV 89117
Tel: (702) 853-5490

Shannon L. Hopkins (*Pro Hac Vice*)
Adam Apton (To Be Admitted *Pro Hac Vice*)
**Levi & Korsinsky, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE DANIELS FAMILY 2001 REVOCABLE TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS SANDS CORP., SHELDON G. ADELSON, and PATRICK DUMONT,<br><br>Defendants. | Case No. 2:20-cv-01958-GMN-EJY<br><br><br>**PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES** |

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT .............................................................................................2

II.   BACKGROUND ...............................................................................................................3

      A.    Factual Allegations ...........................................................................................3

      B.    The Motion to Dismiss Order ...........................................................................5

III.  ARGUMENT.....................................................................................................................6

      A.    Applicable Legal Standards ...............................................................................6

      B.    Plaintiffs' Motion for Reconsideration Should be Granted ................................6

            1.    The Court Incorrectly Analyzed Misstatements Alleged to be *Affirmatively* Misleading Under an Omissions Theory of Liability ................................6

            2.    The Court Overlooked Plaintiffs' Argument in Response to Defendants' Challenge to the Misstatements Relating to LVS's Disclosure Controls ..............10

      C.    Plaintiffs' Request to File an Amended Complaint After a Decision on the Instant Motion Should Be Granted.....................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)................................................................................................................. 7

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ............................................................................................... 2, 7

*Delmonte-Wright v. Geico Cas. Co.*,
   2019 U.S. Dist. LEXIS 193587 (D. Nev. Nov. 7, 2019) ...................................................... 6

*Edwards v. Gentry*,
   2021 U.S. Dist. LEXIS 241918 (D. Nev. Dec. 17, 2021)..................................................... 6

*Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*,
   2021 U.S. Dist. LEXIS 160215 (N.D. Cal. Aug. 24, 2021).............................................. 10

*Forman v. Meridian Bioscience, Inc.*,
   387 F. Supp. 3d 791 (S.D. Ohio 2019) ............................................................................. 10

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) .............................................................................................. 6

*In re Petrobras Sec. Litig.*,
   116 F. Supp. 3d 368 (S.D.N.Y. 2015)................................................................................ 10

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................................ 7

*Richman v. Goldman Sachs Grp., Inc.*,
   868 F. Supp. 2d 261 (S.D.N.Y. 2012)................................................................................ 10

*Sohol v. Yan*,
   2016 U.S. Dist. LEXIS 56049 (N.D. Ohio Apr. 27, 2016)........................................... 10, 11

*United States v. Lloyd*,
   807 F.3d 1128 (9th Cir. 2015) .............................................................................................. 7

*Westley v. Oclaro, Inc.*,
   897 F. Supp. 2d 902 (N.D. Cal. 2013) ........................................................................... 10, 11

**Other Authorities**

L.R. 59-1 .................................................................................................................................. 6

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

COME NOW Court-appointed Lead Plaintiffs Carl S. Ciaccio and Donald M. DeSalvo ("Plaintiffs"), by and through their counsel, hereby respectfully move this Court for an Order: (1) reconsidering certain aspects of the Court's March 28, 2022 Order granting the Defendants' Motion to Dismiss Amended Class Action Complaint (the "MTD Order"), ECF No. 52; and (2) granting Plaintiffs ten (10) days from the Court's ruling on the instant Motion for Reconsideration to amend their complaint.

Plaintiffs seek reconsideration of the Court's MTD Order pursuant to Local Rule 59-1. In support of this Motion, Plaintiffs respectfully submit the following memorandum of points and authorities and the Court's complete files and records in this action, as well as such further argument as the Court may allow at a hearing on this motion.

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

Pursuant to Local Rule 59-1, Plaintiffs hereby move for reconsideration, in part, of the Court's March 28, 2022 Order granting the defendants' motion to dismiss (the "MTD Order") (Doc. 74) the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint"). ECF No. 36.

## I.   PRELIMINARY STATEMENT

On March 8, 2021, Plaintiffs filed their Complaint asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against the Defendants for the period February 27, 2016 through September 15, 2020, inclusive (the "Class Period"). The Court dismissed the Complaint on March 28, 2022 finding that, while Plaintiffs adequately alleged Defendants engaged in a scheme to facilitate the unauthorized transfer of money from VIP gambler accounts to purported "premium players" who did not actually qualify for credit, the Court dismissed the Complaint for failure to plead falsity, with leave to replead within 21 days.

