# EXHIBIT 9

Casino Control (Credit) Regulations 2010

# EXHIBIT 9

## Casino Control (Credit) Regulations 2010

## Table of Contents

**Enacting Formula**

**Part I PRELIMINARY**

1 Citation and commencement

2 Definitions

2A Form of deposit by premium player

2B Period of credit balance to remain premium player

3 When patron qualifies as premium player

4 When patron remains or ceases to be premium player

**Part II PERMITTED AND PROHIBITED TRANSACTIONS RELATING TO CREDIT**

5 Permitted credit transactions

5A Credit qualifying programme for premium player who is either a citizen of Singapore or a permanent resident of Singapore

5B Provision of credit by way of chips

6 No unsolicited credit to be granted to patronsNo provision of credit without prior request

7 Redemption of cheques

**Part III ESTABLISHING AND MAINTAINING CREDIT ACCOUNT AND CHEQUE-CASHING ACCOUNT**

8 Credit account and cheque-cashing account

9 Credit agreement

10 Application for cheque-cashing facility

11 Record-keeping

12 Credit policy, procedures and controls

**Part IV GENERAL**

13 Duties of licensed special employee in relation to credit

14 Power to take disciplinary action against casino operator and licensed international market agent, etc.

15 Offences

**No. S 53**

CASINO CONTROL ACT
(CHAPTER 33A)

CASINO CONTROL (CREDIT) REGULATIONS 2010

In exercise of the powers conferred by sections 108 and 200 of the Casino Control Act, the Casino Regulatory Authority of Singapore, with the approval of the Minister for Home Affairs, hereby makes the following Regulations:

PART I

PRELIMINARY

000966

## Citation and commencement

**1.** These Regulations may be cited as the Casino Control (Credit) Regulations 2010 and shall come into operation on 3rd February 2010.

## Definitions

**2.** In these Regulations, unless the context otherwise requires —

"associate" has the same meaning as in regulation 2(2) and (3) of the Casino Control (Casino Marketing Arrangements) Regulations 2013 (G.N. No. S 65/2013);

*[S 61/2013 wef 31/01/2013]*

"cash" has the same meaning as in regulation 2 of the Casino Control (Conduct of Gaming) Regulations 2009 (G.N. No. S 594/2009);

"casino cheque" means a cheque issued by any casino operator or operator of a casino outside Singapore;

"cheque-cashing facility" means a facility provided by a casino operator where chips or chip purchase vouchers are issued by the casino operator to a patron in exchange for a cheque payable to the casino operator which has not been deposited with and cleared by an authorised bank;

"minimum balance", in relation to a deposit account, means a credit balance in the deposit account of not less than $100,000;

*[S 61/2013 wef 31/01/2013]*

"permanent resident of Singapore" has the same meaning as in section 116(9) of the Act.

## Form of deposit by premium player

**2A.**—(1) For the purposes of paragraph (*a*) of the definition of "premium player" in section 2(1) of the Act, the deposit shall be in one or more of the following forms:

(*a*)  money received by a casino operator from a patron in the form of cash, a cashier's order or a bank draft payable to the casino operator or an electronic funds transfer to the casino operator's bank account;

(*b*)  chips or any traveller's cheque received by a casino operator from a patron;

(*c*)  any casino cheque payable to a patron, which is accepted by a casino operator;

(*d*)  any personal cheque issued by a patron made payable to a casino operator,

000967

after the cheque has been deposited with and cleared by an authorised bank;

(*e*)  if and only if a patron is neither a citizen of Singapore nor a permanent resident of Singapore, an amount on credit granted by a casino operator or by a licensed international market agent to the patron.

(2)  In addition to paragraph (1), where a patron is neither a citizen of Singapore nor a permanent resident of Singapore, but not otherwise, the deposit may be an amount on credit granted by a casino operator under section 108(7)(*a*) of the Act or by a licensed international market agent to the patron under section 108(7A) of the Act.

(3)  For the avoidance of doubt, a patron who is neither a citizen of Singapore nor a permanent resident of Singapore may make a deposit in a combination of forms in paragraphs (1) and (2).

*[S 61/2013 wef 31/01/2013]*

### Period of credit balance to remain premium player

**2B.**  For the purposes of paragraph (*b*) of the definition of "premium player" in section 2(1) of the Act, the period during which the credit balance in a deposit account is below \$100,000 must not exceed a continuous period of 12 months.

*[S 61/2013 wef 31/01/2013]*

### When patron qualifies as premium player

**3.**  A patron of a casino qualifies as a premium player of the casino when he opens a deposit account with the casino operator of that casino and provides the casino operator with a deposit in accordance with regulation 2A which satisfies the minimum balance.

