# EXHIBIT 15

Statement of Claim and Writ of Summons filed in Case No. HC/S 967/2019 between Wang Xi and Marina Bay Sands Pte. Ltd., dated 9/26/2019 (High Court of the Republic of Singapore)

# EXHIBIT 15

**IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/S 967/2019

Filed: 26-September-2019 03:21 PM

Hearing Date : 08-November-2019
Hearing Time : 9:00 AM
Hearing Type : Pre-Trial Conference
Attend Before: Registrar

Between

WANG XI
(China Passport No. ███████ )

...Plaintiff(s)

And

MARINA BAY SANDS PTE LTD
(Singapore UEN No. ███████ )

...Defendant(s)

**WRIT OF SUMMONS**

To:

MARINA BAY SANDS PTE LTD
10 Collyer Quay #10-01 Ocean Financial Centre Singapore 049315

THIS WRIT OF SUMMONS has been issued against you in respect of the claim endorsed herein.

You must:

      1. satisfy the claim; or
      2. enter an appearance,

within 8 days after the service of this Writ, failing which, the Plaintiff(s) may proceed with the action and enter judgment against you without further notice.

THIS WRIT OF SUMMONS is issued by the solicitors for the Plaintiff(s) whose particulars are as below. The address(es) of the Plaintiff(s) is/are 16 b, Flat 4, Belair Hong Kong SAR.

Solicitor(s) for the Plaintiff(s)

RAJAH & TANN SINGAPORE LLP
9 Battery Road #25-01 MYP Centre
Singapore 049910
Tel No.: 65353600
Fax No.: 62259630
Email: info@rajahtann.com
File Ref No.: PTH/APG/RCL/344986/1
Solicitor in charge: 1. LEE RYCE,
2. PANG YI CHING, ALESSA,

001013

3. TAN BENG HWEE PAUL

TEH HWEE HWEE
REGISTRAR
SUPREME COURT
SINGAPORE

## STATEMENT OF CLAIM

Please see attached Statement of Claim.

Note:

1. This writ may not be served more than 6 calendar months after the above date unless renewed by order of the Court.

2. To satisfy the claim, the Defendant will pay the amount claimed and costs of $2,000.00 (or such sum as may be allowed on taxation) for costs plus all disbursements incurred in the action, and also, if the Plaintiff obtains an order for substituted service, the further sum of $350.00 plus disbursements (or such sum as may be allowed on taxation). If the amount claimed and costs be paid to the Plaintiff or his solicitor within 8 days, further proceedings will be stayed.

3. To defend the claim, the Defendant(s) must enter an appearance(s) using the electronic filing service either personally or by a solicitor at the Registry of the SUPREME COURT and notify the (Plaintiff(s) / Plaintiff's solicitors) accordingly within 8 days after service hereof, otherwise judgment may be entered against him without further notice.

4. Where the Defendant enters an appearance, he must also serve a defence on the solicitor for the Plaintiff within 14 days after the last day of the time limited for entering an appearance; otherwise judgment may be entered against him without further notice.

001014

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Case No.: HC/S        /2019

Between

**WANG XI**

(China, Passport No. ███████ )

… Plaintiff


And

**MARINA BAY SANDS PTE LTD**

(Singapore UEN No. ███████ )

… Defendant


## STATEMENT OF CLAIM

1.    The Plaintiff is a Chinese national.

2.    The Defendant is at all material times a company incorporated under the laws of Singapore and operates a licenced casino at 10 Bayfront Ave, Singapore 018956.

3.    The Statement of Claim is filed without prejudice to any right to seek discovery and interrogatories. Pending discovery and interrogatories, these are the best particulars that the Plaintiff can furnish at this time.


