John P. Aldrich, Esq.
NV Bar No. 6877
**Aldrich Law Firm, Ltd.**
7866 West Sahara Ave.
Las Vegas, NV 89117
Tel: (702) 853-5490
jaldrich@johnaldrichlawfirm.com

Shannon L. Hopkins (*Pro Hac Vice*)
**Levi & Korsinsky, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE DANIELS FAMILY 2001 REVOCABLE TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br>  vs.<br><br>LAS VEGAS SANDS CORP., DR. MIRIAM ADELSON, in her capacity as Special Administrator of the estate of SHELDON G. ADELSON, PATRICK DUMONT, and ROBERT G. GOLDSTEIN,<br><br>             Defendants. | Case No. 2:20-cv-01958-CDS-EJY<br><br>**<u>PLAINTIFFS' MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY</u>** |

Court-appointed Co-Lead Plaintiffs Carl S. Ciaccio and Donald M. DeSalvo ("Plaintiffs") submit this Motion for Leave to File Notice of Supplemental Authority to advise the Court of a recent, highly-relevant decision in *In re Paysign, Inc. Sec Litig.*, No. 2:20-cv-00553-GMN-DJA, 2023 U.S. Dist. LEXIS 22055 (D. Nev. Feb. 9, 2023), in which the Honorable Gloria M. Navarro largely denied the defendants' motion to dismiss in a similar securities fraud action asserting claims under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *See* Exhibit 1 attached hereto.

In *Paysign*, the company employed as its Chief Financial Officer, Mr. De Joya, who the Securities and Exchange Commission ("SEC"), by order, had suspended from practicing as an accountant. *Id*. at *2-3, 12. Plaintiffs there alleged that defendants made false statements concerning: (i) Paysign's retention of "highly skilled personnel in finance[,]" and (ii) Paysign's purported adequate "internal controls" when, in fact, Paysign lacked adequate internal controls and skilled finance personnel and, as a result, was forced to delay filing its annual report and earnings announcement due to internal controls deficiencies. *Id.* at *4-5. In support of scienter, plaintiffs relied on the accounts of former employee confidential witnesses who confirmed that Mr. De Joya's office was next to CEO defendant Attinger's office, the two worked "closely" together and, despite the SEC order, Mr. De Joya aided in preparing Paysign's financial statements in question. *Id.* at *12-13.[1] In crediting the confidential witness allegations and finding scienter adequately pled, the court found it instructive that the witness accounts were "supplement[ed]" by allegations that defendants admittedly allowed De Joya to work on Paysign's financial statements, finding these "'detailed and specific allegations[]' supports that the individual Defendants were exposed 'to factual information within the company,'" yet "repeatedly certified that Paysign's internal controls were effective." *Id.* at *13-14 (citation omitted).

Like in *Paysign*, Plaintiffs allege that two former employees of Marina Bay Sands ("MBS"), one of defendant Las Vegas Sand's ("LVS") largest casinos, confirmed that unauthorized transfers between customer accounts occurred "all the time" and knowledge of them was "widespread" and "well-known."

---

[1] Notably, the court credited one CW's account that De Joya's SEC suspension was general knowledge among Paysign employees as supporting the individual defendants' knowledge that De Joya was "engag[ing] in acts prohibited by an SEC order." *Id*. at *12.

PLAINTIFFS' MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY

1

¶¶106, 112, 117, 121, 269-71.[2]  The SAC contains information provided by CW-1, a former Anti-Money Laundering Specialist in MBS's compliance department responsible for managing an in-depth review of client account openings, deposits, and transfers, and also responsible for flagging suspicious activity for inclusion in Suspicious Transaction Reports filed with the Singapore financial authorities.¶¶106-08. According to CW-1, unauthorized transfers and suspicious transactions were discussed at operational compliance meetings that CW-1 attended with LVS's Global Chief Compliance Officer and MBS's senior management. ¶115.  The SAC also contains information from CW-2, a former credit officer on the gaming side in MBS's Finance Department tasked with conducting know-your-customer due diligence on MBS patrons who wished to use credit to gamble. ¶117. CW-2 similarly stated that unauthorized transfers were occurring "at the cage" and were not approved by compliance. ¶121. CW-2 further stated that the decision to extend credit was made at the VP-level or higher. ¶¶117-18.

