# Exhibit 1

# *In re Paysign, Inc. Sec. Litig.*

United States District Court for the District of Nevada

February 9, 2023, Decided; February 9, 2023, Filed

Case No.: 2:20-cv-00553-GMN-DJA

**Reporter**

2023 U.S. Dist. LEXIS 22055 *

IN RE PAYSIGN, INC. SECURITIES LITIGATION

**Counsel:** [*1] For Yilan Shi, Plaintiff: Patrick R. Leverty, LEAD ATTORNEY, Leverty & Associates Chtd, Reno, NV; Phillip Kim, The Rosen Law Firm, New York, NY; William Ginn, Leverty & Associates, Chtd., Reno, NV.

For Gary Smith, Pamela Duvall, Movants: John P. Aldrich, Aldrich Law Firm, Ltd., Las Vegas, NV.

For Johann Francisconi, Movant: Omar Jafri, LEAD ATTORNEY, PRO HAC VICE, Pomerantz, Illinois, IL; Sean P Connell, LEAD ATTORNEY, Muehlbauer Law Office, Ltd., Las Vegas, NV; Andrew R. Muehlbauer, Muehlbauer Law Office, Ltd., Las Vegas, NV; Jeremy Alan Lieberman, PRO HAC VICE, Pomerantz LLP, New York, NY; Patrick V. Dahlstrom, PRO HAC VICE, Pomerantz LLP, Chicago, IL.

For Raheel Shahzad, Movant: Omar Jafri, LEAD ATTORNEY, PRO HAC VICE, Pomerantz, Illinois, IL; Sean P Connell, LEAD ATTORNEY, Muehlbauer Law Office, Ltd., Las Vegas, NV; Andrew R. Muehlbauer, Muehlbauer Law Office, Ltd., Las Vegas, NV; Jeremy Alan Lieberman, PRO HAC VICE, Pomerantz LLP, New York, NY; Patrick V. Dahlstrom, Pomerantz LLP, Chicago, IL.

For Ryan Rothman, Movant: Patrick R. Leverty, Leverty & Associates Chtd, Reno, NV.

For Paysign, Inc., Mark R. Newcomer, Mark Attinger, Daniel H. Spence, Defendants: Christopher R Miltenberger, [*2] PRO HAC VICE, Greenberg Traurig, LLP, Las Vegas, NV; Daniel J. Tyukody, PRO HAC VICE, Greenberg Traurig, LLP, Los Angeles, CA.

**Judges:** Gloria M. Navarro, United States District Judge.

**Opinion by:** Gloria M. Navarro

# Opinion

## ORDER

Pending before the Court is Defendants Paysign, Inc., Mark R. Newcomer, Mark Attinger, and Daniel Spence's (collectively, "Defendants'") Motion to Dismiss, (ECF No. 34). Plaintiffs Johann Francisconi, *et al.* (collectively, "Plaintiffs") filed a Response, (ECF No. 40), to which Defendants filed a Reply, (ECF No. 41).[1]

For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss.

## I. BACKGROUND

Plaintiffs bring this putative securities class action against Paysign and certain of its directors and

---

[1] Defendants also request that the Court take judicial notice of six public documents, attached to Christopher R. Miltenberger's Declaration, (ECF No. 35). (*See generally* Req. Judicial Notice, ECF No. 36). Courts may take judicial notice of facts if they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Harris v. Cty. of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012)* (quoting *Fed. R. Evid. 201*). Plaintiffs do not oppose Defendants' request. (*See generally* Resp., ECF No. 40). The Court finds the documents publicly filed with the Securities and Exchange Commission referenced in Defendants' Request derive "from sources whose accuracy cannot reasonably be questioned." As a result, the Court takes judicial notice of the public documents attached to Mr. Miltenberger's Declaration. (Exs. A-F to Decl. Christopher Miltenberger, ECF Nos. 35-1-35-6); (*see* Req. Judicial Notice ¶¶ 1-6).

