John P. Aldrich, Esq.
NV Bar No. 6877
**Aldrich Law Firm, Ltd.**
7866 West Sahara Ave.
Las Vegas, NV 89117
Tel: (702) 853-5490
jaldrich@johnaldrichlawfirm.com

Shannon L. Hopkins (*Pro Hac Vice*)
**Levi & Korsinsky, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE DANIELS FAMILY 2001 REVOCABLE TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LAS VEGAS SANDS CORP., DR. MIRIAM ADELSON, in her capacity as Special Administrator of the estate of SHELDON G. ADELSON, PATRICK DUMONT, and ROBERT G. GOLDSTEIN, <br><br> Defendants. | Case No. 2:20-cv-01958-CDS-EJY <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY** |

Court-appointed Co-Lead Plaintiffs Carl S. Ciaccio and Donald M. DeSalvo ("Plaintiffs") submit this Response to Defendants' Motion for Leave to File Notice of Supplemental Authority, which argues that two decisions involving *PayPal*[1] support Defendants' arguments in their Motion to Dismiss the Second Amended Class Action Complaint ("Motion to Dismiss"). ECFs 84, 99. Despite Defendants' belated submission of the nine-month-old *PayPal I* decision, Plaintiffs will not oppose the instant Motion, but submit that the *PayPal Decisions* do not support Defendants' Motion to Dismiss.

As an initial matter, in *PayPal I*, the court took judicial notice of certain documents incorporated into the complaint by reference for context only, but ***not*** for the truth of the matters asserted, also noting "the incorporated documents do not 'dispute facts stated in a well-pleaded complaint[.]'" *PayPal I*, 2022 WL 3155241, at *7. Likewise, the Court here may not consider the documents Defendants seek to incorporate by reference for the truth of the matter asserted, particularly because, unlike in the *PayPal Decisions*, Defendants want to rely on statements in *Bloomberg* articles that are in dispute to rebut Plaintiffs' scienter allegations. ECF 84 at 18 (asserting Bloomberg article contained evidence that "no patron funds were transferred" contrary to patrons' intent or in violation of regulations). As set forth more fully in Plaintiffs' Opposition to Defendants' Request for Judicial Notice, the Court may not consider these disputed statements for their truth. ECF 95 at 3, 22-23.

Moreover, in the *PayPal Decisions*, plaintiffs alleged the defendants made false statements about PayPal's (i) compliance with a Consent Order entered into with the Consumer Finance Protection Bureau ("CFPB") concerning allegedly misleading marketing practices and customers' improper enrollment into PayPal credit; (ii) compliance with Regulation II's interchange fee cap; and (iii) response to the Student Borrower Protection Center's ("SBPC") letter regarding alleged unlawful marketing practices. *PayPal I*, 2022 WL 3155241, at *5-6; *PayPal II*, 2023 WL 3166159, at *2-4. The PayPal court found, *inter alia*: (i) the plaintiffs failed to allege PayPal was not incompliant with any regulations where plaintiffs merely alleged consumers "did not recall" whether they gave consent to be enrolled in PayPal credit; (ii) it was the merchants, not PayPal, who allegedly engaged in misleading advertising;

---

[1] *Kang v. PayPal Hldgs., Inc., et. al.,* 2022 WL 3155241 (N.D. Cal. Aug. 8, 2022) ("PayPal I") and *Kang v. PayPal Hldgs., Inc., et. al.*, 2023 WL 3166159 (N.D. Cal. Apr. 27, 2023) ("PayPal II and, collectively, the "*PayPal Decisions*").

and (iii) at most, PayPal took advantage of a "gap" in Regulation II, which needed clarifications and, upon receipt of the SBPC letter, PayPal convinced most vendors to remove the improper promotions, demonstrating defendants' response to the SBPC letter, that PayPal was taking actions to help remedy the unlawful advertising, was truthful. *PayPal I* at *9-10; *PayPal II* at *3-4. Further, plaintiffs failed to allege scienter where they did not plead facts showing any defendant attended a meeting or received a report disclosing the adverse information. *PayPal I* at *11; *PayPal II* at *5-6.

Unlike in the *PayPal Decisions* where the plaintiffs did not allege *PayPal* actually violated any regulations, Plaintiffs here allege numerous, detailed examples of Defendants' actual violations of LVS's internal credit lending policies and external anti-money laundering regulations, yet they told investors that LVS only "extend[ed] credit to those customers whose level of play and financial resources warrant[ed] . . . an extension of credit" and that Defendants purportedly had "not seen evidence" of non-compliance with anti-money laundering and other regulations ¶¶7, 145, 160.[2] *See also, e.g.*, *In re Paysign, Inc. Sec. Litig.*, 2023 WL 1868476, at *5 (D. Nev. Feb. 9, 2023) (finding plaintiffs' "'detailed and specific allegation[]' supports that the individual Defendants were exposed 'to factual information within the company.'").

