Patrick G. Byrne (Nevada Bar #7636)
Morgan Petrelli (Nevada Bar #13221)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone:  702.784.5200
Facsimile:  702.784.5252
Email:  pbyrne@swlaw.com
        mpetrelli@swlaw.com

Walter C. Carlson (*Pro Hac Vice*)
Lawrence P. Fogel (*Pro Hac Vice*)
Caroline A. Wong (*Pro Hac Vice* to be filed)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:  312.853.6892
Facsimile:  312.853.7036
Email:  wcarlson@sidley.com
        lawrence.fogel@sidley.com
        caroline.wong@sidley.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| THE DANIELS FAMILY 2001 REVOCABLE TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LAS VEGAS SANDS CORP., DR. MIRIAM ADELSON, in her capacity as Special Administrator of the estate of SHELDON G. ADELSON, PATRICK DUMONT, and ROBERT G. GOLDSTEIN,<br><br>Defendants. | Case No.: 2:20-cv-01958-CDS-EJY<br><br>**DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION, OR FOR AN ORDER CERTIFYING AN INTERLOCUTORY APPEAL**<br><br>**ORAL ARGUMENT REQUESTED** |

*Snell & Wilmer*
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

    I.      THE 2019-2020 STATEMENTS SHOULD BE DISMISSED FOR
           FAILURE TO ALLEGE SCIENTER ................................................................ 5

    II.     THE 2019-2020 STATEMENTS SHOULD BE DISMISSED FOR
           FAILURE TO ALLEGE LOSS CAUSATION, TAKING INTO ACCOUNT
           JUDICIALLY NOTICEABLE STOCK PRICE INFORMATION. ....................... 9

    III.    ALTERNATIVELY, THE ORDER SHOULD BE CERTIFIED FOR
           INTERLOCUTORY APPEAL. ....................................................................... 13

CONCLUSION ................................................................................................................. 14

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

i

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*In re Am. Apparel, Inc. S'holder Litig.*,
   855 F. Supp. 2d 1043 (C.D. Cal. 2012) ................................................................. 8

*Cai v. Switch, Inc.*,
   No. 2:18-CV-1471, 2020 WL 3893246 (D. Nev. July 10, 2020) ......................... 10

*In re Ceridian Corp. Sec. Litig.*,
   542 F.3d 240 (8th Cir. 2008) ................................................................................ 8

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ................................................................................ 4

*Di Donato v. Insys Therapeutics Inc.*,
   No. 16-CV-302, 2017 WL 3268797 (D. Ariz. Aug. 1, 2017) .............................. 11

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990) .............................................................................. 6

*Inchen Huang v. Higgins*,
   443 F. Supp. 3d 1031 (N.D. Cal. 2020) ............................................................... 8

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
   998 F.3d 397 (9th Cir. 2021) .......................................................................... 11, 12

*Lasko v. Am. Bd. of Internal Med.*,
   92 F. Supp. 3d 1013 (D. Nev. 2015) .................................................................... 4

*Lipton v. PathoGenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) .............................................................................. 5

*Lloyd v. CVB Fin. Corp.*,
   No. 10-cv-6256, 2012 WL 12883522 (C.D. Cal. Jan. 12, 2012) ......................... 10

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ............................................................................... 12

*Metzler Inv. GmbH v. Corinthian Coll., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .................................................................... *passim*

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ................................................................................ 7

*Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v.
First Solar Inc.*,
   No. 22-CV-36, 2023 WL 4161355 (D. Ariz. June 23, 2023) ............................... 6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ........................................................................... 5, 7

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021) .............................................................................. 6

ii

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011)............................................................................................ 5, 14

*Sneed v. AcelRx Pharms., Inc.*,
  No. 21-CV-4353, 2023 WL 4412164 (N.D. Cal. July 7, 2023)................................................ 6

*South Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008)................................................................................................. 14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ........................................................................................................... 7, 8

*Weiss v. Amkor Tech., Inc.*,
  527 F. Supp. 2d 938 (D. Ariz. 2007)....................................................................................... 7

*Welgus v. TriNet Grp., Inc.*,
  No. 15-cv-3625, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017)............................................. 8

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021)........................................................................................ 11, 14

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)................................................................................................... 5

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)............................................................................................................ 5

28 U.S.C. § 1292(b) ........................................................................................................ 2, 4, 5, 14

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION, OR FOR AN ORDER CERTIFYING AN INTERLOCUTORY APPEAL

Pursuant to Local Rule 59-1, Defendants Las Vegas Sands Corp. ("LVS"), Dr. Miriam Adelson, in her capacity as Special Administrator of the Estate of Sheldon G. Adelson, Patrick Dumont, and Robert G. Goldstein (collectively, "Defendants") respectfully request that this Court reconsider its Order of August 8, 2023 (ECF No. 108, the "Order")[1] insofar as it denied in part Defendants' Motion to Dismiss the Second Amended Complaint ("SAC").