Plaintiffs bring the instant Motion for Reconsideration based on two grounds. *First*, in finding Plaintiffs failed to plead falsity, the Court improperly analyzed all of the alleged false and misleading statements under an omissions theory of liability. But Plaintiffs allege an *affirmative* misrepresentations theory of liability with respect to misstatements concerning LVS's lending practices and compliance with local anti-money laundering regulations. For instance, Plaintiffs allege Defendants' statements that LVS "extend[s] credit to those customers whose level of play and financial resources warrant," "extends credit to approved casino customers following background checks and investigations of creditworthiness" and fully complied with the Company's underwriting and anti-money laundering policies (the "Credit and Compliance Misstatements") were affirmatively false because, in contradiction of Defendants' statement, LVS implemented a business model that did not consider customer ability to pay or creditworthiness and, instead, extended credit to "subprime" customers.

Under applicable law, an affirmative misrepresentation is actionable where, as here, "it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). That is precisely what Plaintiffs allege here—Defendants publicly stated that LVS extended credit to qualified customers when, in fact, LVS extended credit to non-qualifying "subprime" customers through the unauthorized transfer scheme. Moreover, in light of the Court's finding that Plaintiffs adequately alleged

2
PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

the unauthorized transfer scheme, the Credit and Compliance Misstatements are actionable under the federal securities laws.

Second, the Court dismissed, with prejudice, Plaintiffs' alleged misstatements concerning LVS's compliance with internal controls under the mistaken belief that Plaintiffs did not respond to Defendants' arguments in their opposition brief. But Plaintiffs *did* respond to that point with substantive argument and even confirmed (in a footnote) that their argument applied with force to Defendants' statements about LVS's internal controls. The Court overlooked this point and, in error, dismissed the internal control misstatements with prejudice.

Accordingly, Plaintiffs respectfully request that the Court: (i) grant this Motion for Reconsideration; (ii) find the Credit and Compliance Statements actionable affirmative misrepresentations; and (iii) allow Plaintiffs to replead the internal control statements. In addition, because the Court's ruling on the instant motion will likely affect the allegations in the forthcoming amended complaint, and in the interest of efficiency, Plaintiffs further request that the Court allow Plaintiffs to file their amended complaint within ten (10) days of the Court ruling on this Motion.

## II.    BACKGROUND

### A. Factual Allegations

LVS is the largest casino operator in the world, deriving revenues primarily from casinos operating in Las Vegas, the Marina Bay Sands in Singapore ("MBS"), and casinos in the Macao Special Administrative Region ("Macao") of the People's Republic of China ("China"). ¶1[1]. MBS, which has contributed up to 43% of LVS's annual revenue, is one of only two casinos licensed to operate in Singapore. ¶¶2, 63-68.

Historically, MBS extended large lines of credit to "premium players,"[2] forming an informal bank at the casino that both lent money to players and allowed these individuals to "bank" their winnings

---

[1] All references to "¶__" are to Plaintiffs' Amended Complaint. ECF No. 36.

[2] Singapore's Casino control Act prohibited MBS from extending credit to casino patrons unless they were "premium players," defined as a person who opens a deposit account with the casino and deposits at least SGD $100,000 (approximately $75,000 USD). ¶¶100-02.

on a private ledger maintained at MBS. ¶4. In response to tightened regulations, however, the number of "premium players" that were gambling in Singapore declined, resulting in less revenue from MBS. Thus, MBS began extending credit to purported "premium players" who did not actually have the requisite "financial resources" or "creditworthiness." ¶¶5, 104, 108. MBS accomplished this by secretly moving money between the in-house accounts of their VIP patrons without the patron's permission or knowledge, to otherwise ineligible players with "subprime" credit so it appeared on paper that "premium player" eligibility requirements were met. ¶¶11, 144-46. Defendants' unauthorized transfers violated MBS' internal underwriting standards and local anti-money laundering laws and resulted in a significant increase in uncollectible accounts when these subprime customers inevitably could not repay the loan. ¶¶11, 109.