*[S 61/2013 wef 31/01/2013]*

### When patron remains or ceases to be premium player

**4.**—(1)  After a patron of a casino first qualifies as a premium player of the casino in accordance with regulation 3, the patron remains as a premium player of the casino for an initial period of 12 months thereafter, unless otherwise expressly provided in this regulation.

(2)  In any case where after a patron of a casino qualifies as a premium player of the casino in accordance with regulation 3 —

(*a*)  the credit balance in the deposit account opened by the patron with the casino operator of that casino falls below \$100,000;

(*b*)  the period during which the credit balance in the deposit account is below \$100,000 does not exceed the period specified in regulation 2B; and

000968

(*c*)  one or more additional deposits in accordance with regulation 2A are made by or on behalf of the patron into the patron's deposit account,

the patron shall remain a premium player of that casino for a period of 12 months starting from the date the credit balance in the deposit account reaches $100,000 or more.

(3)  Where —

(*a*)  a patron of a casino who is neither a citizen of Singapore nor a permanent resident of Singapore is a premium player of the casino; and

(*b*)  the patron subsequently becomes a citizen of Singapore or a permanent resident of Singapore,

the patron shall cease to be a premium player of the casino upon his becoming a citizen of Singapore or a permanent resident of Singapore, unless, upon becoming such a citizen or permanent resident, he provides the casino operator with a new deposit in one or more of the forms in regulation 2A(1)(*a*) to (*d*) which satisfies the minimum balance, and he shall remain a premium player of the casino for a period of 12 months starting from the date he so provides the casino operator of that casino with the new deposit.

(4)  Where the credit balance in the deposit account of a patron of a casino who is a premium player of the casino is $100,000 or more on —

(*a*)  the next anniversary of the date he first qualifies to be a premium player referred to in paragraph (1) if applicable to the patron;

(*b*)  the next anniversary of the date referred to in paragraph (2) or (3) if applicable to the patron; or

(*c*)  the date immediately after the end of the further period referred to in this paragraph if applicable to the patron,

that patron shall remain a premium player of the casino for a further period of 12 months starting on that date, and so on.

(5)  A patron ceases to qualify as a premium player if he does not retain his qualification as a premium player in accordance with paragraph (1), (2), (3) or (4), or upon the closure of the patron's deposit account with the casino operator, whichever is earlier.

(6)  Nothing in this regulation prevents a patron who is a premium player of a casino from applying to close his deposit account with the casino, and that patron shall cease to be a premium player of that casino immediately upon the closing of such deposit account.

000969

*Illustration 1*

Patron *A* makes a deposit of $100,000 into his deposit account with a casino operator on 2nd January 2012. Patron *A* qualifies as a premium player with the casino operator on 2nd January 2012. Patron *A* draws down $100,000 from his deposit account on 4th January 2012 to play at the casino. On 4th January 2012, the deposit balance is recorded as $0. Patron *A* continues to retain his qualification as a premium player, which will cease on 1st January 2013 or upon the closure of Patron *A*'s account with the casino operator, whichever is the earlier.

*Illustration 2A*

Patron *B* makes a deposit of $100,000 into his deposit account with a casino operator on 2nd January 2012. Patron *B* qualifies as a premium player with the casino operator on 2nd January 2012. Patron *B* draws down $20,000 from his deposit account on 4th January 2012 to play at the casino. Patron *B* further deposits $30,000 into his deposit account with the casino operator on 6th January 2012, bringing his deposit balance to $110,000. Patron *B* re-qualifies as a premium player on 6th January 2012. Patron *B*'s qualification as a premium player status will cease on 5th January 2013 or upon the closure of Patron *B*'s deposit account with the casino operator, whichever is the earlier.

*Illustration 2B*

Patron *B* does not carry out further transactions in respect of his deposit account after 6th January 2012. The balance in his deposit account remains at $110,000 on 5th January 2013. He does not close his deposit account with the casino operator on 6th January 2013 and still has $110,000 in his deposit account on 6th January 2013. Patron *B* re-qualifies as a premium player on 6th January 2013 without having to furnish another $100,000, as he already has not less than $100,000 in his deposit account on 6th January 2013. *Note:* Patron *B* in *Illustration 2B* is the same Patron *B* in *Illustration 2A*.