## I.    THE PLAINTIFF'S DEPOSIT ACCOUNTS WITH THE DEFENDANT

4.    Between October 2015 and July 2019, the Plaintiff was a patron of the Defendant's casino.

001015

2

5.   By an application form signed by the Plaintiff on 2 October 2015 (the "**Application Form**"), the Plaintiff applied to open deposit accounts with the Defendant, which comprise:

5.1.   Premium Player Qualification Deposit Account ("**PPQ Deposit Account**");

5.2.   Front Money Deposit Account ("**FM Deposit Account**"); and

5.3.   Deposit Account established for safekeeping or other purpose.

(collectively referred to as the "**Deposit Accounts**")

6.   In the Application Form, the Plaintiff authorised the Defendant to perform such transactions necessary for:

6.1.   the settlement of any or all outstanding amounts due from the Plaintiff to the Defendant;

6.2.   the withdrawal of funds for the Plaintiff's gaming purposes, including but not limited to the withdrawal of funds from the Plaintiff's Deposit Accounts, the transfer of funds between the Plaintiff's Deposit Accounts to other authorised accounts or nominated bank; and

6.3.   the deposit of funds into the Plaintiff's Deposit Accounts.

(section B, page 1 of the Application Form (the "**Plaintiff's Mandate**"))

7.   The above authorisation given by the Plaintiff is to be read in conjunction with the terms and conditions appended to the second page of the Application Form (the "**Terms and Conditions**"). The Terms and Conditions are governed by and will be interpreted according to the laws of Singapore, and

001016

3

the Plaintiff agrees to irrevocably submit to the exclusive jurisdiction of the courts of Singapore.

8.   The Plaintiff says that the opening of the Deposit Accounts with the Defendant creates a debtor-creditor relationship between the Plaintiff and the Defendant. The Defendant is therefore liable in debt to pay upon demand any funds which the Plaintiff has deposited in the Plaintiff's Deposit Accounts. The Defendant may only withdraw from the Deposit Accounts, and transfer the same to another account, such funds as are authorised by the Plaintiff. Absent the Plaintiff's authorisation for any such withdrawal or transfer from the Deposit Accounts, the Defendant is liable in debt to repay upon demand the sums withdrawn or transferred from the Deposit Accounts.

9.   Further, by reason of the Plaintiff's Mandate pleaded in paragraph 6 above, the Plaintiff has expressly and/or impliedly conferred authority on the Defendant to act as its agent in operating, overseeing and/or handling the Plaintiff's funds in the Plaintiff's Deposit Accounts. Accordingly, the Defendant may only effect withdrawals and/or transfers from the Plaintiff's Deposit Accounts with the Plaintiff's authorisation.

10.  Further and/or in the alternative, the Plaintiff says that it is an implied term of the Plaintiff's Mandate and the Terms and Conditions that the Defendant exercises reasonable skill and care in maintaining and overseeing the withdrawal of monies from the Deposit Accounts by ensuring that monies are released or withdrawn as may be authorised by the Plaintiff.

001017

4

## II.   THE UNAUTHORISED TRANSFERS FROM THE PLAINTIFF'S DEPOSIT ACCOUNTS

11.   In or around July 2019, the Plaintiff discovered that several unauthorised withdrawals amounting to SGD 9,099,814 in total had been made from his Deposit Accounts between 18 October 2015 to 8 December 2015 ("**the Disputed Withdrawals**"). It appears that the monies were then paid to accounts belonging to other patrons of the Defendant ("**the Disputed Transfers**"). These patrons are not known to the Plaintiff, and their accounts have not been authorised or nominated by the Plaintiff, whether in advance or at all.