As in *Paysign*, the CW accounts here are corroborated by several other pieces of detailed evidence, including:

•    LVS's own SEC filings, which admit that the Global Chief Compliance Officer was required to meet quarterly with LVS's Board Compliance Committee to discuss any "violations" of LVS's compliance Policies, "correspondence with regulatory or government agencies" (such as those CW-1 reported on) and potential "criminal acts," among other things. ¶¶115, 309. The Global Chief Compliance Officer was also required to oversee the Operational Compliance Committee and report its finding to the full Board, upon which Defendants Adelson and Goldstein sat. ¶¶306-15.

•    Patron Wang Xi filed a lawsuit in the High Court of Singapore seeking to recover SGD$9.1 million (or approximately $6.6 million USD) that he alleged MBS transferred to other unknown casino patrons without his authorization through 22 transfers, which was ultimately settled for the full amount of his claim. ¶¶247, 256.

---

[2] "¶" refers to paragraphs of Plaintiffs Second Amended Complaint for Violations of the Federal Securities Laws ("SAC"). ECF 77.

• A December 2020 *Bloomberg* article reported that a former compliance executive noted during LVS's internal investigation into the unauthorized transfers at MBS that he raised the issue internally at MBS but was told by the operations and legal teams to back off, with the executive then leaving MBS when his contract was not renewed. ¶¶116, 270.

• Hogan Lovells, a law firm LVS hired to investigate the unauthorized transfers, uncovered numerous instances of employee non-compliance with proper standards by filling in payment details on pre-signed or photocopied authorization forms and determined that letters authorizing transfers for SGD$365 million, or more than 26% of those reviewed, bore signatures that appeared similar – supporting the inference that these were likely photocopied duplicates and unauthorized transfers. ¶280.

• In January 2020, the United States Department of Justice issued a grand jury subpoena to a former compliance chief of MBS "seeking an interview or documents on 'money laundering facilitation' and any abuse of internal financial controls." ¶284.

• *Bloomberg* further announced in May 2020 that the Singapore police had commenced a probe in response to the Wang lawsuit regarding the unauthorized transfer of funds between accounts. ¶137.

• A December 2020 *Bloomberg* article reported that, according to an internal document *Bloomberg* obtained, MBS wrote off $717 million from 928 accounts during the period of 2013 through 2020, as compared to what a former LVS executive stated was more typical of $20 to $30 million per year. LVS's SEC filings further show that of the $1.61 billion in bad debt write-offs during that same period, MBS accounted for 62%. ¶¶129-31.

Like in *Paysign*, these "'detailed and specific allegations[]' supports that the individual Defendants were exposed 'to factual information within the company'" (*Paysign*, 2023 U.S. Dist. LEXIS 22055 at *13-14),  yet repeatedly stated to investors that LVS only "extend[ed] credit to those customers whose level of play and financial resources warrant[ed] . . . an extension of credit" and that Defendants purportedly had "not seen evidence" of non-compliance with anti-money laundering and other regulations ¶¶7, 145, 160.

For these reasons, Plaintiff respectfully moves for leave to submit their Notice of Supplemental Authority.

Dated: February 24, 2023

Respectfully submitted,
LEVI & KORSINSKY, LLP

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins, Esq. (*Pro Hac Vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com

ALDRICH LAW FIRM, LTD.
John P. Aldrich, Esq.
NV Bar No. 6877
7866 West Sahara Ave.
Las Vegas, NV 89117
Tel.  702.853.5490
Fax.  702.227.1975
Email:  jaldrich@johnaldrichlawfirm.com

*Counsel for Plaintiffs*

Case No. 2:20-cv-01958-CDS-EJY

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2023, I electronically filed the foregoing document using the CM/ECF system which will send notifications of such filings to the email addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

LEVI & KORSINSKY, LLP


*/s/ Shannon L. Hopkins*_____
Shannon L. Hopkins, Esq.


*Counsel for Plaintiffs*