2023 U.S. Dist. LEXIS 22055, *2

executive officers, on behalf of all persons who purchased or otherwise acquired Paysign's securities between March 12, 2019, and March 31, 2020 (the "Class Period"). (Consol. Am. Class Action Compl. ("CAC") ¶ 1, ECF No. 22). Plaintiffs claim that during the Class Period, Defendants made several misleading statements and omissions concerning employing a suspended accountant and making changes to Paysign's software systems that **[\*3]** caused inaccurate balances to client accounts. (*See generally id.*) The parties provide a detailed review of the facts alleged in Plaintiffs' CAC and the background information and procedural history of this case in their briefing for the instant Motion. (*See* Mot. Dismiss ("MTD") 4:26-7:9, ECF No. 34); (Resp. 4:7-7:19, ECF No. 40). Relevant to the Court's analysis, however, Plaintiffs allege Defendants engaged in three acts of misconduct: (1) Defendants employed a suspended accountant, Arthur De Joya, despite an SEC cease-and-desist order prohibiting De Joya from practicing as an accountant; (2) Defendant Spence, Paysign's Chief Technology Officer, made software changes to Paysign's internal system that created discrepancies, which caused inaccurate balances to customers' accounts; and (3) Defendants Newcomer and Spence engaged in insider trading when they sold portions of their total stock holdings in Paysign while stock prices were artificially inflated. (CAC ¶¶ 5-7, 9, 16, 73-74).[2] Plaintiffs then allege that Defendants violated *Section 10(b) of the Exchange Act* by misrepresenting this misconduct in Paysign's SEC filings. (*See id.* ¶¶ 55-101). Specifically, Plaintiffs allege that

In the Company's Annual Report filed **[\*4]** in the beginning of the Class Period on March 12, 2019, the Defendants misleadingly claimed that their failure to (a) retain highly skilled personnel in finance *may* harm the Company's operations, (b) maintain internal controls to prevent additional deficiencies *may* result in the untimely filing of the Company's financial

statements, and (c) prevent "improper operations" or other events *may* harm the Company's business or reputation. However, every one of these events was not contingent because they had already occurred before or during the Class Period.

(*Id.* ¶ 10).

During the Class Period, on March 16, 2020, Paysign announced delaying filing their 2019 annual report because of deficiencies "in its internal controls over financial reporting and information technology general controls." (*Id.* ¶ 11). As a result, Paysign's stock declined 17% from the previous day's closing price. (*Id.* ¶¶ 12, 76). On the last day of the Class Period, Paysign announced delaying their earnings results. (*Id.* ¶¶ 13, 77). Paysign's stock then declined 22% from the previous day's closing price. (*Id.* ¶¶ 14, 78). Plaintiffs allege that Defendants Newcomer, Attinger, and Spence knew of these internal control deficiencies **[\*5]** and the harm these deficiencies would cause. (*Id.* ¶¶ 51-74). Defendants Newcomer and Spence purportedly exploited this knowledge and sold stock they held in Paysign while the stock price was artificially inflated. (*Id.* ¶¶ 73-74). Plaintiffs include the accounts of six confidential witnesses ("CWs") that held positions in Paysign to support these allegations. (*Id.* ¶¶ 46-54). As a result of these events, and after similarly-situated Plaintiffs filed analogous allegations against Defendants, Plaintiffs filed the CAC. (*See generally* CAC); (Omnibus Transfer Order, ECF No. 17); (Order Granting Mot. Consolidate, ECF No. 21). Defendants now move for dismissal. (*See generally* MTD).

## II. LEGAL STANDARD

### a. *Rule 12(b)(6)* Motion to Dismiss

Dismissal is appropriate under *Rule 12(b)(6)* where a pleader fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6)*; *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. A pleading must give fair notice of a legally cognizable claim and

---

[2] Plaintiffs also allege Defendants knew about or recklessly disregarded material weaknesses in Paysign's internal controls over financial reporting by way of Paysign's revenue and cashflow figures being inaccurate. (CAC ¶ 8).

the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly, 550 U.S. at 555.* Accordingly, *Rule 12(b)(6)* requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* **[*6]** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).* "Generally, a district court may not consider any material beyond the pleadings in ruling on a *Rule 12(b)(6)* motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).* "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a *Rule 12(b)(6)* motion to dismiss." *Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).* On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986).* Otherwise, if court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *Fed. R. Civ. P. 12(d).*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. **[*7]**

*DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).* Pursuant to *Rule 15(a)*, the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).*

### a. *Rule 9(b)* and the PSLRA Pleading Standard

Beyond meeting the demands of *Rule 12(b)(6)*, a plaintiff asserting securities fraud claims must satisfy the heightened pleading requirements of *Federal Rule of Civil Procedure 9(b)* and the *Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)*, in order to survive a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321-24, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).*