For example, CW-1 (a former Anti-Money Laundering Specialist in MBS's compliance department) confirmed that CW-1 personally flagged thousands of unauthorized transfers and suspicious transactions per year, which CW-1 submitted to regulators on Suspicious Transaction Reports. ¶¶106-08. CW-1 stated that this witness participated in compliance meetings **with LVS's Global Chief Compliance Officer** every one to three months, during which CW-1 raised the high number of suspicious transfers. ¶115. According to LVS's filings with the U.S. Securities and Exchange Commission, LVS's Global Chief Compliance Officer met quarterly with LVS's Board Compliance Committee to discuss "violations" of LVS's compliance Policies. ¶¶306-15. The LVS Global Chief Compliance Officer also oversaw the Operational Compliance Committee that reports its finding to the full Board, **upon which Defendants Adelson and Goldstein sat**. ¶¶306-15. Thus, according to CW-1 and LVS's own SEC filings, the Global Chief Compliance Officer would have reported the violations

---

[2] "¶" refers to paragraphs of Plaintiffs Second Amended Complaint for Violations of the Federal Securities Laws ("SAC"). ECF 77.

of LVS's compliance Policies that CW-1 reported to him, to the Operational Compliance Committee and the Board, including defendants Adelson and Goldstein. ¶¶115, 309, 313. CW-2 (a former credit officer on the gaming side in MBS's Finance Department) corroborated CW-1's account, stating MBS disregarded a player's financial condition when deciding whether to lend money and the unauthorized transfers were occurring "at the cage" (the part of MBS's Finance Department that directly releases funds) where CW-2 also witnessed patrons paying kickbacks in exchange for MBS personnel approving the patrons' credit applications in violation of Company policies and regulatory laws. ¶¶117, 119, 121.

Plaintiffs also allege detailed corroborating evidence of LVS's *actual* policy and regulatory violations, of which Defendants were aware or recklessly disregarded, including:

- Hogan Lovells, a law firm LVS hired to investigate the unauthorized transfers, uncovered numerous instances of employee non-compliance with proper standards by filling in payment details on pre-signed or photocopied authorization forms and determined that letters authorizing transfers for SGD$365 million, or more than 26%, of the authorization forms reviewed bore signatures that appeared similar – supporting the inference that these were likely photocopied duplicates and unauthorized transfers. ¶280.

- Patron Wang Xi filed a lawsuit in the High Court of Singapore seeking to recover SGD$9.1 million (or approximately $6.6 million USD) that he alleged MBS transferred to other unknown casino patrons without his authorization through 22 transfers, which was ultimately settled for the full amount of his claim, indicating the strong merit of Xi's claim. ¶¶247, 256.

- A December 2020 *Bloomberg* article reported, and Plaintiffs' two CWs corroborated, that a former compliance executive noted during LVS's internal investigation into the unauthorized transfers at MBS that he raised the issue internally at MBS but was told by the operations and legal teams to back off, with the compliance executive then leaving MBS when his contract was not renewed. ¶¶116, 270.

- In January 2020, the United States Department of Justice issued a grand jury subpoena to a former compliance chief of MBS "seeking an interview or documents on 'money laundering facilitation' and any abuse of internal financial controls." ¶284.

- *Bloomberg* further announced in May 2020 that the Singapore police had commenced a probe in response to the Wang lawsuit regarding the unauthorized transfer of funds between accounts. ¶137.

- A December 2020 *Bloomberg* article reported that, according to an internal document *Bloomberg* obtained, MBS wrote off $717 million from 928 receivable accounts during the period of 2013 through 2020, as compared to what a former LVS executive stated was more typical of $20 to $30 million per year, evidencing the significant unauthorized transfers that were occurring at MBS. LVS's SEC filings further show that MBS accounted for 62%, or over one-half, of LVS's total bad debt write-offs for that period. ¶¶129-31.

Thus, unlike the *PayPal Decisions*, which did not allege that PayPal violated any regulations, the CW accounts here provide numerous examples of actual violations and Defendants' knowledge or reckless disregard for such violations. That there have been no regulatory findings to date, one way or the other, does not undermine Plaintiffs' claims.

For these reasons, Plaintiffs have sufficiently alleged their Exchange Act claims and, taking the allegations as true and drawing all reasonable inferences in Plaintiffs' favor, as the Court must do at this stage of the proceedings, Plaintiffs respectfully submit that the *PayPal Decisions* do not support Defendants' Motion.

Dated: May 10, 2023

Respectfully submitted,
LEVI & KORSINSKY, LLP

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins, Esq. (*Pro Hac Vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com

ALDRICH LAW FIRM, LTD.
John P. Aldrich, Esq.
NV Bar No. 6877
7866 West Sahara Ave.
Las Vegas, NV 89117
Tel.  702.853.5490
Fax.  702.227.1975
Email:  jaldrich@johnaldrichlawfirm.com

Case No. 2:20-cv-01958-CDS-EJY

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2023, I electronically filed the foregoing document using the CM/ECF system which will send notifications of such filings to the email addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

LEVI & KORSINSKY, LLP


/s/ Shannon L. Hopkins
Shannon L. Hopkins, Esq.


*Counsel for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY

6