This motion is limited to issues relating to scienter and loss causation. It is supported by the attached Memorandum of Points and Authorities, as well as the other papers and pleadings on file herein.

Dated: August 22, 2023

SNELL & WILMER, L.L.P.

By: */s/ Patrick Byrne*
Patrick G. Byrne, Esq.
Morgan Petrelli, Esq.
3883 Howard Hughes Parkway, Ste. 1100
Las Vegas, NV 89169

Walter C. Carlson (*Pro Hac Vice*)
Lawrence P. Fogel (*Pro Hac Vice*)
Caroline A. Wong (*Pro Hac Vice* to be filed)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603

*Attorneys for Defendants*

---

[1] The Order was signed on August 7, 2023, and was entered on the docket on August 8, 2023. *See* Docket Entry Text, ECF No. 108 ("Defendants' motion to dismiss the second-amended complaint [84] is GRANTED in part and DENIED in part. . . . Signed by Judge Cristina D. Silva on 8/7/2023. . . . (Entered: 08/08/2023).").

iv

**INTRODUCTION**

Defendants respectfully request that the Court reconsider its August 8, 2023 Order to the extent the Order denied Defendants' Motion to Dismiss the SAC and allowed Plaintiffs' challenge to statements from 2019 and 2020 to survive. Defendants are mindful that motions for reconsideration should be brought only in limited circumstances. However, Defendants respectfully submit that reconsideration is warranted because the Order's holding as to the statements from 2019 and 2020 contravenes clear Ninth Circuit authority regarding scienter and loss causation, including *Metzler Investment GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008).

First, the Order concluded that allegations about the Individual Defendants' "access to information" were sufficient to plead scienter for the challenged statements that were made in 2019 and 2020. Order at 18. Yet under the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), mere access to information is insufficient to show scienter as a matter of law. The Court cited *Metzler* for the proposition that mere access to information is enough. *Id.* But *Metzler* unequivocally held otherwise: mere access is ***not*** enough.

When evaluated under the correct test, the SAC fails to adequately allege scienter. Plaintiffs focus on two sources of information as potential evidence of scienter: the Hogan Lovells investigation and report, and the Wang Xi lawsuit. *See id.* at 17. The Court correctly held that those sources of information are insufficient to show scienter for the challenged statements that were made in 2016, 2017, and 2018. *Id.* at 16-17. Defendants respectfully submit that the Court should reconsider its Order by holding that those sources are likewise insufficient to show scienter for the statements that were made in 2019 and 2020. Plaintiffs have failed to allege with particularity that the Individual Defendants had knowledge of the alleged scheme, and their alleged access to these sources makes no difference.

Second, reconsideration is warranted with regard to loss causation. Defendants' loss causation arguments rely on stock price information in Exhibits 30 and 31 to Defendants' Motion to Dismiss the SAC. The Court declined to take judicial notice of this stock price information—yet *Metzler* and other Ninth Circuit authority hold that such information is judicially noticeable,

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1

and should be considered in evaluating whether a complaint adequately alleges loss causation under the PSLRA. Here, when the stock price information in Exhibits 30 and 31 is properly taken into account, it shows that Plaintiffs have failed to allege loss causation. More specifically, it shows that on each of the alleged corrective disclosure dates, LVS's stock price either (i) increased, (ii) declined but quickly rebounded, or (iii) declined in step with the industry.

For these reasons, Defendants respectfully submit that the Court should reconsider its Order by holding that the SAC fails to state a claim as to the challenged statements in 2019 and 2020, and thus should dismiss the SAC in its entirety. In the alternative, "substantial ground for difference of opinion" as to the standards applicable to scienter and loss causation warrants certification of the Order for an interlocutory appeal under 28 U.S.C. § 1292(b).