Former MBS employees confirmed that the unauthorized transfer practice was pervasive and the casino's compliance function did not conduct any meaningful oversight or stop it. ¶¶112-29. When employees did try to address issue, senior executives told them to stand down and they faced retaliation. ¶17. Despite LVS's pervasive unauthorized credit lending practices, Defendants falsely represented during the Class Period that LVS "extend[s] credit to those customers whose level of play and financial resources warrant," "extends credit to approved casino customers following background checks and investigations of creditworthiness" and fully complied with the Company's underwriting polices and local anti-money laundering laws because LVS was "a big believer that compliance is critical." ¶¶167, 170, 178, 180.

Internal investigations conducted by both LVS and global law firm Hogan Lovells confirmed Defendants' statements were false when made. Hogan Lovells found that between 2013 and 2017, more than 3,000 letters of authorization were used to endorse transfers of funds from patrons to third parties in an amount totaling approximately SGD$1.4 billion, of which SGD$365 million (or **more than 26%**) were unauthorized. ¶19.

News of MBS's unauthorized transfer practice emerged when a former MBS patron and Chinese national named Wang Xi sued the casino for misappropriating approximately $6.1 million USD from his accounts through 22 separate transactions between October and December 2015. ¶16. Mr. Wang's September 2019 lawsuit was followed by investigations by the United States Department of Justice,

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

Singapore Police, and Singapore's Casino Regulatory Authority ("CRA") before MBS settled with Wang in exchange for *full* payment of his damages. *Id.*

As news of these investigations reached the public, LVS's stock price declined over 13%, or $7.41 per share, between September 26, 2019 and September 15, 2020. ¶¶221-43.

**B. The Motion to Dismiss Order**

After full briefing on Defendants' motion to dismiss ("Motion to Dismiss"), on March 28, 2022, the Court issued an Order granting Defendants' Motion to Dismiss and allowing Plaintiffs an opportunity to replead certain alleged misstatements within twenty-one (21) days of the Order. ECF No.74. The Order found that Plaintiffs "plausibly allege[d]" an unauthorized transfer scheme that existed at the time Defendants made the alleged false and misleading statements. Order at 17; *id.* at 19 ("Plaintiffs' allegations of the Hogan Lovells investigation and the Wang Xi lawsuit together support an inference that a scheme existed.").

The Court, however, dismissed the Complaint on the grounds that Plaintiffs failed to adequately allege a false statement. Order at 20.[3] In so finding, the Court incorrectly analyzed all the alleged misstatements under an omissions theory of liability. *Id.* ("Plaintiffs, in the present case, fail to plausibly allege false and misleading statements by omission."). From there, the Court found that Plaintiffs failed to plead a duty to disclose the unauthorized transfer scheme. Order at 20-21 (citing paragraphs in the Amended Complaint).

Plaintiffs, however, allege an *affirmative* misrepresentation theory for the Credit and Compliance Misstatements. Thus, the Court erred in analyzing the Credit and Compliance Misstatements under an omissions theory. Analyzing those statements under the correct standard as affirmative misrepresentations, and in conjunction with the Court's conclusion that Plaintiffs adequately alleged the unauthorized transfer scheme, leads to the inescapable conclusion that Plaintiffs adequately alleged the falsity of the Credit and Compliance Misstatements.

The Court also erred by dismissing Plaintiffs' internal control misstatements, with prejudice, on the grounds that Plaintiffs did not address Defendants' arguments for dismissal and, thus, consented to

---

[3] Because the Court found Plaintiffs failed to allege a false statement, it did not address Defendants' arguments on scienter and loss causation. Order at 22.

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

dismissal of those statements. Order at 21-22. But Plaintiffs *did* address the internal control statements on page 12 and confirmed in footnote 5 that their arguments applied specifically to LVS's internal control statements, stating "[f]or this reason, LVS's representations about the effectiveness and adequacy of its 'disclosure controls and procedures' were also materially misleading." *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint (the "Opp. Br."), ECF No. 66, at 12 n.5. Accordingly, Plaintiffs should also be given the opportunity to replead the internal control misstatements.