[S 61/2013 wef 31/01/2013]

## PART II

## PERMITTED AND PROHIBITED TRANSACTIONS RELATING TO CREDIT

**Permitted credit transactions**

**5.**—(1)  For the purposes of section 108(1) of the Act, a casino operator may carry out the following transactions with a patron, if and only if the patron is a person referred to in section 108(7)(*a*) or (*b*) of the Act:

(*a*)  accept payment for chips by charging to the patron's credit card;

(*b*)  provide a cheque-cashing facility to the patron;

(*c*)  allow to be credited to the patron's deposit account the amount of a cheque payable to the casino operator before the cheque has been deposited with and cleared by an authorised bank;

(*d*)  where the patron is a person referred to in section 108(7)(*a*) of the Act, grant an amount on credit to the patron which is to be credited to the patron's deposit account for the purpose of qualifying him as a premium player of its casino.

(2)  For the purposes of section 108(1) of the Act, a licensed international market agent may grant an amount on credit to a person referred to in section 108(7)(*a*) of the Act which is to be credited to the person's deposit account with a casino operator for the purpose of qualifying him as a premium player of its casino.

*[S 61/2013 wef 31/01/2013]*

## Credit qualifying programme for premium player who is either a citizen of Singapore or a permanent resident of Singapore

**5A.**—(1)  A casino operator may, on or after 30th April 2013, provide chips on credit to a premium player who is either a citizen of Singapore or a permanent resident of Singapore only in accordance with all of the following requirements relating to credit:

(*a*)  the premium player to be provided chips on credit by the casino operator must first register for a credit qualifying programme with the casino operator with respect to its casino and qualify for chips on credit under that programme;

(*b*)  the casino operator must be satisfied of that premium player's creditworthiness based on its credit policy, procedures and controls referred to in regulation 12; and

(*c*)  the premium player has drawn down and utilised for gaming from his deposit account with the casino operator a sum of money (referred to in this regulation as the principal capital) of at least $100,000 before he is provided any chips on credit.

(2)  Where a premium player who is either a citizen of Singapore or a permanent resident of Singapore is registered for a credit qualifying programme with a casino operator with respect to its casino, the casino operator shall not, except with reasonable excuse, regard any winnings by that premium player from any gaming at the casino in determining the principal capital for the purposes of paragraph (1)(*c*).

000971

(3) Where a premium player who is either a citizen of Singapore or a permanent resident of Singapore qualifies for chips on credit under a casino operator's credit qualifying programme, and he does not cease to qualify as a premium player under regulation 4(5), for the remainder of the period that he is a premium player —

> (*a*)  he remains qualified for chips on credit with that casino operator; and

> (*b*)  he does not have to re-register for a credit qualifying programme with the casino operator or re-qualify for chips on credit under that programme.

(4) Notwithstanding paragraph (1), a premium player who is either a citizen of Singapore or a permanent resident of Singapore may continue to be provided chips on credit by a casino operator under any credit agreement entered into between that premium player and the casino operator before and subsisting on 30th April 2013 until the expiry or termination of the credit agreement provided that no amendment is made to the validity period or the maximum credit limit under the credit agreement.

*[S 61/2013 wef 31/01/2013]*

## Provision of credit by way of chips

**5B.**—(1) For the purposes of section 108(7B) of the Act, the casino operator or any licensed international market agent providing credit shall comply with all requirements under the Act and any regulation made thereunder.

(2) No licensed international market agent, associate of a licensed international market agent or licensed international market agent representative shall use any chips on credit provided by a casino operator under section 108(7)(*c*) of the Act for the purposes of gaming on his own account, unless each international market agent or international market agent representative, as the case may be, complies with all requirements under the Act and any regulation made thereunder.

*[S 61/2013 wef 31/01/2013]*

## No provision of credit without prior request

**6.** A casino operator or a licensed international market agent shall not —

> (*a*)  provide an amount of chips on credit to a patron or enter into any credit transaction permitted under regulation 5 except on the prior request of the patron; or

> (*b*)  provide more chips on credit or grant a higher amount of credit to the patron than the amount of chips or credit requested by the patron.

*[S 61/2013 wef 31/01/2013]*

## Redemption of cheques

000972

**7.** For the purposes of section 108(6)(*a*) of the Act, a casino operator shall deposit with an authorised bank any cheque accepted by the casino operator not later than 5 days after the date the cheque is accepted.

PART III

ESTABLISHING AND MAINTAINING CREDIT ACCOUNT AND CHEQUE-CASHING ACCOUNT

## Credit account and cheque-cashing account

**8.**—(1) Any casino operator wishing to provide chips on credit, or any other form of credit allowed under regulation 5(1)(*b*), (*c*) or (*d*), to a patron shall establish for that patron —

> (*a*)  a credit account through which may be granted chips on credit or credit for a deposit account; or
>
> (*b*)  a cheque-cashing account through which may be granted a cheque-cashing facility,

or both, and shall comply with the requirements in this Part in relation to the account or accounts.