### **Particulars**

|  | Transaction number | Transaction date | Amount (SGD) | Account | Date of alleged authorisation | Recipient |
|---|---|---|---|---|---|---|
| 1. | 1357258 | 18 October 2015 | 600,000 | PPQ | No date | Qu Long Kui |
| 2. | 1358393 | 21 October 2015 | 212,000 | PPQ | 21 October 2015 | Ma Jian Rong |
| 3. | 1364711 | 31 October 2015 | 500,000 | PPQ | 31 October 2015 | Huang Yingjie |
| 4. | 1367192 | 4 November 2015 | 500,000 | PPQ | 4 November 2015 | Li Wei |
| 5. | 1367818 | 5 November 2015 | 100,000 | FM | No date | Zhang |
| 6. | 1368371 | 6 November 2015 | 483,948 | PPQ | 6 November 2015 | Xu YanMing |
| 7. | 1368423 | 6 November 2015 | 520,028 | PPQ | 6 November 2015 | Wang Lin |
| 8. | 1368463 | 6 November 2015 | 262,528 | PPQ | 6 November 2015 | Zhang Hongjie |
| 9. | 1368966 | 7 November 2015 | 200,000 | PPQ | 7 November 2015 | Lam Chin Ho |
| 10. | 1369062 | 7 November 2015 | 500,000 | PPQ | 7 November 2015 | Chen Guo Bao |
| 11. | 1370257 | 9 November 2015 | 1,416,188 | PPQ | 9 November 2015 | Chen Guo Bao |
| 12. | 1370661 | 10 November 2015 | 219,213 | PPQ | 10 November 2015 | Ho Min-Hsien |

001018

5

| 13. | 1370662 | 10 November 2015 | 52,16 | FM | | |
|-----|---------|------------------|-------|-----|---|---|
| 14. | 1383446 | 27 November 2015 | 179,651 | PPQ | 28 November 2015 | Li Jin Lan |
| 15. | 1383963 | 28 November 2015 | 347,724 | PPQ | 28 November 2015 | Lam Chin Ho |
| 16. | 1384618 | 29 November 2015 | 498,806 | PPQ | No date | Ho Min-Hsien |
| 17. | 1385720 | 1 December 2015 | 665,000 | PPQ | 1 December 2015 | Yu Jiang Bo |
| 18. | 1385178 | 1 December 2015 | 391,459 | PPQ | 2 December 2015 | Ding Shui Po |
| 19. | 1386269 | 2 December 2015 | 419,700 | PPQ | 2 December 2015 | Deng Man Ming |
| 20. | 1387086 | 3 December 2015 | 744,020 | PPQ | 3 December 2015 | Jiang Quan Long |
| 21. | 1387087 | 3 December 2015 | 55,980 | FM | | |
| 22. | 1390040 | 8 December 2015 | 231,404 | FM | 8 December 2015 | Tang Zhen Ding |

(collectively, the "**Disputed Transactions**")

12. The Plaintiff was informed by the Defendant that the Disputed Transactions had been effected pursuant to authorisation letters which had allegedly been signed by the Plaintiff (the "**Disputed Authorisation Letters**").

13. However, the Disputed Authorisation Letters were not in fact signed by the Plaintiff and/or appear to have been forged by unknown third parties. Subject to further investigation, the Plaintiff believes that his signature has been copied and pasted on to the Disputed Authorisation Letters.

14. The Disputed Authorisation Letters were therefore wholly inoperative, invalid, null and void, and there was no authorisation for the Disputed Transactions.

15. The Defendant therefore had no authority or mandate from the Plaintiff to:

   15.1. effect the Disputed Withdrawals; and/or

001019

6

15.2.  effect the Disputed Transfers to the accounts belonging to patrons of the Defendant who are unknown to the Plaintiff, and which have not been authorised or nominated by the Plaintiff in advance or at all.

16.  On 7 August 2019, the Plaintiff's solicitors requested an inspection of the originals of the Disputed Authorisation Letters and transaction receipts or invoices relevant to the Unauthorised Transactions in the Defendant's possession.

17.  On 16 August 2019, the Plaintiff and the Plaintiff's solicitors attended at the Defendant's office for the inspection. However, the Defendant only produced copies of the Disputed Authorisation Letters. The Defendant informed the Plaintiff for the first time that the Defendant only had possession of transmission copies of the Disputed Authorisation Letters.