Under *Rule 9(b)*, "a party must state with particularity the circumstances constituting fraud . . . ." *Fed. R. Civ. P. 9(b).* To comply with the rule, the complaint must state with particularity the circumstances constituting the fraud, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004).* "[A]llegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have **[*8]** done anything wrong.'" *Bly-Magee v. Cal., 236 F.3d 1014, 1019 (9th Cir. 2001)* (internal punctuation omitted). Where several defendants are alleged to be part of the fraud, "*Rule 9(b)* 'does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011).*

The PSLRA requires that a complaint must "specify each statement alleged to have been false or misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *15 U.S.C. § 78u-4(b)(2)*. Further, where recovery is dependent on a showing that defendant acted with a particular state of mind, "the complaint shall [. . .] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.*

## III. DISCUSSION

Plaintiffs allege two causes of action: (1) violations of *Section 10(b) of the Exchange Act* and *Rule 10b-5* Promulgated Thereunder against all Defendants; and (2) violations of *Section 20(a) of the Exchange Act* against Defendants Newcomer, Attinger, and Spence (the "Individual Defendants"). (CAC ¶¶ 91-108). Defendants argue Plaintiffs' *Section 10(b)* claim should be dismissed because **[*9]** Plaintiffs fail to adequately plead scienter. (MTD 7:11-19:17). Defendants further argue that because Plaintiffs fail to state a claim for a predicate primary violation of *Section 10(b)* against any Defendant, Plaintiffs' *Section 20(a)* claim necessarily fails. (*Id.* 19:20-20:4). The Court addresses each of Plaintiffs' claims in turn.

### a. *Section 10(b) of the Exchange Act* and *Rule 10b-5*

*Section 10(b)* makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." *15 U.S.C. § 78j*. *Rule 10b-5*, promulgated by the Securities and Exchange Commission ("SEC") under the authority of *Section 10(b)*, in turn makes it unlawful for any person,

a) To employ any device, scheme, or artifice to defraud;

b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection **[*10]** with the purchase or sale of any security.

*17 C.F.R. § 240.10b-5*. To avoid dismissal of a claim for relief under *Section 10(b)*, a plaintiff must allege: (1) Defendants made a material misrepresentation or omission, (2) with scienter or intent to defraud, (3) in connection with the purchase or sale of a security, (4) Plaintiffs relied on that misrepresentation, (5) Plaintiffs suffered economic loss, and (6) that loss was caused by the misrepresentation or omission. *See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)*.

The parties' focus, however, centers around whether Plaintiffs adequately allege scienter. To that end, to plead scienter, a plaintiff must "'state with particularity facts giving rise to a strong inference' that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 987 (9th Cir. 2008)*. Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety." *Tellabs, Inc., 551 U.S. at 322*. "The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id. at 322-23*. Scienter is adequately alleged when "a reasonable person would deem the inference of scienter **[*11]** cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id. at 324*.

Defendants argue the CAC fails to state a *Section 10(b)* claim because its De Joya, software changes, and insider trading allegations do not

support an inference of scienter. (MTD 8:4-12:20). They also contend the CAC does not support a cogent and compelling inference of scienter as to each Individual Defendant or under a holistic view. (*Id.* 8:4-19:17). The Court first turns to whether the CAC's De Joya allegations support an inference of scienter.

*i. De Joya*

"Scienter may be pled based on allegations attributed to confidential witnesses, so long as two conditions are met: 'First, the confidential witnesses . . . must be described with sufficient particularity to establish their reliability and personal knowledge. Second, those statements which are reported . . . must themselves be indicative of scienter.'" *Cutler v. Kirchner, 696 F. App'x 809, 815 (9th Cir. 2017)* (quoting *Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 995 (9th Cir. 2009)*). "[G]eneral allegations about management's role in a corporate structure and the importance of the corporate information about which management made . . . misleading statements" is not enough to satisfy the PSLRA if they are not supplemented by "detailed and specific allegations about **[*12]** management's exposure to factual information within the company." *Zucco Partners, 552 F.3d at 1000*.