## BACKGROUND

**Procedural History.** The original complaint was filed in October 2020 (ECF No. 1), and Plaintiffs filed their amended complaint in March 2021 (ECF No. 36). Defendants moved to dismiss the amended complaint in May 2021, and Judge Navarro granted the motion in its entirety on March 28, 2022. ECF No. 74. Judge Navarro determined that Plaintiffs had not sufficiently alleged any false or misleading statements. *Id.* at 20-21. As a result, Judge Navarro did not reach Defendants' arguments regarding Plaintiffs' failure to adequately plead scienter or loss causation.

Following Judge Navarro's dismissal order, Plaintiffs filed their Second Amended Complaint on April 18, 2022. The SAC is premised on allegations about a "premium player" scheme, in which employees of Marina Bay Sands ("MBS") allegedly engaged in the unauthorized transfer of funds from larger player accounts to smaller player accounts to extend casino credit to these smaller players, when regulations would otherwise make those players ineligible to receive credit. *See, e.g.*, SAC ¶¶ 4-5, 93-102. According to Plaintiffs, Defendants made false or misleading statements relating to this alleged scheme in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.

**Motion to Dismiss the SAC.** Defendants moved to dismiss the SAC in May 2022, arguing that Plaintiffs failed to adequately allege the elements of falsity, materiality, scienter, and

loss causation. *See* ECF No. 84 ("MTD"). Only scienter and loss causation are at issue in the present motion.

With regard to scienter, Defendants argued, among other things, that neither the Hogan Lovells investigation and report nor the Wang Xi allegations support a "strong inference" of scienter. *Id.* at 31-32. The investigation did not uncover any evidence of transfers occurring without patron consent, nor did it link any Individual Defendant to the issues identified in the report. *Id.* Moreover, as reported by articles of which this Court took judicial notice, MBS's investigation concluded that "no patron funds were transferred in a manner that was contrary to a patron's intent." *Id.* at 18 (citing MTD Exs. 18 & 22). As for the Wang Xi lawsuit, Defendants explained that: (i) allegations in Wang Xi's complaint were based solely on conduct from mid-October to mid-December 2015, *before* the alleged class period in this case; (ii) Wang Xi is the only MBS patron who has raised allegations about unauthorized transfers; (iii) Singapore's Casino Regulatory Authority (the "CRA"), MBS's primary regulator, investigated the Wang Xi allegations and concluded that MBS did not breach any regulatory requirements; and (iv) the CRA renewed MBS's casino license before, during, and after the alleged class period. *Id.* at 2, 7, 31-32, 35. Defendants argued that these facts confirmed Plaintiffs' failure to allege scienter. *See id.* at 28.

With regard to loss causation, Defendants attached two exhibits—Exhibits 30 and 31—showing stock price information for LVS and its peers in the industry. ECF Nos. 93-4 & 93-5. Based on this publicly available stock price information, Defendants argued that Plaintiffs could not show loss causation as to any of the corrective disclosure dates alleged in the SAC, because on each date LVS's stock price either increased, declined but quickly rebounded, or declined in step with its peers. MTD at 36-39.

**The Court's Order.** In its Order entered on August 8, 2023, the Court granted in part and denied in part Defendants' Motion to Dismiss the SAC. First, the Order dismissed Plaintiffs' claims to the extent they challenged statements from 2016, 2017, and 2018. Order at 16-17. The Order explained that "for the years 2016 to 2018, there is no information" in the SAC about "precisely *when* or *which* defendants learned about the scheme to render statements false and

3

misleading." *Id.* at 16 (emphases in original). The Order also observed that the Wang Xi lawsuit "offer[s] no additional allegations that would address the knowledge issue" because Wang Xi's complaint "addresses transfers that happened before the alleged class period." *Id.* at 16-17.

Notwithstanding those holdings, the Order determined that the allegations pertaining to statements made in 2019 and 2020 are "different." *Id.* at 17. Citing the Ninth Circuit's decision in *Metzler*, the Order held that Plaintiffs could plead scienter through particularized allegations that the Individual Defendants either "knew the supposedly false statements challenged by the plaintiffs were false or misleading when made," **or** "had access to information establishing that the individual defendants were deliberately reckless in allowing the false statements to be made." *Id.* at 18 (citing *Metzler*, 540 F.3d at 1068). Applying that test, the Court concluded that Plaintiffs had adequately alleged scienter for the challenged statements in 2019 and 2020. In particular, the Court inferred scienter based on the Hogan Lovells investigation and report, and on the same Wang Xi lawsuit that the Court had deemed insufficient for the statements made in 2016, 2017, and 2018. *Id.* at 17-18.