## III.    ARGUMENT

### A.    Applicable Legal Standards

Pursuant to Local Rule 59-1, reconsideration is appropriate where: (1) the court is presented with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *Delmonte-Wright v. Geico Cas. Co.*, 2019 U.S. Dist. LEXIS 193587, at *3 (D. Nev. Nov. 7, 2019); L.R. 59-1. A party may not move for reconsideration to simply reargue its case. *Id.* Whether to grant a motion for reconsideration is within the Court's discretion. *Edwards v. Gentry*, 2021 U.S. Dist. LEXIS 241918, at *3 (D. Nev. Dec. 17, 2021).

Plaintiffs seek the Court's reconsideration of the MTD Order because the Court committed clear error resulting in a decision that is manifestly unjust to Plaintiffs where the Court: (1) applied the wrong legal standard to Plaintiffs' *affirmative* Credit and Compliance Misstatements; and (2) overlooked Plaintiffs' argument in opposition to Defendants' challenges to the internal control misstatements.

### B.    Plaintiffs' Motion for Reconsideration Should be Granted

#### 1.    The Court Incorrectly Analyzed Misstatements Alleged to be *Affirmatively* Misleading Under an Omissions Theory of Liability

Liability under Section 10(b) requires the plaintiff to prove a misleading statement or omission of material fact. Critically, there are different ways in which a plaintiff can meet this requirement. "[A] statement might be misleading because it affirmatively misstates information. Or a statement might be misleading because it is made outside the context of other material information." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir. 2014). Only in the latter instance must a plaintiff point to a

separate "duty to disclose" in support of his or her allegations. *See id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988)); *see also United States v. Lloyd*, 807 F.3d 1128, 1153 (9th Cir. 2015) (concluding that fraud cases based on affirmative misrepresentations do not require proof of a duty to disclose). Respectfully, in granting Defendants' motion to dismiss, the Court incorrectly faulted Plaintiff for failing to identify a "duty to disclose" when, as a matter of binding law, no such duty to disclose was necessary.

For the Credit and Compliance Misstatements, Plaintiffs allege an *affirmative* misrepresentation theory of liability, meaning they need only show Defendants' statements "[gave] a reasonable investor the impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Berson*, 527 F.3d at 985; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018) ("[O]nce defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information.") (quotation marks and brackets omitted).

As demonstrated in the following table, Plaintiffs' allegations satisfied this pleading requirement concerning Defendants' statements about LVS's practices and procedures for extending credit and regulatory compliance with money transfers regulations (the Credit and Compliance Misstatements):

| Date | Affirmative Misstatement | Reasons Alleged False |
|---|---|---|
| 2/26/16, 2/24/17, 2/23/18, 2/22/19, 2/7/20 | "We extend credit to those customers whose level of play and financial resources warrant, in the opinion of management, an extension of credit." ¶¶163, 167, 170. | "[M]anagement at MBS regularly told credit managers specifically to exclude financial resources as a factor in determining whether to extend credit to certain patrons, or overrode any credit analyses, as reported by CW-2." ¶169.<br><br>In contradiction of Defendants' statement, LVS implemented a business model that did not consider customer ability to pay or creditworthiness and, instead, provided credit to "subprime" customers. ¶171. |
| 2/26/16, 2/24/17, 2/23/18, | LVS "extends credit to approved casino customers following background checks and investigations of creditworthiness." ¶178. | "Moreover, the statements concerning the extension of credit to approved customers premised on 'background checks' and 'investigations of creditworthiness' were false and misleading because credit was being |