(2)  Any licensed international market agent wishing to provide chips on credit, or any other form of credit allowed under regulation 5(2), to a patron shall establish for that patron a credit account, through which may be granted chips on credit or credit for a deposit account, and shall comply with the requirements in this Part in relation to the account.

*[S 61/2013 wef 31/01/2013]*

## Credit agreement

**9.**—(1) A casino operator or a licensed international market agent shall, before establishing a credit account for a patron under regulation 8, enter into a credit agreement in accordance with paragraph (2) with the patron.

*[S 61/2013 wef 31/01/2013]*

(2)  The credit agreement to be entered into with the patron shall be in writing and be signed by the parties or their authorised representatives, and shall contain all the terms and conditions governing the granting of credit to the patron, including the following:

> (*a*)  the names of the parties to the credit agreement;

*[S 61/2013 wef 31/01/2013]*

> (*b*)  the nationality of the patron;

*[S 61/2013 wef 31/01/2013]*

000973

(*c*)  the countries in which the patron has been granted permanent residency;

[S 61/2013 wef 31/01/2013]

(*d*)  the terms and conditions relating to the grant of credit to a patron when the patron becomes a citizen of Singapore or permanent resident of Singapore;

[S 61/2013 wef 31/01/2013]

(*e*)  the date on which the credit agreement was entered into;

[S 61/2013 wef 31/01/2013]

(*f*)  the validity period of the credit agreement;

[S 61/2013 wef 31/01/2013]

(*g*)  the maximum credit limit of the patron under the credit agreement;

[S 61/2013 wef 31/01/2013]

(*h*)  the patron's eligibility to draw upon the full amount of credit granted under the credit agreement, up to the credit limit referred to in sub-paragraph (*g*); and

[S 61/2013 wef 31/01/2013]

(*i*)  any interest or other consideration payable by the patron for the granting of credit to him.

[S 61/2013 wef 31/01/2013]

## Application for cheque-cashing facility

**10.**—(1)  A casino operator may, upon an application by a patron for a cheque-cashing facility in accordance with paragraph (2), establish for the patron a cheque-cashing account through which may be granted a cheque-cashing facility.

(2)  An application for a cheque-cashing facility shall be in writing and shall contain —

(*a*)  the date on which the application is made;

(*b*)  the name and signature of the patron making the application; and

(*c*)  the name and signature of the person approving the application on behalf of the casino operator, and in respect of the approved cheque-cashing facility —

(i)  the validity period of the cheque-cashing facility granted;

(ii)  the maximum credit limit of the patron granted under the cheque-cashing facility; and

(iii)  any interest or other consideration payable by the patron for the

000974

granting of the cheque-cashing facility to him.

**Record-keeping**

**11.**—(1) Every casino operator and licensed international market agent shall keep, in relation to each patron of the casino to whom the casino operator or licensed international market agent grants credit, as the case may be —

(*a*)  a copy of the credit agreement entered into with the patron and any supporting documentation, amendment or supplementary agreement thereto for not less than 5 years after the expiry of the agreement;

(*b*)  a copy of any application for a cheque-cashing facility by the patron for not less than 5 years after the expiry of the facility; and

(*c*)  the following records relating to the patron's credit account and, where applicable, cheque-cashing account for not less than 5 years after the completion of the transaction to which the record relates:

    (i)  in the case of a casino operator, the records specified in any requirements under these Regulations or the Casino Control (Internal Controls) Regulations 2013 (G.N. No. S 59/2013) or any directions given by the Authority under any of those Regulations; and

*[S 61/2013 wef 31/01/2013]*

    (ii)  in the case of a licensed international market agent —

        (A)  the amount of each issuance of chips on credit to a patron or amount of credit given for a patron's deposit account, and the date of issuance of such chips or amount on credit;

*[S 61/2013 wef 31/01/2013]*

        (B)  the amount of each repayment of chips on credit or credit given for the patron's deposit account, and the date of such repayment; and

*[S 61/2013 wef 31/01/2013]*

        (C)  such other records specified in any requirements under these Regulations or the Casino Control (Internal Controls) Regulations 2013 or any directions given by the Authority under any of those Regulations.