18.  The Defendant represented that the Plaintiff had signed the Disputed Authorisation Letters in Macau, which were subsequently transmitted electronically from the Defendant's Macau affiliate company to the Defendant in Singapore. The Defendant further claimed that the original forms, which had been in the possession of the Macau affiliate, have since been destroyed for "reasons of confidentiality".

19.  It is denied that the Plaintiff signed the Disputed Authorisation Letters, whether in Macau or otherwise. There is no reason why the Plaintiff would have signed the Disputed Authorisation Letters in Macau when the Disputed Transactions were purportedly in relation to the Deposit Accounts in Singapore and to the Plaintiff's gaming activities in Singapore.

001020

7

20.    The Plaintiff is also not aware of whether the Disputed Authorisation Letters were in fact transmitted from Macau to Singapore, or whether they have in fact been destroyed. The Defendant is put to proof of these assertions. The Plaintiff notes however that the destruction of the Disputed Authorisation Letters is contrary to, inter alia, the Casino Control Act.

III.    **CLAIM AGAINST THE DEFENDANT IN CONTRACT**

21.    In breach of the Plaintiff's Mandate, which is to be read in conjunction with the Terms and Conditions, the Defendant performed or effected the Unauthorised Transactions.

**Particulars**

21.1.    The Plaintiff had not authorised the Disputed Transactions.

21.2.    To the best of the Plaintiff's knowledge, the Disputed Authorisation Letters were not in fact signed by him. They are therefore inoperative, invalid, null and void.

21.3.    To the best of the Plaintiff's knowledge and subject to further investigation, the signature that appears below the words "Yours sincerely" have been forged or copied and pasted.

21.4.    To the best of the Plaintiff's knowledge and subject to further investigation, the handwriting on the Disputed Authorisation Letters are not his.

21.5.    The Defendant therefore had no authority or mandate from the Plaintiff to (a) effect the Disputed Withdrawals; and/or (b) effect the Disputed Transfers to the accounts of third parties that have not been authorised by the Plaintiff.

8

21.6. By reason of the matters pleaded above (including without limitation paragraphs 8, 9 and 21 above), the Defendant is liable in debt to repay the Plaintiff for the sums withdrawn and transferred without authority or mandate, which are set out at paragraph 11 above.

22. Further and/or in the alternative, by reason of the matters pleaded above (including without limitation paragraphs 8, 9 and 21 above), the Defendant is liable in damages for the loss caused to the Plaintiff in the amount of the sums withdrawn and transferred without authority or mandate, which are set out at paragraph 11 above.

23. Further and/or in the alternative, by reason of the matters pleaded at paragraphs 10 to 20 above, the Defendant is in breach of the implied term to exercise reasonable skill and care in operating, maintaining and overseeing the withdrawal of monies from the Deposit Accounts by ensuring that monies are withdrawn and transfers to third-party accounts are made only when authorised by the Plaintiff.

**Particulars**

23.1. The Defendant encouraged or required its patrons to establish deposit accounts with it for the purpose of gaming at the casino.

23.2. As the Defendant provided the professional service of maintaining deposit accounts on its patrons' behalf, there is an implied term in law in the Plaintiff's Mandate that the Defendant would exercise reasonable skill and care in the operation, oversight and handling of the Deposit Accounts, including effecting withdrawals from the Deposit Accounts, effecting transfers to third-party accounts, and

9

performing transactions affecting the Deposit Accounts on behalf of the Plaintiff.

23.3. Further and/or in the alternative, it is obvious and necessary for business efficacy that there is an implied term in fact of the same duty to exercise reasonable skill and care.

23.4. The Defendant's implied duty of skill and care would include:

(a) exercising due skill and care in verifying the signatures on forms which purport to authorise withdrawals and transfers from deposit accounts;

(b) implementing reasonable compliance processes to confirm and ensure instructions from patrons, particularly in relation to withdrawals from deposit accounts and/or transfers to accounts belonging to other patrons that have not been nominated or authorised in advance or at all;

(c) providing regular statements of accounts especially of withdrawals from the deposit accounts and transfers to accounts belonging to third parties that have not been nominated or authorised in advance or at all; and

(d)  ensuring that it has, and maintains in its possession, the original authorisation forms for the purposes of detecting or identifying forgeries in forms which purport to authorise withdrawals or transfers out of deposit accounts and/or ensuring that all records relating to the Defendant's casino operations are kept in such a manner as to permit a reconstruction of individual transactions (including the amount and

001023

10

type of currency involved, if any) so as to verify any disputed transactions.