Here, Plaintiffs sufficiently allege the prominent roles the Individual Defendants played in Paysign's corporate structure. (CAC ¶ 4). They also allege that the Individual Defendants knew of or recklessly disregarded that Paysign employed a suspended accountant who engaged in acts prohibited by an SEC order. According to Plaintiffs, De Joya was Paysign's Chief Financial Officer from 2007 to 2015 but was suspended by the SEC in 2015 via a cease-and-desist order. (*Id.* ¶¶ 6-7). Through disciplinary action, the Nevada State Board of Accountancy prohibited De Joya from applying to practice before the SEC between June 9, 2016, and December 9, 2018. (*Id.* ¶ 7). Plaintiffs allege the Individual Defendants knew this. CW3, Paysign's Senior Director of Pharmaceutical Account Management from April 2018 to January 2019, corroborates this by stating Paysign's

employees knew that De Joya was "not legally able to" perform certain tasks. (*Id.* ¶ 49). CW 4, Paysign's Call Center Manager from April 2016 to January 2020, also adds support; according to CW4, "De Joya told CW4 that he had worked closely with Defendant Newcomer for years. CW4 **[*13]** [also] state[s] that De Joya's office was right next to Defendant Attinger's office, and De Joya also worked closely with Defendant Attinger." (*Id.* ¶ 50). Despite the SEC's order, De Joya allegedly aided in preparing Paysign's financial statements for fiscal years 2017, 2018, and 2019. (*Id.* ¶ 5). CW1, Paysign's Senior Accountant from November 2015 to July 2016, supports this by stating that "De Joya was regularly in [Paysign's] headquarters, and . . . worked on [Paysign's] financial statements and other public documents prepared to be filed with the SEC." (*Id.* ¶ 46).

Plaintiffs supplement the CWs' statements with other specific allegations. They claim that through Paysign's 2019 10-K Annual Report, Defendants admitted they employed De Joya and allowed him to work on Paysign's financial statements, violating the SEC's order:

> [T]he Company lacked sufficient monitoring and disclosure controls to prevent and terminate the employment of an individual barred from practicing before the Securities and Exchange Commission who assisted the Company in accounting matters related to the preparation of its financial statements for 2017, 2018 and 2019.

(CAC ¶ 79). This "detailed and specific allegation[]" **[*14]** supports that the Individual Defendants were exposed "to factual information within the company." *Zucco Partners, 552 F.3d at 1000*.

Plaintiffs then contend that despite knowing De Joya helped prepare Paysign's financial statements in contravention of the SEC's cease-and-desist order, Defendants repeatedly certified that Paysign's internal controls were effective. (Resp. 11:1-3); (CAC ¶¶ 57-58). Indeed, Plaintiffs allege that in Paysign's 2018 10-K Annual Report, Defendants mislead investors when they noted that potential violations of SEC rules could lead to

decline in stock prices. (CAC ¶¶ 57-58, 61-62). Given their purported knowledge that De Joya was helping prepare Paysign's financial statements despite the SEC order prohibiting it, Plaintiffs' allegations allow the Court to adequately infer scienter as to Defendants Newcomer and Attinger. *Tellabs, Inc., 551 U.S. at 322-24*; *Cutler, 696 F. App'x at 815*.[3] Accordingly, the Court DENIES dismissal of Plaintiffs' *Section 10(b)* claim against Defendants Newcomer and Attinger.

*ii. Software Changes*

Next, Plaintiffs allege Defendant Spence made changes to Paysign's software systems that led to inaccurate balances to customers' accounts. (CAC ¶ 9, 48, 53). CW2, Paysign's Corporate Trainer and Customer Services Representative from October 2018 to **[*15]** September 2019, corroborates this by stating that "Defendant Spence regularly made programming changes to the Company's internal system that stored customer account profiles without providing other employees with notice that he had done so." (*Id.* ¶ 48). CW2 further states that these changes "caused customers' account balances to materially differ from the actual balances on their accounts." (*Id.*). CW2 goes on to say that this information was widely known at Paysign and that Paysign's Chief Operating Officer, Joan Herman, knew this and informed Defendant Newcomer about it. (*Id.*). However, unlike the allegations against Defendants Newcomer and Attinger, Plaintiffs do not include separate allegations that supplement CW2's statements.[4] (*See generally* CAC). As such,

---

[3] Through these allegations, the Court is persuaded that "the complaint contains an inference of scienter that is greater than the sum of its parts" regarding Defendants Newcomer and Attinger. *Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1165 (9th Cir. 2009)*.