As to loss causation, the Order declined to take judicial notice of the stock price information in Exhibits 30 and 31. *Id.* at 5-6 n.4. Accordingly, the Order did not address Defendants' loss causation arguments, which were based on that information. *See id.* at 18 & n.8.

**LEGAL STANDARD**

This Court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis omitted). Under Local Rule 59-1, a party may seek reconsideration where a court has "overlooked or misunderstood" "points of law or fact," or where the court "committed clear error or the initial decision was manifestly unjust." L.R. 59-1(a); *see also, e.g.*, *Lasko v. Am. Bd. of Internal Med.*, 92 F. Supp. 3d 1013, 1021 (D. Nev. 2015) (granting reconsideration and dismissing amended complaint).

In addition, the Court may certify an interlocutory order for appeal under 28 U.S.C. § 1292(b) if (i) the order involves "a controlling question of law, as to which there is substantial ground for difference of opinion," and (ii) "an immediate appeal from the order may materially

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also, e.g.*, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

**ARGUMENT**

I.      **THE 2019-2020 STATEMENTS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE SCIENTER.**

The Order's denial of Defendants' Motion to Dismiss as to the challenged statements from 2019 and 2020 warrants reconsideration because it relied on an incorrect test for scienter. Under the correct test, the SAC fails to adequately allege scienter as to any of the statements at issue and thus should be dismissed in its entirety.

In articulating its test for scienter, the Order stated that the SAC must set forth particularized facts showing that the Individual Defendants either "[i] knew the supposedly false statements challenged by the plaintiffs were false or misleading when made or [ii] had ***access to information*** establishing that the individual defendants were deliberately reckless in allowing the false statements to be made." Order at 18 (emphasis added) (citing *Metzler*, 540 F.3d at 1068). The second prong of this test was legal error. Although reckless disregard of a statement's falsity may be an adequate basis for scienter, allegations about mere "access to information" are insufficient.

The Ninth Circuit has repeatedly held that allegations of mere access to information do not plead scienter under the PSLRA. *See, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) ("mere access to reports . . . is insufficient to establish a strong inference of scienter"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (rejecting plaintiffs' argument that management's alleged "access to the purportedly manipulated quarterly accounting numbers" could demonstrate scienter); *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (affirming dismissal where plaintiffs argued that defendants' "access to internal data" demonstrated scienter). This well-established principle comports with the PSLRA's requirement that a plaintiff "state with particularity facts giving rise to a *strong inference*" of scienter. 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). It requires a specific, particularized link to each individual defendant's state of mind—such as allegations

5

about "specific information conveyed to management" or "specific contemporaneous statements or conditions" that "demonstrate" scienter. *Metzler*, 540 F.3d at 1066, 1068. If mere "access to information" were sufficient, it would essentially allow plaintiffs to proceed on a theory of constructive knowledge. That is antithetical to the heightened standard that Congress put in place.

Consistent with this rationale and Ninth Circuit authority, district courts routinely dismiss federal securities claims where plaintiffs rely on an "access to information" theory. *See, e.g.*, *Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-4353, 2023 WL 4412164, at *9 (N.D. Cal. July 7, 2023) (rejecting argument that defendants' alleged "access to information" could show scienter); *Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, No. 22-CV-36, 2023 WL 4161355, at *3-4 (D. Ariz. June 23, 2023) (no scienter where allegations did not identify what "specific information was learned, when it was learned, how it was learned, and by who[m]").

The Order cites the Ninth Circuit's decision in *Metzler* for the proposition that "access to information" can be enough to show scienter. Order at 18. But *Metzler* does not support that proposition. *Metzler* instead **confirms** that allegations about mere access to information are insufficient. In *Metzler*, the plaintiffs argued that scienter could be inferred from the existence of a "complex computer tracking-system" to which the defendants had access. *Id.* at 1068. The Ninth Circuit rejected that argument, and reiterated the well-established principle that such access does not satisfy "the PSLRA's exacting requirements" for scienter. *Id.* at 1068, 1072.