7

| 2/22/19, 2/7/20 | | extended pursuant to the operation of a scheme" whereby credit was extended to "subprime borrowers." ¶179. |
|---|---|---|
| 3/10/16 | J.P. Morgan Gaming, Lodging, Restaurant & Leisure Management Access Forum.<br><br>Analyst: question about extending illegal credit as follows:<br><br>Defendant Goldstein response:<br>but it's not that simple to move money and not that simple to comply and not that simple to get to Singapore and be a high roller over there. **No, the answer is, I've not seen evidence of that. In fact, in anything, I say, today it's harder to move money than ever, especially in our hotels, because we're very compliant and we're very proud of our compliance record**. ¶180. | Contrary to this statement, and "at the same time Goldstein was espousing LVS' purported compliance focus, specifically with respect to overseeing money transfers into Singapore, MBS' team on the ground was employing a business model that sought to extend credit to gamblers built on a scheme to falsely accredit otherwise subprime borrowers through the unauthorized movement of hundreds of millions of dollars between accounts." ¶181. |
| 3/10/16 | J.P. Morgan Gaming, Lodging, Restaurant & Leisure Management Access Forum.<br><br>Defendant Goldstein response:<br>Yes. Because we're very much a – probably the biggest reason why. We're very much asked the question where does it come from, who are you, how do you get credit, how do you – **if a person wants a line of credit or wants to move money, we're probably the first line of defense. In fact, I think we're more aggressive than the government in terms of monitoring that. We're a big believer that compliance is critical. We've embraced it the last 4 years, 5 years, and we don't fear it. We embrace it, accept it. It's part of our world today**. There was a time couple years ago, people would say, well it won't last, your compliance. It's a worldwide phenomenon. It's happening in banks throughout the world. **It's** | Contrary to this statement, and "at the same time Goldstein was espousing LVS' purported compliance focus, specifically with respect to overseeing money transfers into Singapore, MBS' team on the ground was employing a business model that sought to extend credit to gamblers built on a scheme to falsely accredit otherwise subprime borrowers through the unauthorized movement of hundreds of millions of dollars between accounts." ¶181. |

8

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

| | **happening in Las Vegas, in Hong Kong, Singapore.** So I don't think the high-end business, even when things get better and you're making more money and you want to gamble, **will ever lose the compliance focus** that we have today…. ¶180. | |

In Plaintiffs' opposition to Defendants' Motion to Dismiss, they explained that the above misstatements regarding the extension of credit (¶¶163, 167, 178) were affirmatively false and misleading because "[c]ontrary to the state of affairs that existed at the time, LVS represented in its filings with the SEC that it adhered strictly with local law, extended credit only to those who qualified, and maintained compliance policies to avoid unmercenary regulatory risk." Opp. Br. at 10-11. *See also id.* at 11 (statements false because "LVS was actively skirting the new regulatory regime by using illicit customer transfers to open credit lines at MBS for unqualified 'premium players'".); *id.* at 2 ("These statements clearly contradicted the facts that existed and were in [Defendants'] possession at the time"). Plaintiffs further explained that the two misstatements defendant Goldstein made during a March 10, 2016 investor conference (¶180) regarding compliance—"I've not seen evidence of [illegal credit extensions]…. In fact, I think we're more aggressive than the government in terms of monitoring that. We're a big believer that compliance is critical"—were affirmatively false and misleading because they "clearly contradicted the truth of the matter…." Opp. Br. at 11-12. Nowhere do Plaintiffs allege that any of the above statements were false by omission.

Even Defendants in their Motion to Dismiss only challenged the above misstatements as failing to be *affirmatively* misleading. To be sure, Defendants characterize these allegations as "*Statements* [not omissions] regarding the Company's policies and procedures for extending credit to patrons at MBS." DB at 12 (citing ¶¶167, 170, 178) (emphasis added). Likewise, Defendants argued that "Plaintiffs have likewise failed to allege that any of the challenged statements were affirmatively false: stripped of Plaintiffs' baseless and conclusory assertions regarding unauthorized transfers . . . , the statements are unquestionably true." *Id*. at 14.

Because the Court held Plaintiffs adequately alleged the existence of an unauthorized transfer scheme, the Credit and Compliance Misstatements claiming LVS considered customer "financial

9

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

wherewithal" and "creditworthiness" in extending credit, when it did not, are actionable. *See, e.g.*, *Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*, 2021 U.S. Dist. LEXIS 160215, at *59 (N.D. Cal. Aug. 24, 2021) (finding alleged misstatements related to the purported on-label marketing and promotion of drug actionable where the plaintiff adequately alleged an off-label marketing scheme); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368 (S.D.N.Y. 2015); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 280 (S.D.N.Y. 2012) (misstatements of compliance with laws and regulations actionable). Accordingly, the Court committed clear error by analyzing the statements under an omissions theory of liability, resulting in a manifestly unjust, outright dismissal of Plaintiffs' case.[4]