*[S 61/2013 wef 31/01/2013]*
*[S 61/2013 wef 31/01/2013]*

000975

(2) A casino operator or a licensed international market agent shall, whenever requested by the Authority to do so —

(a)    produce to the Authority all records referred to in paragraph (1) and permit the examination of those records, the taking of extracts from them and the making copies of them; and

(b)    furnish to the Authority all such information as the Authority may require in connection with any such records.

*[S 61/2013 wef 31/01/2013]*

## Credit policy, procedures and controls

**12.**—(1) Every casino operator and licensed international market agent shall, before issuing any chips on credit or granting any other form of credit, develop and implement a credit policy and procedures and controls relating to the granting of credit to its patrons, and shall communicate these to its employees and officers.

*[S 61/2013 wef 31/01/2013]*

(2) The credit policy, procedures and controls referred to in paragraph (1) shall include —

(a)    the credit assessment criteria by which the creditworthiness of a patron is to be assessed;

(b)    the credit limits applicable to different classes of patrons;

(c)    the approving authority and procedures for the approval of —

(i)    the establishment of a credit account or cheque-cashing account for a patron; and

(ii)    the patron's credit limit and any increase in credit limit;

(d)    the procedures for the issuance of credit and the administration of a credit account or cheque-cashing account;

(e)    the records and documents to be kept and checks to be carried out in relation to a credit account or cheque-cashing account; and

(f)    debt recovery procedures.

(3) Every casino operator and licensed international market agent shall —

(a)    cause its credit policy, procedures and controls to be reviewed at least once in every 6 months by an employee or employees holding a senior managerial or executive position of the casino operator or licensed international market agent, as the case may be;

000976

(b) ensure that its credit policy, procedures and controls are implemented in all its branch offices, whether in Singapore or elsewhere; and

(c) produce its credit policy, procedures and controls to the Authority for inspection whenever requested to do so.

*[S 61/2013 wef 31/01/2013]*

PART IV

GENERAL

**Duties of licensed special employee in relation to credit**

**13.**—(1) It shall be a condition of a special employee licence that a licensed special employee of a casino operator shall not extend credit in any form to a patron of the casino other than on behalf of the casino operator and in accordance with the Act and these Regulations.

(2) Any licensed special employee who contravenes the condition in paragraph (1) shall be liable to disciplinary action under section 93 of the Act.

**Power to take disciplinary action against casino operator and licensed international market agent, etc.**

**14.**—(1) Any casino operator which —

(a) qualifies a patron as a premium player not in accordance with regulation 3;

(b) retains a patron's qualification as a premium player not in accordance with regulation 4(1);

(c) re-qualifies a patron as a premium player not in accordance with regulation 4(2);

(d) wilfully, recklessly or negligently treats a patron as a premium player when the patron ceases to be a premium player in accordance with regulation 4(3);

(e) allows a patron to remain as a premium player not in accordance with regulation 4(4);

(f) provides chips on credit to a premium player not in accordance with regulation 5A(1) and (2) ;

(g) provides credit otherwise than in accordance with regulation 5B(1); or

000977

(*h*)　contravenes regulation 5(1), 6, 7, 8(1), 9(1), 10(1), 11 or 12,

shall be liable to disciplinary action under section 54 of the Act.

(2)  Any licensed international market agent who contravenes —

(*a*)　regulation 5(2), 5B(2), 6, 8(2), 9(1), 11 or 12; or

(*b*)　permits or allows any of its associates to game in a casino in contravention of regulation 5B(2),

shall be liable to disciplinary action under the Casino Control (Casino Marketing Arrangements) Regulations 2013 (G.N. No. S 65/2013).

(3) Any licensed international market agent representative who contravenes regulation 5B(2) shall be liable to disciplinary action under the Casino Control (Casino Marketing Arrangements) Regulations 2013.

*[S 61/2013 wef 31/01/2013]*

## Offences

**15.**—(1) Any associate of a licensed international market agent who contravenes regulation 5B(2) shall be guilty of an offence and shall be liable on conviction to a fine not exceeding $10,000 or to imprisonment for a term not exceeding 12 months or to both.

(2)  Any patron, for the purpose of obtaining chips on credit not in accordance with regulation 5A(1), falsely represents to any casino operator that he is not a citizen of Singapore or a permanent resident of Singapore, shall be guilty of an offence and shall be liable on conviction to a fine not exceeding $10,000 or to imprisonment for a term not exceeding 12 months or to both.

*[S 61/2013 wef 31/01/2013]*

Made this 2nd day of February 2010.

RICHARD MAGNUS
*Chairman,*
*Casino Regulatory Authority of*
*Singapore.*

[CRA 25/4/5C Vol. 1; AG/LEG/SL/33A/2006/16 Vol. 1]

000978