24.   In breach of the implied contractual duty of care owed to the Plaintiff, the Defendant failed to take reasonable measures to detect and/or prevent the Disputed Transactions from taking place.

**Particulars of breach**

The Defendant failed to:

(a)   verify that the Disputed Authorisation Letters were in fact signed by the Plaintiff before effecting the Disputed Withdrawals and/or Disputed Transfers;

(b)   verify that the third-party accounts to which the Plaintiff's monies were transferred had in fact been nominated or authorised by the Plaintiff in advance or at all;

(c)   implement reasonable compliance measures and processes to ensure and/or verify instructions from the Plaintiff before effecting withdrawals from the Deposit Accounts and transfers to third-party accounts that had not been nominated or authorised by the Plaintiff in advance or at all;

(d)   provide regular statements of accounts; and

(e)   ensure that it has, and maintains in its possession, the originals of the Disputed Authorisation Letters.

001024

11

25. Accordingly, the Defendant is liable to the Plaintiff for any and all losses suffered by the Plaintiff caused by the Defendant's aforementioned breaches of the Plaintiff's Mandate and/or its implied contractual duty of care.

## IV.    CLAIM AGAINST THE DEFENDANT IN TORT

26. Further and/or in the alternative, the Defendant is liable in tort for its negligence.

27. There exists a sufficiently proximate relationship between the Plaintiff and the Defendant.

### Particulars

(a)    The Defendant encouraged or required its patrons, including the Plaintiff, to establish deposit accounts with it for the purpose of gaming at the casino.

(b)    The Defendant must have known that the Plaintiff would suffer loss if the Defendant did not exercise due care in operating, maintaining and overseeing the withdrawal of monies from the Plaintiff's Deposit Accounts, and the transfers of the same to third-party accounts that had not been nominated or authorised by the Plaintiff in advance or at all, thereby resulting in withdrawals and transfers that had not been authorised.

(c)    The Plaintiff's Mandate read with the Terms and Conditions and/or the implied contractual duty of skill and care owed by the Defendant gave rise to the proximate relationship between the Plaintiff and the Defendant.

001025

12

(d)    The Defendant had control over and was entrusted with the Plaintiff's monies that were deposited in the Deposit Accounts.

(e)    The Plaintiff reasonably relied on the Defendant to properly effect only authorised withdrawals of monies deposited in the Deposit Accounts and transfers of the same to accounts that had been nominated or authorised by the Plaintiff in advance or at all.

(f)    The Defendant knew or must have been aware that its patrons (including the Plaintiff) would place such reliance on the Defendant to effect only authorised withdrawals from the monies deposited in the Deposit Accounts and transfers of the same to accounts that had been nominated or authorised by the Plaintiff in advance or at all.

28.    By virtue of the proximate relationship between the Plaintiff and the Defendant, and the reasonable reliance that the Plaintiff placed in the Defendant, the Defendant owed a duty of care in tort in the operation, maintenance, and oversight of withdrawals from monies deposited in the Deposit Accounts, and transfers of the same to accounts that had been nominated or authorised by the Plaintiff in advance or at all, and to ensure that such transactions are effected only with the authorisation of its patrons, including the Plaintiff.