[4] Plaintiffs attempt to support an inference of scienter regarding Defendant Spence by alleging that he exploited Paysign's artificially inflated stock price and earned over $1.3 million from selling 1.4% of his total shares of Paysign common stock. (CAC ¶ 73-74); (Resp. 21:27-22:1). "Unusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter." *In re Quality Sys., Inc.*

Plaintiffs' allegations do not allow the Court to adequately infer scienter as to Defendant Spence. *Zucco Partners, 552 F.3d at 1000*. Accordingly, the Court GRANTS dismissal of Plaintiffs' *Section 10(b)* claim as to Defendant Spence with leave to amend.

**b. *Section 20(a) of the Exchange Act***

To adequately state a claim under *Section 20(a) of the Exchange Act*, a plaintiff must plead facts that show: (1) a primary violation of the federal securities laws; and (2) that the defendant was a control person. *Zucco Partners, 552 F.3d at 990*. A control person is a person **[*16]** or entity that has actual power or influence over the primary violator. *See id.* "*Section 20(a)* claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of *[S]ection 10(b)*." *Id.* Here, Defendants fail to supply meaningful points and authorities regarding whether Plaintiffs adequately plead a *Section 20(a)* violation. Their only argument assumes Plaintiffs fail to claim a *Section 20(a)* violation because they simultaneously fail to claim a *Section 10(b)* violation. (MTD 19:20-20:4). Regarding Defendants Newcomer and Attinger, the Court held above that Plaintiffs adequately plead scienter, which was Defendants' only attack on Plaintiffs' *Section 10(b)* claim. Thus, Defendants' failure to develop their attack on Plaintiffs' *Section 20(a)* violation necessarily leads the Court to

---

*Sec. Litig., 865 F.3d 1130, 1146 (9th Cir. 2017)* (citation omitted). However, the amount and percentage of shares sold here does not meet the threshold set by the courts of this district. *See* **Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1067 (9th Cir. 2008)** (noting that courts typically require sales amounts larger than 37% of total stock holdings "to allow insider trading to support scienter"); *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp., 380 F.3d 1226, 1232 (9th Cir. 2004)* (remarking that when the sales amount of total stock holdings is low, the proceeds of the sales must be "astronomical" to support an inference of scienter); *Brendon v. Allegiant Travel Co., 412 F. Supp. 3d 1244, 1262 (D. Nev. 2019)* (same). Here, neither the alleged sales amount nor proceeds of sales meet the threshold. The sales amount of total stock holdings is low and not offset by "astronomical" proceeds. *See Oracle Corp., 380 F.3d at 1232* (finding that $900 million stock sale was "astronomical" compared to 2.1% of total stock holdings). Thus, Plaintiffs fail to sufficiently plead these figures support an inference of scienter.

DENY dismissal of Plaintiffs' *Section 20(a)* claim as to Defendants Newcomer and Attinger. But because Plaintiffs failed to sufficiently plead scienter as to Defendant Spence, Plaintiffs' claim under *Section 20(a)* against Defendant Spence cannot survive Defendants' Motions to Dismiss.

### c. Leave to Amend

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992)*. Pursuant **[*17]** to *Rule 15(a)*, the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*.

Here, the Court finds that Plaintiffs may be able to plead additional facts to support their first and second causes of action. Accordingly, the Court will grant Plaintiffs leave to file an amended complaint. The Court, however, cautions that an amended complaint must plead particular facts that give rise to a strong inference of scienter regarding Defendant Spence. Plaintiffs shall file their amended complaint within twenty-one (21) days of the date of this Order if they can allege sufficient facts that plausibly establish Plaintiffs' *Section 10(b)* and *Section 20(a)* claims as to Defendant Spence. Failure to file an amended complaint by this date shall result in the Court dismissing these claims with prejudice.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 34), is **GRANTED in part and DENIED in part**, consistent **[*18]** with this Order.

**IT IS FURTHER ORDERED** that if Plaintiffs seek to amend claims dismissed without prejudice, Plaintiffs shall file an amended complaint within twenty-one (21) days from the entry of this Order.

**DATED** this 9 day of February, 2023.

/s/ Gloria M. Navarro

Gloria M. Navarro, District Judge

United States District Court

---