As *Metzler* and other controlling authority have held, the correct test for scienter is that the SAC must set forth particularized facts that raise a "strong inference" that the Individual Defendants (i) knew the challenged statements were false or misleading when made, or (ii) acted with "a degree of recklessness that strongly suggests actual intent" to make false or misleading statements. *Id.* at 1066; *accord Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021).[2] Moreover, a strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of

---

[2] Although it pre-dates enactment of the PSLRA, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990) (cited in Order at 18), is also consistent with this test.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007); *Metzler*, 540 F.3d at 1066.

The SAC fails to meet that test. More specifically, as the Court noted (*see* Order at 17), Plaintiffs offer only two sources of information as potential evidence of scienter for the challenged statements made in 2019 and 2020: the Hogan Lovells investigation and report, and the Wang Xi lawsuit. Whether considered separately or in combination, neither supports a strong inference that any Individual Defendants acted with intentional knowledge or deliberate recklessness as to the alleged falsity of the challenged statements in 2019 and 2020.

*First*, the Hogan Lovells investigation and report do not establish scienter. According to the SAC, MBS retained Hogan Lovells to conduct a review of third-party transfers made by MBS patrons from 2013 to 2017. SAC ¶¶ 104, 139. There are no allegations suggesting that the investigation or report was linked to any Individual Defendant. *See, e.g.*, *Intuitive Surgical*, 759 F.3d at 1063 (dismissing claims for failure to allege scienter because "allegations linking specific reports and their contents to the executives" were "missing"); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 949 (D. Ariz. 2007) (no scienter where complaint "has no factual allegations linking" internal investigation to any individual defendants). Moreover, as this Court correctly observed, Plaintiffs do not allege "precisely *when* or *which* defendants learned about" the investigation and report, or about the supposed scheme. Order at 16 (emphases in original). Instead, the SAC leaves it "unclear when the defendants discovered the scheme that could have potentially rendered the statements false or misleading." *Id.* For these reasons, the Court held that the allegations about the investigation and report are insufficient to show scienter as to the challenged statements from 2016 to 2018. *Id.* The Court should reach the same conclusion, for the same reasons, as to the challenged statements from 2019 and 2020.

Moreover, even if Plaintiffs could allege particularized facts showing whether, when, and which Individual Defendants actually learned about the investigation and report, such allegations would still be insufficient to show scienter. Knowledge of an investigation does not equate to knowledge of an unauthorized transfer scheme. *See, e.g.*, *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 418 n.3 (9th Cir. 2020) (no "strong inference of scienter" based on existence of

investigation); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1084 n.220 (C.D. Cal. 2012) (allegations that a company is "currently being investigated" do "not support an inference" of scienter). Indeed, MBS's investigation concluded that "no patron funds were transferred in a manner that was contrary to a patron's intent." ECF No. 92-8 (MTD Ex. 18); *see also* ECF No. 92-12 (MTD Ex. 22).[3]

*Second*, the filing of the Wang Xi lawsuit also does not show scienter. As noted in the Order, the Wang Xi lawsuit only addresses transfers for a single patron made between October and December 2015—*i.e.*, "transfers that happened ***before*** the alleged class period." Order at 17 (emphasis added) (citing SAC ¶ 134). For that reason, the Order held that the Wang Xi lawsuit is irrelevant to scienter for the challenged statements from 2016 to 2018. *Id.* The same rationale applies just as forcefully to the challenged statements from 2019 and 2020, as those statements occurred ***nearly five years*** after the transfers at issue in the Wang Xi lawsuit. *See id.*

The Wang Xi lawsuit also fails to show scienter for an additional reason: knowledge of a single lawsuit claiming unauthorized transfers from a single patron's account, during a single two-month period, does not support a strong inference of knowledge of a pervasive scheme. *See, e.g.*, *Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1053 (N.D. Cal. 2020) ("one-off allegations" do not support the inference that a challenged practice is "widespread"); *Welgus v. TriNet Grp., Inc.*, No. 15-cv-3625, 2017 WL 6466264, at *24 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) (same). That is especially true here because the CRA investigated Wang Xi's claim of USD$6.1 million, and concluded that MBS did not breach any regulatory requirements. SAC ¶¶ 133, 260, 286; *see also In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248-49 (8th Cir. 2008) (no inference of scienter where SEC investigation did not find fraud). Furthermore, in the nearly four years since Wang Xi filed his claim in 2019, no other patron has alleged unauthorized transfers, and no regulatory body has taken any action against MBS, much less found any transfers to have been unauthorized.