Reconsideration is appropriate where, as here, the court overlooked certain material allegations and/or applied the incorrect legal standard. *See Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 935 (N.D. Cal. 2013) (granting reconsideration where court "erred in failing to adequately credit Plaintiffs' allegations" in context of scienter analysis); *see also Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 797 (S.D. Ohio 2019) (granting plaintiff's motion for reconsideration of the court's order dismissing the complaint finding the court "misapplied the scienter standard to the narrow question before the court" finding "either a clear error creating a manifest injustice under Rule 59 or a substantive mistake of law or fact under Rule 60."); *Sohol v. Yan*, 2016 U.S. Dist. LEXIS 56049, at *3, 4 (N.D. Ohio Apr. 27, 2016) (granting plaintiff's motion for reconsideration of the court's order dismissing the complaint finding the court "failed to address one of Plaintiff's claims," "overlooked a critical allegation in the Second Amended Complaint;" and "failed to give Plaintiff the benefit of all reasonable inferences").

**2. The Court Overlooked Plaintiffs' Argument in Response to Defendants'**
**Challenge to the Misstatements Relating to LVS's Disclosure Controls**

Plaintiffs allege Defendants' statements that LVS maintained "effective" "disclosure controls and procedures" were materially false and misleading when made because LVS's internal controls were, admittedly, not "effective." ¶¶217-220. LVS lacked sufficient internal controls to prevent the unauthorized transfers of patron money to subprime borrowers, resulting in a significant increase in

---

[4] Moreover, the Court did not expressly analyze the Credit and Compliance Misstatements in the MTD Order.

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

uncollectible accounts. *Id.* In response to Defendants' arguments in the Motion to Dismiss, Plaintiffs argued that the statements concerning LVS's disclosure controls and procedures were *affirmatively* false and misleading when made for the same reasons as the Credit and Compliance Misstatements. Opp. Br. at 12, n.5 ("For this reason, LVS's representations about the effectiveness and adequacy of its 'disclosure controls and procedures' were also materially misleading. *See* ¶¶217-220.").

In its Order, however, the Court dismissed these statements with prejudice finding "Plaintiffs did not respond to [the disclosure control argument] and thus have consented to granting that portion of the Motion." Order at 21. The Court erred and reconsideration is appropriate here where the Court overlooked an important argument Plaintiffs made. *See Westley*, 897 F. Supp. 2d at 935; *see also Sohol*, 2016 U.S. Dist. LEXIS 56049, at *4 (granting plaintiff's motion for reconsideration where the court "overlooked a critical allegation").

**C. Plaintiffs' Request to File an Amended Complaint After a Decision on the Instant Motion Should Be Granted**

In the interest of judicial efficiency and to conserve Court and party resources, Plaintiffs respectfully request that that Court permit them to file an amended complaint within ten days (10) of the Court's order on the instant motion. Permitting Plaintiffs to file their amended complaint after the Court's ruling will conserve resources because the Court's findings and guidance on the issues in the instant motion will likely impact the allegations in the amended complaint.

*        *        *

Counsel for Plaintiffs have met and conferred with counsel for Defendants on the issues raised in this motion and Defendants oppose the relief sought herein.

Dated: April 8, 2022                                    Respectfully submitted,

**ALDRICH LAW FIRM, LTD.**

*/s/John P. Aldrich*
John P. Aldrich, Esq.
7866 West Sahara Ave.
Las Vegas NV 89117
Tel.  702.853.5490
Fax.  702.227.1975

11

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

Email:  jaldrich@johnaldrichlawfirm.com

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (*Pro hac vice*)
Adam Apton (*pro hac vice* forthcoming)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: aapton@zlk.com

*Counsel for Plaintiffs*

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE
AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2022, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the email addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

**ALDRICH LAW FIRM, LTD.**

*/s/John P. Aldrich*
John P. Aldrich, Esq.

*Counsel for Plaintiffs*

PLAINTIFFS' MOTION FOR RECONSDIERATION AND TO EXTEND TIME TO FILE THE AMENDED COMPLAINT; AND MEMORANDUM AND POINTS OF AUTHORITIES