29.    In particular, but without limitation, the Defendant owed a duty to the Plaintiff to take reasonable measures to detect and/or prevent unauthorised withdrawals from the Deposit Accounts (ie. the Disputed Withdrawals) and transfers of the same to accounts that had been nominated or authorised by

001026

13

the Plaintiff (ie. the Disputed Transfers) in advance or at all. Such reasonable steps would have included (without limitation):

29.1.    exercising due skill and care in verifying the signatures on forms which purport to authorise the Disputed Transactions;

29.2.    implementing reasonable compliance processes to confirm and ensure instructions from patrons particularly in relation to withdrawals from patrons' deposit accounts and/or transfers to accounts belonging to other patrons that have not been nominated or authorised in advance;

29.3.    providing regular statements of accounts especially of withdrawals from the deposit accounts and transfers to accounts belonging to third parties; and

29.4.    ensuring that it has, and maintains in its possession, the original authorisation forms for the purposes of detecting or identifying forgeries in forms which purport to authorise transfers out of deposit accounts and/or ensuring that all records relating to the Defendant's casino operations are kept in such a manner as to permit a reconstruction of individual transactions (including the amount and type of currency involved, if any) so as to enable verification of all transactions that may be disputed.

30.    In breach of the duty of care owed to the Plaintiff, the Defendant failed to take reasonable measures to detect and/or prevent the Unauthorised Transactions from taking place, thereby causing loss.

14

**Particulars of breach**

The Defendant failed to:

30.1.   verify whether the Disputed Authorisation Letters were in fact signed by the Plaintiff before effecting the Disputed Transactions;

30.2.   verify whether the Plaintiff had authorised the Disputed Transfers when the third-party accounts had not been authorised or nominated in advance or at all;

30.3.   implement reasonable compliance measures and processes to ensure and/or verify instructions from the Plaintiff before effecting withdrawals from the Deposit Accounts and transfers to third-party accounts that had not been authorised or nominated in advance or at all;

30.4.   provide regular statements of accounts; and

30.5.   ensure that it has, and maintains in its possession, the originals of the Disputed Authorisation Letters.

31.   The Defendant is therefore liable to the Plaintiff for any and all losses suffered by the Plaintiff that is caused by the Defendant's aforementioned breach of its duty of care.

## V.   DEBT, LOSS AND DAMAGE SUFFERED BY THE PLAINTIFF

32.   By a letter dated 27 August 2019 from the Plaintiff to the Defendant, the Plaintiff demanded the sum of SGD 9,099,814 representing the total amount withdrawn from the Deposit Accounts without authority or mandate and

15

transferred to third-party accounts that had not been nominated or authorised in advance or at all.

33. The Defendant has to-date, refused, failed and/or neglected to make payment of the sums demanded, or any part thereof.

34. In the premises, and by reason of the matters pleaded at paragraph 21 above, the Plaintiff is entitled to and claims payment or repayment of the sum of SGD 9,099,814.

35. Further and/or in the alternative, by reason of the Defendant's breaches of contract, implied contractual duty of care and/or duty of care in tort of the Plaintiff as set out at paragraphs 22 to 31, the Plaintiff has suffered loss and damage amounting to SGD 9,099,814.

36. Further, the Plaintiff is entitled to and claims interest under Section 12 of the Civil Law Act (Cap 43, 1999 Ed) on SGD 9,099,814 from the respective date of each of the Disputed Withdrawals, to the date of full payment.

**AND THE PLAINTIFF CLAIMS:-**

a. A declaration that the Disputed Withdrawals and/or Disputed Transfers were not authorised by the Plaintiff;

b. A declaration that the sum of SGD 9,099,814, with interest pursuant to paragraph 36 above, is due and owing by the Defendant to the Plaintiff;

c. That the sum of SGD 9,099,814, with interest pursuant to paragraph 36 above, be paid by the Defendant to the Plaintiff within 14 days of this Honourable Court's order;

d. In the alternative, such damages as may be assessed;

001029

16

e.  Interest pursuant to paragraph 36 above;

f.  Costs; and

g.  Such further or other relief as this Honourable Court deems fit.

Dated this 26th day of September 2019

**Solicitors for the Plaintiff**
**Rajah & Tann Singapore LLP**

001030