In sum, Plaintiffs have not pled a strong inference of scienter that is cogent or at least as compelling as any nonfraudulent inference. *Tellabs*, 551 U.S. at 314. There is not a single

---

[3] The Court took judicial notice of both Exhibit 18 and Exhibit 22. *See* Order at 5-6 n.4.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

allegation regarding what facts were known by any of the Individual Defendants at the time the challenged statements were made, and Plaintiffs' allegations regarding "access to information" are insufficient as a matter of law. When considering the competing inferences rationally drawn from the facts alleged—including that Wang Xi is the only patron alleged to have claimed unauthorized transfers, the CRA's findings that MBS did not breach any requirements related to Wang Xi's claims, and MBS's conclusion that no transfers were made without a patron's consent—the nonfraudulent inference is by far the most plausible one. Plaintiffs' desired inference is also undermined by their allegation that the purported unauthorized transfers were remedied in 2018, SAC ¶ 113; it is not plausible that the Individual Defendants would learn of the alleged scheme at some unidentified point in 2019 after it had been remedied, yet continue to mislead the market for another two years. Accordingly, when all reasonable inferences are considered, whether individually or holistically, they show that the SAC fails to raise a strong inference of scienter as to the statements not only from 2016 to 2018 (as the Court already held), but also from 2019 and 2020.

## II.      THE 2019-2020 STATEMENTS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE LOSS CAUSATION, TAKING INTO ACCOUNT JUDICIALLY NOTICEABLE STOCK PRICE INFORMATION.

The Order also warrants reconsideration because it made an error of law in declining to take judicial notice of publicly available information regarding LVS's stock price. When viewed in light of that stock price information, the SAC fails to adequately allege loss causation for any of the challenged statements.

**Judicial Notice.** Defendants' Motion to Dismiss attached two exhibits with stock price information:

- Exhibit 30, which is a chart showing the price of LVS's stock; and

- Exhibit 31, which is a chart comparing the prices of LVS's stock and peer companies' stock.

Both charts consist solely of publicly available information, and Plaintiffs did not dispute the accuracy or authenticity of this information. *See* ECF No. 94 at 6, 8. The Court, however,

concluded that it could not take judicial notice of either exhibit. Order at 5-6 n.4. Defendants respectfully submit that this was an error of law.

In *Metzler*, the Ninth Circuit held that it was proper for a court to take judicial notice of historical stock price information because it is public information and not subject to reasonable dispute. 540 F.3d at 1064 n.7. Subsequent Ninth Circuit and district court authority confirms that such information is judicially noticeable. *See, e.g.*, *Cai v. Switch, Inc.*, No. 2:18-CV-1471, 2020 WL 3893246, at *2 (D. Nev. July 10, 2020) (quoting *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017)) ("A public company's historical stock prices are judicially noticeable, because they 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'").

Here, the stock price information is also judicially noticeable for an additional, independent reason: it is incorporated by reference into the SAC. The SAC refers multiple times to the price of LVS's stock. *See* SAC ¶¶ 335, 338, 340-43, 347. In fact, Plaintiffs **conceded** that this information, which is shown in Exhibit 30, is incorporated by reference because it is "cited in and/or relied on in the SAC." ECF No. 94 at 8. The stock price information for LVS's peers, which is shown in Exhibit 31, is likewise incorporated by reference. The SAC refers to this information multiple times too, and relies on it for Plaintiffs' loss causation allegations. *See* SAC ¶¶ 337, 339, 341. Because the SAC has put the stock price performance of LVS's peers "at issue," the Court may take judicial notice of it. *See, e.g.*, *Lloyd v. CVB Fin. Corp.*, No. 10-cv-6256, 2012 WL 12883522, at *13 (C.D. Cal. Jan. 12, 2012) (considering comparative stock price information where plaintiffs placed it at issue).

**Loss Causation.** Defendants respectfully submit that, when the stock price information in Exhibits 30 and 31 is taken into account, the Order should be reconsidered because the SAC fails to allege loss causation for any of the challenged statements.

The theory behind loss causation is that when a company makes false or misleading public statements, its stock price becomes artificially inflated because investors have been led to believe that the stock is worth more than it actually is. Then, when the truth that was concealed by the allegedly false or misleading statements is disclosed to the public (through what is known as a

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

"corrective disclosure"), the stock price drops. The drop reflects the market's correction to the stock price in light of the new, negative information that was disclosed. *See, e.g.*, *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (explaining loss causation).

Here, the SAC claims there were eight corrective disclosures—*i.e.*, eight dates when information about the "truth" became available to the public and caused LVS's stock price to decline. *See* SAC ¶¶ 338-43; *see also* ECF No. 84 at 36 (listing the dates of the alleged corrective disclosures). However, the stock price information in Exhibits 30 and 31 shows that none of these alleged corrective disclosure dates can support loss causation.

First, LVS's stock price ***increased*** on four of the alleged corrective disclosure dates. *See* ECF No. 84 at 37 (detailing stock price increases on 10/10/19, 6/4/20, 6/5/20 and 6/7/20); *see also* ECF No. 93-4 (MTD Ex. 30).[4] As a matter of law, Plaintiffs cannot show losses for dates when the stock price increased. *See, e.g.*, *Metzler*, 540 F.3d at 1062 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)) ("[T]he complaint must allege that the defendant's 'share price fell significantly after the truth became known.'").

Second, on three other alleged corrective disclosure dates, the price declines were small—and the price fully recovered within a few days. *See* ECF No. 84 at 37-38 (detailing stock price declines for 9/26/19, 5/12/20, and 7/19/20, along with the price rebounds after each date); *see also* ECF No. 93-4 (MTD Ex. 30). Plaintiffs therefore cannot show loss causation as a matter of law for these dates either. *See, e.g.*, *Metzler*, 540 F.3d at 1065 (holding that plaintiffs failed to allege loss causation where the "stock quickly recovered from the 10% drop" within several days); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021) (same, where there was a "quick and sustained price recovery" after a "modest" drop); *Di Donato v. Insys Therapeutics Inc.*, No. 16-CV-302, 2017 WL 3268797, at *18-19 (D. Ariz. Aug. 1, 2017) (same, where the "stock price dropped . . . but then rebounded" within several days).

---

[4] In addition, in their opposition to the Motion to Dismiss, Plaintiffs conceded that there was no corrective disclosure on October 10, 2019. *See* ECF No. 95 at 36 n.14.

11

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Finally, Plaintiffs cannot show loss causation for the remaining alleged corrective disclosure date, September 16, 2020. On that date, LVS's stock price declined in tandem with the stock price of its peers in the gaming industry. *See* ECF No. 84 at 38 (comparing LVS's stock price to industry stock prices on 9/26/20); *see also* ECF No. 93-5 (MTD Ex. 31). The SAC must allege loss causation with particularity, *see Irving*, 998 F.3d at 407, including by alleging specific facts to support an inference that a stock price decline was "proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (citing *Metzler*, 540 F.3d at 1062). The SAC fails to meet this requirement because it does not explain why the stock price decline on this date reflected anything other than general "market conditions" and other "unrelated factors" affecting the industry as a whole.

More broadly, Plaintiffs' SAC failed to address the obvious reason for the movements in stock price across the gaming industry during the period of the alleged corrective disclosures: these movements occurred in the context of the unprecedented COVID-19 pandemic, as the articles referenced in the SAC discuss. *See* ECF No. 84 at 39 (citing MTD Exs. 19 & 21).[5] LVS and its peers all experienced the same adverse global changes, as illustrated in the following chart.[6]



Price History: September 25, 2019 to September 21, 2020

_____

[5] The Court took judicial notice of Exhibits 19 and 21. *See* Order at 5-6 n.4.

[6] Data in the chart is obtained from https://finance.yahoo.com and marketwatch.com/investing. The stock prices are set forth in Exhibit 31.

Accordingly, it is not sufficient to merely claim, as Plaintiffs do, that the revelation of the alleged scheme, the Hogan Lovells investigation, and the Wang Xi lawsuit "caused the LVS stock to fall almost $10.00 per share." Order at 11 (citing SAC ¶¶ 258-59, 263, 265). "So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud. . . . Loss causation requires more." *Metzler*, 540 F.3d at 1064.

To summarize, the following table lists the eight corrective disclosures alleged in the SAC, along with the above-discussed reasons why the stock price information in Exhibits 30 and 31 demonstrates that Plaintiffs cannot prove loss causation as to any of them:

| Alleged Corrective Disclosure | SAC | LVS's Stock Price Activity | Source |
|---|---|---|---|
| 10/10/19 | ¶ 339 | Increased from $54.17 to $54.79 | MTD Ex. 30 |
| 6/4/20 | ¶ 341 | Increased from $51.79 to $52.35 | MTD Ex. 30 |
| 6/5/20 | ¶ 341 | Increased from $52.35 to $52.97 | MTD Ex. 30 |
| 6/7/20 | ¶ 341 | Increased from $52.97 to $55.64 | MTD Ex. 30 |
| 9/26/19 | ¶ 338 | Fully recovered by 9/27/19 | MTD Ex. 30 |
| 5/12/20 | ¶ 340 | Fully recovered by 5/18/20 | MTD Ex. 30 |
| 7/19/20 | ¶ 342 | Fully recovered by 7/21/20 | MTD Ex. 30 |
| 9/16/20 | ¶ 343 | Declined in tandem with industry peers | MTD Ex. 31 |

It bears repeating: Plaintiffs do not dispute the accuracy of any of this stock price information. *See, e.g.*, ECF No. 94 at 6, 8. Defendants therefore respectfully submit that the Court should reconsider its decision with regard to judicial notice of the stock price information and, upon taking this information into account, dismiss the SAC in its entirety for failure to allege loss causation.

## III.    ALTERNATIVELY, THE ORDER SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL.

If the Court does not grant reconsideration, Defendants respectfully request that it certify the Order for an interlocutory appeal, so that the Ninth Circuit can resolve—before this case proceeds to expensive and time-consuming discovery—"controlling question[s] of law" on which

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

there is a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). In particular, the Order implicates two case-dispositive questions: (i) whether allegations about the Individual Defendants' "access to information" from the Hogan Lovells investigation and the Wang Xi lawsuit are sufficient to show scienter under the PSLRA, and (ii) whether the stock price information in Exhibits 30 and 31 is judicially noticeable and warrants dismissal for failure to allege loss causation.

For the reasons set forth above, Defendants respectfully submit that the Ninth Circuit's decision in *Metzler* and other controlling authorities squarely hold that the answer to the first question is "no." Similarly, for the reasons set forth above, Defendants respectfully submit that the Ninth Circuit's decisions in *Metzler* and *Wochos* squarely hold that the answer to the second question is "yes."

To the extent the Court disagrees, however, those authorities at a minimum create a substantial ground for difference of opinion. And resolution of these questions would materially advance the litigation by potentially requiring dismissal of all remaining claims against the Defendants. *See, e.g.*, *Reese*, 643 F.3d at 688 (§ 1292(b) criteria were satisfied in Section 10(b) case because reversal on appeal would result in dismissal of claims); *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) (vacating and remanding on interlocutory appeal of decision denying in part a motion to dismiss Section 10(b) claims because the district court applied the incorrect test for scienter).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court reconsider the Order and dismiss the SAC in its entirety. In the alternative, Defendants request that the Court certify the Order for interlocutory appeal.

/ / /

/ / /

/ / /

/ / /

/ / /

14

Dated: August 22, 2023

SNELL & WILMER, L.L.P.

By: */s/ Patrick Byrne*
    Patrick G. Byrne, Esq.
    Morgan Petrelli, Esq.
    3883 Howard Hughes Parkway, Ste. 1100
    Las Vegas, NV 89169

    Walter C. Carlson (*Pro Hac Vice*)
    Lawrence P. Fogel (*Pro Hac Vice*)
    Caroline A. Wong (*Pro Hac Vice* to be filed)
    SIDLEY AUSTIN LLP
    One South Dearborn Street
    Chicago, IL 60603

    *Attorneys for Defendants*

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

15

**CERTIFICATE OF SERVICE**

On August 22, 2023, I served the foregoing document on all parties appearing in this case when filing said document through the court's PACER system with automatic e-service on all persons who have registered for e-service on PACER for this case.


/s/ Debbie Shuta
An employee of Snell & Wilmer LLP

4895-4517-4138

16