John P. Aldrich, Esq.
NV Bar No. 6877
**Aldrich Law Firm, Ltd.**
7866 West Sahara Ave.
Las Vegas, NV 89117
Tel: (702) 853-5490

Shannon L. Hopkins (*Pro Hac Vice*)
Gregory M. Potrepka (To Be Admitted *Pro Hac Vice*)
David C. Jaynes (To Be Admitted *Pro Hac Vice*)
**Levi & Korsinsky, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE DANIELS FAMILY 2001 REVOCABLE TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LAS VEGAS SANDS CORP., SHELDON G. ADELSON, and PATRICK DUMONT, <br><br> Defendants. | Case No. 2:20-cv-01958-CDS-EJY <br><br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION** |

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................................1

II.     BACKGROUND .................................................................................................................2

        A.      Procedural History .................................................................................................2

        B.      Factual Allegations in the Second Amended Complaint .......................................2

        C.      The Motion to Dismiss Order ................................................................................3

        D.      Defendants' Motion for Reconsideration................................................................4

III.    ARGUMENT .....................................................................................................................6

        A.      Motions for Reconsideration Are an "Extraordinary Remedy" and Highly
                "Disfavored" ...........................................................................................................6

        B.      Defendants' Motion Lacks Any Basis for Reconsideration ...........................................7

                1.      The Court Applied the Correct Scienter Standard and Properly Found
                        Plaintiffs Adequately Alleged a Strong Inference of Scienter............................7

                2.      The Court Properly Found Plaintiffs Adequately Alleged Loss Causation........12

        C.      Defendants' Motion for an Order Certifying an Interlocutory Appeal Should Be
                Denied ......................................................................................................................14

                1.      Standard of Review..................................................................................................14

                2.      Defendants' Motion for Certification for Appeal Should Be Denied
                        Because Defendants Fail to Identify Any Controlling Question of Law............14

                3.      Defendants' Motion Should Be Denied Because It Does Not Present
                        Novel Legal Issues.................................................................................................16

                4.      Defendants' Motion Should Be Denied Because It Will Not Shorten the
                        Time, Effort, or Expense of the District Court Proceedings..............................17

IV.     CONCLUSION..................................................................................................................18

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

# TABLE OF AUTHORITIES

**Cases**

*389 Orange St. Partners v. Arnold,*
179 F.3d 656 (9th Cir. 1999) ............................................................................................... 6

*Carroll v. Nakatani,*
342 F.3d 934 (9th Cir. 2003) ............................................................................................... 6

*Coopers & Lybrand v. Livesay,*
437 U.S. 463 (1978)............................................................................................................ 14

*Couch v. Telescope Inc.,*
611 F.3d 629 (9th Cir. 2010) ............................................................................................. 16

*Daniels Fam. 2001 Revocable Tr. v. Las Vegas Sands Corp.,*
2023 WL 5052738 (D. Nev. Aug. 7, 2023) ................................................................. 6, 13

*EC v. Glob. Express Capital Real Estate Inv. Fund, I, LLC,*
289 F. App'x 183 (9th Cir. 2008) ........................................................................................ 7

*Gruber v. Gilbertson,*
2018 U.S. Dist. LEXIS 45677, at *40 (S.D.N.Y. Mar. 20, 2018) ...................................... 8

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union,*
22 F.4th 1125 (9th Cir. 2022) ................................................................................. 14, 16, 17

*In re Cement Antitrust Litig. (MDL No. 296),*
673 F.2d 1020 (9th Cir. 1981) ................................................................................... 14, 17

*In re Conn's, Inc.,*
No., 4:14-cv-548(KPE) (S.D. Tex. 2016)........................................................................... 16

*In re Gilead Sci. Sec. Litig.,*
536 F.3d 1049 (9th Cir. 2008) ........................................................................................... 13

*In re Zynga Inc. Sec. Litig.,*
2015 U.S. Dist. LEXIS 38722 (N.D. Cal. Mar. 25, 2015)................................................. 13

*Inchen Huang v. Higgins,*
443 F. Supp. 3d 1031 (N.D. Cal. 2020) ............................................................................. 10

*Khoja v. Orexigen Therapeutics, Inc.,*
899 F.3d 988 (9th Cir. 2018) ............................................................................................. 12

*Kona Enterprises, Inc. v. Est. of Bishop,*
229 F.3d 877 (9th Cir. 2000) ............................................................................................... 6

*Kwasniewski v. Sanofi-Aventis U.S., LLC,*
2013 WL 2443834 (D. Nev. June 4, 2013)........................................................................... 6

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) ............................................................................................. 12

*Lloyd v. CVB Financial Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ............................................................................................ 13

*Mehta v. Victoria Partners*,
    2023 WL 1782356 (D. Nev. Feb. 6, 2023) ............................................................................ 6

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .................................................................................... passim

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
    881 F.3d 750 (9th Cir. 2018) ............................................................................................. 13

*Monroe County Emples. Ret. Sys. v. Southern Co.*,
    2018 WL 3814304 (N.D. Ga. 2018) ................................................................................... 16

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
    2017 U.S. Dist. LEXIS 205572, at *27 (E.D. Mich. Dec. 14, 2017) .................................... 8

*Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First
    Solar Inc.*,
    2023 WL 4161355 (D. Ariz. June 23, 2023) ...................................................................... 12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical*,
    759 F.3d 1051 (9th Cir. 2014) ............................................................................................. 9

*Ramirez v. Exxon Mobil Corporation*,
    No. 3:16-cv-3111-K (N.D. Tex. 2018) ............................................................................... 16

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ....................................................................................... 15, 16

*Reno v. W. Cab Co.*,
    2020 WL 2462900 (D. Nev. May 1, 2020) ..................................................................... 6, 14

*Roadhouse v. Las Vegas Metro. Police Dep't*,
    2013 WL 3297164 (D. Nev. June 28, 2013) ......................................................................... 6

*Safeco Ins. Co. of Am. v. Air Vent, Inc.*,
    2023 U.S. Dist. LEXIS 40238 (D. Nev. Jan. 25, 2023) .......................................... 14, 15, 16

*Smith v. Nevada Dep't of Corr.*,
    2023 WL 2870233 (D. Nev. Apr. 10, 2023) ......................................................................... 6

*Sneed v. AcelRx Pharms., Inc.*,
    2023 WL 4412164 (N.D. Cal. July 7, 2023) ....................................................................... 11

*Thomas Weisel Ptnrs. LLC v. BNP Paribas*,
    2009 U.S. Dist. LEXIS 592 (N.D. Cal. Jan. 5, 2009) ......................................................... 15

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007) ................................................................................... 9

*Welgus v. TriNet Grp.*, Inc.,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) .................................................................... 10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

*Williams v. Alameda Cty.*,
   2023 U.S. Dist. LEXIS 31528 (N.D. Cal. Feb. 24, 2023) .......................................................... 17

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .................................................................................................... 17

**<u>Statutes</u>**

28 U.S.C. § 1292(b) ..................................................................................................................... passim

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

Lead Plaintiffs Carl S. Ciaccio and Donald M. DeSalvo ("Plaintiffs"), by and through their counsel, respectfully submit this Opposition to Defendants' Motion for Partial Reconsideration, Or For An Order Certifying An Interlocutory Appeal ("Motion"), ECF 109, which moves for reconsideration of the Court's August 7, 2023 Order, ECF 108 (the "Order")[1] granting in part and denying in part Defendants' Motion to Dismiss the Second Amended Complaint, ECF 77 (the "SAC").

## I.    INTRODUCTION

After full briefing of Defendants' Motion to Dismiss and careful consideration of the parties' arguments, the Court issued a detailed 19-page Order that denied, in part, Defendants' Motion to Dismiss. In its Order, the Court found Plaintiffs stated a claim for Defendants' alleged false statements made in 2019 and 2020. Disagreeing with the Court's analysis that the SAC pleaded facts demonstrating Defendants' "knowledge" of the unauthorized transfer scheme and internal control weaknesses occurring at MBS in 2019 and 2020, Defendants misstate the Court's Order to manufacture (insufficient) grounds for reconsideration.

Motions for reconsideration are an "extraordinary remedy" and should "not be granted, absent highly unusual circumstances." Such motions are "highly disfavored" and should not be used to re-argue issues presented in previous filings. Yet that is precisely what Defendants do here—reargue the identical issues raised in their motion to dismiss, which this Court has already carefully considered and properly decided. Defendants' attempted "do-over" disguised as a purported error of law should be denied.

Indeed, Defendants' entire Motion rests on a blatant misstatement of this Court's Order. Defendants accuse the Court of holding that "mere access to information is enough" to allege scienter. But the Court held no such thing. Rather, the Court found a strong inference of scienter based on Defendants' "***knowledge***" of the unauthorized transfer scheme. Order at 18 ("For 2019 and 2020, the SAC sufficiently alleges that defendants ***knew*** of the transfer scheme and deficiencies in its internal controls.") (emphasis added). The Court also supported its findings with detailed evidence from the SAC, finding "[Defendants] ***knowledge*** is evidenced by their own internal investigation and subsequent report and the Xi lawsuit. By 2019, LVS was aware of the Xi lawsuit[.]" *Id.*

---

[1] *Daniels Family 2001 Revocable Tr. v. Las Vegas Sands Corp.*, No. 2:20-cv-01958-CDS-EJY, 2023 U.S. Dist. LEXIS 137734 (D. Nev. Aug. 7, 2023).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

Defendants also mischaracterize the Court's Order by claiming the Court misstated Ninth Circuit law. Defendants are wrong and, ironically, misstate the law in so arguing. The Ninth Circuit held in *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("*Metzler*") that a plaintiff properly alleges scienter where the plaintiff pleads particularized facts revealing that the individual defendants knew the supposedly false statements challenged by the plaintiffs were false or misleading when made or had access to information establishing that the individual defendants were deliberately reckless in allowing the false statements to be made. Here, the plaint language of the Order shows the Court found scienter based on Defendants' "knowledge." Defendants do not dispute that knowledge is sufficient to allege scienter. Thus, there is no misstatement or misapplication of the law.

Defendants' request for interlocutory review under Rule 1292(b) should also be denied because there is no controlling question of law, as Defendants concede, and an immediate resolution of that question would not materially advance the ultimate termination of the litigation.

For these reasons, discussed further below, Plaintiffs respectfully submit Defendants' motion should be denied in its entirety and Plaintiffs permitted to proceed into discovery.

## II.    BACKGROUND

### A.    Procedural History

Plaintiffs filed the operative Second Amended Complaint ("SAC"). ECF 77. On May 18, 2022, Defendants filed a Motion to Dismiss the Second Amended Complaint ("MTD"). ECF 84. On August 7, 2023, after the MTD was fully briefed, and after Defendants and Plaintiffs moved for leave to file supplemental authority, the Court issued the Order Denying Motion for Reconsideration, Granting in Part the Motion to Dismiss the Second Amended Complaint, and Granting Leave to File Supplemental Authority (the "Order"). ECF 108. Defendants now move to reconsider the Court's well-reasoned Order, or in the alternative, to certify of the Order for interlocutory appeal. *See* ECF 109 (the "Motion").

### B.    Factual Allegations in the Second Amended Complaint

The SAC alleges that, throughout the Class Period, Defendants falsely represented that LVS only extended credit to patrons who pass a background check, have sufficient financial resources and meet LVS's creditworthiness standards (the "Credit Misstatements") and that LVS's SEC filings did "not contain any untrue statement of material fact" and disclosed any "deficiencies and material weaknesses

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

in the design or operation of internal control over financial reporting…" (the "SOX Certification Misstatements"). *E.g.*, ¶¶182, 188, 192, 197, 204, 208, 213, 220, 224, 229, 233, 238, 242.[2] These statements were false because, in violation of LVS's own internal policies and standards, Defendants were engaging in an undisclosed scheme whereby employees secretly transferred funds from wealthy patron accounts to the accounts of other patrons who did not otherwise quality for credit, in order to qualify more patrons for credit and increase gambling revenues (the "Unauthorized Transfer Scheme"). ¶¶57-123.

The SAC alleges Defendants' knowledge of the Unauthorized Transfer Scheme through, *inter alia*: (i) a lawsuit filed in 2019 by a wealthy patron, Wang Xi, accusing LVS of improperly transferring his money to other patron accounts without authorization, settled in full in September 2020; (ii) the results of an internal investigation, which became public on September 16, 2020, in which Hogan Lovells concluded that 26% of transfers reviewed, accounting for more than SGD$1.4 billion in customer-to-customer transfers between 2013 and 2017, bore signatures that appeared similar and likely photocopied duplicates facilitating unauthorized transfers; (iii) reports from former employees confirming the scheme; and (iv) numerous other investigations into the scheme, including one in mid-2020 in which Defendants hired the law firm Davinder Singh to investigate unauthorized transfers, as well as ongoing investigations by the DOJ and Singapore police into the same. ¶¶133-141, 255-334.

The SAC further alleges that when the truth began to emerge through a series of news articles that called into question LVS' internal controls over financial reporting and compliance with internal underwriting standards, LVS' stock price plummeted in response to that news. *E.g.*, ¶¶258-265; Order at 11 ("The Trust alleges that the revelation of the scheme, the internal investigations into it, and the Xi lawsuit caused the LVS stock to fall almost $10.00 per share.").

## C. <u>The Motion to Dismiss Order</u>

On August 7, 2023, in a 19-page order, the Court carefully analyzed and considered the merits of Defendants' Motion to Dismiss. ECF 108. In its order, the Court held that Plaintiffs adequately alleged the Unauthorized Transfer Scheme, finding "LVS's internal investigation reveal[ed] the scope and

---

[2] All references to "¶__" are to Plaintiffs' Second Amended Complaint. ECF No. 77.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

duration of the transfers alone supports this finding." Order at 14. The Court dismissed Plaintiffs' claims with respect to alleged false statements made during 2016, 2017, and 2018, explaining: "[b]ased on a plain reading of the SAC for the years 2016 to 2018, there is no information about precisely *when* or *which* defendants learned about the schemed to render the statements false and misleading." Order at 16. However, the Court denied Defendants' Motion to Dismiss with respect to the alleged false statements made in 2019 and 2020, stating, in relevant part:

> **But the allegations pertaining to 2019 and 2020 are different**. The SAC alleges that **by then, defendants, in fact, knew about the scheme; their knowledge is evidenced by their own internal investigation and subsequent report and the Xi lawsuit**. By 2019, LVS was aware of the Xi lawsuit and its disclosure accompanied a decline in LVS's stock price. Id. at ¶ 247. And by 2020, there were news reports regarding the Xi lawsuit and the transfer scheme, which resulted in another drop in the LVS stock price. See generally id. at ¶¶ 249–65.
>
> * * *
>
> **For 2019 and 2020**, the SAC sufficiently alleges that **defendants knew of the transfer scheme and the deficiencies in its internal controls**. And by 2020, the SAC alleges that they knew that those issues emerged when the stock price dropped. **These allegations are enough to establish falsity, scienter, and loss causation.**

Order at 17-18 (emphasis added).

The Order also considered whether the multitude of documents attached to the MTD could be judicially noticed. Order at 5, fn. 4. The Court considered the circumstances under which judicial notice of evidence outside the pleadings is proper on a 12(b)(6) motion and found that Defendants' Exhibits 30 and 31 could not be judicially noticed because they "did not qualify under any exception[.]" *Id*. at 6, fn. 4.

In short, the Order held, after a thorough review of the record, that Plaintiffs adequately allege the Unauthorized Transfer Scheme, that Defendants made materially false and misleading statements during the years 2019 and 2020 with actual knowledge of the scheme and deficiencies in internal controls that rendered those statements false, and that LVS' stock price dropped when the truth emerged. Order at 16-18.

### D.  Defendants' Motion for Reconsideration

On August 22, 2023, Defendants filed the instant Motion asking this Court to partially reconsider its August 7, 2023 Order insofar as it denied Defendants' Motion to Dismiss Plaintiffs' claims relating

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

to alleged false statements made during 2019 and 2020 or, in the alternative, to enter an order certifying an interlocutory appeal. ECF 109. Defendants' Motion fails to identify any newly discovered evidence, misapplication of the law or change in applicable law. Instead, Defendants argue that reconsideration is warranted on the theory that this Court's legal acumen is lacking, identifying two points in the Order that the Court supposedly misunderstood and misapplied the law.

First, Defendants argue that the Court "relied on an incorrect test for scienter."  Motion at 5. But to make this argument, Defendants *misrepresent* that the Court relied on a "mere access" standard and *ignore* the plain text of the Court's Order finding that Defendants' had "actual knowledge" of the scheme and internal control weaknesses. *Compare* Order at 17-18 ("The SAC alleges that by then, defendants, in fact, knew about the scheme; their knowledge is evidenced by their own internal investigation and subsequent report and the Xi lawsuit. […] For 2019 and 2020, the SAC sufficiently alleges that defendants knew of the transfer scheme and the deficiencies in its internal controls.") *with* Motion at 1 (asserting "the Order concluded that allegations about the Individual Defendants' 'access to information' were sufficient to plead scienter"). While Defendants claim their basis for bringing the Motion is to correct the Court's mistake of law, it is apparent from their arguments that their real reason for bringing the Motion is to get a second bite at the apple and reargue the issued raised in Defendants' MTD briefing.

Second, Defendants argue that this Court "made an error of law in declining to take judicial notice of publicly available information regarding LVS's stock price." Motion at 9. But Defendants' exhibits seek judicial notice of far more than LVS's stock price. It seeks judicial notice of other companies' stock prices. The Motion fails to specifically identify the Court's legal error and instead merely provides cases with distinct facts wherein courts have judicially noticed historical stock prices. Motion at 10. Moreover, the authority Defendants rely on is dicta in a footnote that explains that the historical price information was judicially noticed only after it was ***unopposed***. Motion at 10 (citing *Metzler*, 540 F.3d at 1064, n.7).

Defendants further argue that if the Court had judicially noticed Exhibits 30 and 31—exhibits containing Defendants' made-for-litigation stock charts depicting, among other things, Defendants' incorrect interpretation of the relationship between multiple companies' stock prices who are mentioned nowhere in the SAC—that the SAC would fail to allege loss causation. Motion at 10 ("Defendants

5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

respectfully submit that, when the stock price information in Exhibits 30 and 31 is taken into account, the Order should be reconsidered because the SAC fails to allege loss causation….").

Defendants' Motion is an improper attempt to reargue their MTD and should be denied.

## III. ARGUMENT

### A. Motions for Reconsideration Are an "Extraordinary Remedy" and Highly "Disfavored"

A motion for reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *Kona Enterprises, Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Such motions are highly "disfavored." *See* Local R. 59-1; FRCP 59(e). *See also Daniels Fam. 2001 Revocable Tr. v. Las Vegas Sands Corp.*, 2023 WL 5052738, at *1 (D. Nev. Aug. 7, 2023) (Silva, J.) (numeration added); *Mehta v. Victoria Partners*, 2023 WL 1782356, at *2 (D. Nev. Feb. 6, 2023) (Silva, J.) ("Motions for reconsideration are "highly disfavored,"…and "should not be granted, absent highly unusual circumstances."); *Smith v. Nevada Dep't of Corr.*, 2023 WL 2870233, at *2 (D. Nev. Apr. 10, 2023) (Silva, J.).

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Las Vegas Sands*, 2023 WL 5052738, at *1 (*quoting 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Moreover, "a motion for reconsideration is not a mechanism for re-arguing issues presented in the original filings or advancing theories of the case that could have been presented earlier." *Kwasniewski v. Sanofi-Aventis U.S., LLC*, 2013 WL 2443834, at *2 (D. Nev. June 4, 2013) (citation omitted). Nor are motions for reconsideration intended "to give an unhappy litigant one additional chance to sway the judge." *Id.* (citations omitted); *Reno v. W. Cab Co.*, 2020 WL 2462900, at *3 (D. Nev. May 1, 2020) ("motions for reconsideration are not vehicles for raising arguments that should have been presented in the underlying motion practice"). In other words, "this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Roadhouse v. Las Vegas Metro. Police Dep't*, 2013 WL 3297164, at *2 (D. Nev. June 28, 2013) (citation omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

**B. Defendants' Motion Lacks Any Basis for Reconsideration**

**1. The Court Applied the Correct Scienter Standard and Properly Found Plaintiffs Adequately Alleged a Strong Inference of Scienter**

This Court correctly held that, in the Ninth Circuit, a plaintiff properly alleges scienter where the plaintiff pleads "particularized facts revealing that the individual defendants knew the supposedly false statements challenged by the plaintiffs were false or misleading when made or had access to information establishing that the individual defendants were deliberately reckless in allowing the false statements to be made." Order at 18 (citing *Metzler* at 1068). *See also EC v. Glob. Express Capital Real Estate Inv. Fund, I, LLC*, 289 F. App'x 183, 187 (9th Cir. 2008). In applying the Ninth Circuit scienter standard, the Court conducted a careful and detailed analysis of Plaintiffs' allegations and properly found that the SAC adequately alleged scienter for misstatements made in 2019 and 2020. Order at 17-18.

In finding the SAC adequately alleged scienter for 2019 and 2020, the Court explicitly distinguished Plaintiffs' allegations for that period, finding "the allegations pertaining to 2019 and 2020 *are different*" because the SAC "alleges that by then, defendants, in fact, *knew* about the scheme." Order at 17, 18. The Court then supported its findings with detailed evidence from the SAC, finding "[Defendants] *knowledge* is evidenced by their own internal investigation and subsequent report and the Xi lawsuit. By 2019, LVS was aware of the Xi lawsuit[.]" *Id.*

Unhappy with this outcome, Defendants seek reconsideration of the Court's Order on grounds that blatantly misstate the Order and criticize the Court for making findings it never made. Defendants accuse the Court of finding "mere access to information is enough" to allege scienter. Motion at 1 ("The Court cited *Metzler* for the proposition that mere access to information is enough."). But the Court found no such thing. Rather, the Court found scienter under the "knowledge" prong of scienter. Order at 17 ("[Defendants] *knowledge* is evidenced by their own internal investigation and subsequent report and the Xi lawsuit. By 2019, LVS was aware of the Xi lawsuit[.]") (emphasis added). *See e.g., Gruber v. Gilbertson*, 2018 U.S. Dist. LEXIS 45677, at *40 (S.D.N.Y. Mar. 20, 2018) ("the revelations unearthed by the internal investigation decisively swing the element of scienter in [plaintiff's] favor [...] the Officer and Director Defendants presumably had received the results of the internal investigation and knew about the [] scheme"); *Palazzolo v. Fiat Chrysler Autos. N.V.*, 2017 U.S. Dist. LEXIS 205572, at

*27 (E.D. Mich. Dec. 14, 2017) ("Defendants' public statement that the allegations in the lawsuit were baseless, where a previous internal investigation revealed at least some of them to be true, supports a finding of scienter.").

Unhappy with this outcome, Defendants seek reconsideration of the Court's Order on grounds that blatantly misstate the Order and criticize the Court for making findings it never made. Defendants accuse the Court of finding "mere access to information is enough" to allege scienter. Motion at 1 ("The Court cited *Metzler* for the proposition that mere access to information is enough."). But the Court found no such thing. Rather, the Court found scienter under the "knowledge" prong of scienter. Order at 17 ("[Defendants] **knowledge** is evidenced by their own internal investigation and subsequent report and the Xi lawsuit. By 2019, LVS was aware of the Xi lawsuit[.]") (emphasis added). *See e.g., Gruber v. Gilbertson*, 2018 U.S. Dist. LEXIS 45677, at *40 (S.D.N.Y. Mar. 20, 2018) ("the revelations unearthed by the internal investigation decisively swing the element of scienter in [plaintiff's] favor […] the Officer and Director Defendants presumably had received the results of the internal investigation and knew about the [] scheme"); *Palazzolo v. Fiat Chrysler Autos. N.V.*, 2017 U.S. Dist. LEXIS 205572, at *27 (E.D. Mich. Dec. 14, 2017) ("Defendants' public statement that the allegations in the lawsuit were baseless, where a previous internal investigation revealed at least some of them to be true, supports a finding of scienter.").

Moreover, the Ninth Circuit's opinion in *Metzler* does not, as Defendants contend, stand for the proposition that a defendant's access to information is never enough to allege scienter. As the court in *Metzler* explained, a defendant's access to information ***can*** be sufficient where the plaintiff alleges "some additional allegation of specific information conveyed to management and related to the fraud" that establishes the defendants were deliberately reckless. *Metzler*, 540 F.3d at 1068. In *Metzler*, the Ninth Circuit held that the plaintiffs failed to allege scienter because, unlike here, the plaintiff in that case only alleged the "***existence*** of Corinthian's complex computer tracking-system" without any details about what negative information relating to the fraud was conveyed in the system that would have alerted defendants their statements were false. *Id.* Thus, the court found that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—***at least absent some additional allegation of specific information conveyed to management and related to the***

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

*fraud*." *Id.* (citation omitted).

Unlike *Metzler*, Plaintiffs allege specific information from specific sources at specific times demonstrating Defendants' knowledge of the Unauthorized Transfer Scheme, including, *inter alia*, filing the Wang Xi lawsuit accusing MBS of improperly transferring his money to other patron accounts filed in 2019 and settled in 2020 for full damages (¶29) and the Hogan Lovells investigation allegedly initiated in late-2017 to investigate unauthorized transfers which, as reported in a September 16, 2020 *Bloomberg* article, concluded that at least 26% of the letters of authorization reviewed bore signatures that appeared similar, and, thus, were likely duplicate signatures used to facilitate unauthorized transfers (¶31). *See also* Order 17 ("[Defendants] knowledge is evidenced by their own internal investigation and subsequent report and the Xi lawsuit. By 2019, LVS was aware of the Xi lawsuit and its disclosure accompanied a decline in LVS's stock price.").

Defendants' Motion further misstates the Order with respect to the scope of Plaintiffs' scienter allegations, falsely claiming that "the Court noted [] Plaintiffs offer only two sources of information as potential evidence of scienter[.]" Motion at 7. But, the Court explicitly stated that it was relying upon *more* than just the investigation and lawsuit when conducting its scienter analysis. Order at 14 ("That said, the SAC goes beyond the investigation and sets forth additional allegations in support of the scheme—including, but not limited to—the Xi lawsuit and information provided by two confidential witnesses."). Moreover, Plaintiffs offered many more than two sources of Defendants' scienter. Section II.B., *supra* (*e.g.*, compliance committee meetings, ongoing regulatory investigations and former employee statements that the Unauthorized Transfer Scheme was well-known and widespread).

Defendants use their misstatement of the Court's Order and Ninth Circuit law as a springboard for re-arguing a number issues they previously raised in the Motion to Dismiss. For example, Defendants contend "the Hogan Lovells investigation and report do not establish scienter" because the investigation "did not uncover any evidence" of unauthorized transfers and the SAC does not allege the report was "linked to any Individual Defendant." Motion at 3, 7; MTD Br. at 31-32.[3] Not so. Plaintiffs allege the

---

[3] Defendants' cases, *Police Ret. Sys. of St. Louis v. Intuitive Surgical*, 759 F.3d 1051, 1063 (9th Cir. 2014) and *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938 (D. Ariz. 2007) (Motion at 7), are easily distinguished because in those cases, unlike here, plaintiffs' scienter allegations lacked specificity

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

Hogan Lovells investigation reportedly uncovered $275 million of suspicious transfers evidencing the scheme (¶31) and that Defendants were aware of the scheme because they initiated the investigation (¶258) and Bloomberg publicly reported on the results of the investigation in September 2020. ¶¶263-64. Further, Defendants' contention that the Court should dismiss Plaintiffs' 2019 and 2020 misstatements on the same basis it dismissed misstatements in 2016 through 2018 (Motion at 7) ignores the Court's holding that 2019 and 2020 "are different" because Defendants knew about "their own internal investigation" and there were subsequent "news reports" disclosing the results of the Hogan Lovells investigation (with Defendant CEO Adelson's name in the headline): "***Adelson's*** Singapore Casino Hires Law Firm to Probe $1 Billion Transfers." ¶258; Order at 17.[4]

Second, Defendants argue, as they did in the MTD, that the filing of the Wang lawsuit "does not show scienter" because "no other patron has alleged unauthorized transfers" and the Casino Regulatory Authority ("CRA") "concluded that MBS did not breach any regulatory requirements." Motion at 8; MTD Br. at 22, 33, 35. Defendants' argument, which is predicated on injecting new facts outside the pleadings and lacks evidentiary support, is contradicted by the sheer volume of alleged unauthorized transfers reported in the Hogan Lovells investigation demonstrating other patrons likely did complain, even if they may not have filed a costly lawsuit. In fact, "Defendants' [own MTD] exhibit suggests MBS ***did*** receive patron complaints." ECF 95 at 29 ("December 2020 *Bloomberg* article referring to 'Wang's suit ***and similar ones***'").[5]

---

regarding what the reports revealed and who learned that information. Here, Defendants knew of the unauthorized transfer scheme and internal control weaknesses from specific investigations they instituted that yielded detailed information, and from lawsuits against Defendants that alleged unauthorized transfers of patron funds. Order at 17.

[4] Defendants' cases concerning knowledge of internal investigations (Motion at 7) are distinguishable because they all involve investigations by outside regulators, whereas the Hogan Lovells investigation here was initiated internally by Defendants.

[5] Defendants' reliance on *Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1053 (N.D. Cal. 2020) and *Welgus v. TriNet Grp.*, Inc., 2017 WL 6466264, at *24 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) for the proposition that "one-off allegation[s]" of wrongdoing are insufficient to support scienter (Motion at 8) is misplaced. In *Higgins*, unlike here, plaintiff only alleged "one instance of actual off-label marketing[.]" *Higgins*, 443 F.Supp.3d at 1050. In *Welgus*, the court refused to credit allegations of one-time claims because they lacked specificity. Plaintiffs here, on the other hand, allege a years-long scheme that involved more than 3,000 transfers, totaling SGD $1.4 billion, 26% of which appeared fraudulent by Defendants' own investigation and the Wang Xi lawsuit, alone, alleged 22 unauthorized transfers totaling SGD $9.1 million. *Welgus*, 2017 WL 6466264, at *9.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

Moreover, the CRA's conclusions are inapposite because the CRA was not reviewing the lawsuit for compliance with LVS's internal credit lending and internal control policies; it was, as Defendants admit, reviewing for compliance with "regulatory requirements." Notably, Defendants cherry-pick certain information and conveniently ignore that the CRA investigation concluded that "there were ***weaknesses in MBS's casino control measures pertaining to fund transfers***" and, thus, the CRA "had directed MBS to strengthen its control measures[.]"  ¶¶260-61. Finally, Defendants conflate the subject allegations contained in the Wang Xi lawsuit with the *filing* of the lawsuit. The Court correctly made this distinction in finding the allegations in 2019 and 2020 "are different" because there were news reports about the filing of the suit. Order at 17-18. Further, Defendants had actual knowledge of a lawsuit that was filed against them, where Defendants were presumably served with the complaint and necessarily would have needed to authorize counsel to appear on their behalf and negotiate a settlement that Defendants ultimately approved.

Third, Defendants claim the fact that "no regulatory body has taken action" undermines scienter. Motion at 8. But Defendants made these arguments before (MTD Br. At 32) and, as Plaintiffs pointed out, the lack of regulatory action does not undercut scienter because the investigations are still ongoing.

Finally, Defendants argue that LVS's introduction of new internal control measures in April 2018 cuts against scienter. Motion at 8. But the fact MBS introduced new internal controls does not mean those controls were implemented or followed. In fact, the evidence shows they were not. In 2020, Bloomberg reported that the CRA found LVS had "weaknesses" in its internal controls, thus, LVS employed a second law firm, Davinder Singh, to conduct a second internal investigation. ¶¶258-260.

In sum, considering all reasonable inferences in Plaintiffs' favor, the Court properly found the SAC alleged scienter through Defendants' knowledge of the Unauthorized Transfer Scheme. Plaintiffs, however, also sufficiently allege scienter under a recklessness standard by demonstrating Defendants had access to detailed public news reports, the Hogan Lovells investigative report, and the Wang Xi lawsuit, among other alleged sources, discussing, in detail, the Unauthorized Transfer Scheme.[6] The

---

[6] Defendants cite *Sneed v. AcelRx Pharms., Inc.*, 2023 WL 4412164, at *9 (N.D. Cal. July 7, 2023) for the proposition that access to information is insufficient to show scienter. In *Sneed*, no allegations showed defendants were aware of violations of branding regulations arising from how promotional

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

Court should reject Defendants' attempt at a re-do and decline their invitation to consider evidence outside the SAC or make factual findings in Defendants' favor at the pleading stage.

### 2. The Court Properly Found Plaintiffs Adequately Alleged Loss Causation

Defendants do not dispute that the Court correctly cited and applied the proper legal standard for pleading loss causation. Rather, Defendants' sole argument is that the Court "made an error of law in declining to take judicial notice" of Defendants' Exhibits 30 and 31, which Defendants say shows Plaintiffs failed to allege loss causation. Motion at 9-10. Not so.

In its Order, the Court correctly declined to take judicial notice of Exhibit 30 and 31, finding those exhibits do "not qualify under any exception" to the judicial notice doctrine. Order at 6, fn. 4. Defendants represent that Exhibit 31 is a chart compiling historical stock price information for two of LVS's purported competitors (Wynn and MGM), as well as the Dow Jones U.S. Gambling Index, for Defendants' hand-selected dates of September 3, 2019 through December 31, 2020. ECF 93-5. However, Wynn and MGM are not parties to this litigation and the SAC nowhere even mentions them or the Dow Jones U.S. Gambling Index. Thus, Exhibit 31 is, in no way, incorporated by reference into the SAC. Moreover, Defendants may not inject new facts for the sole, improper purpose of disputing Plaintiff' well-pled allegations. Thus, the Court correctly found Exhibit 31 is not incorporated by reference nor does it qualify for any judicial notice exception. Order at 6, fn. 4; *see also Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).

While historical stock prices may be the subject of judicial notice, Exhibit 30 does not fall under any exception, as the Court correctly found, because the data cannot be considered for the purpose for which Defendants offer it at the pleading stage—to refute Plaintiffs' well-pled loss causation allegations and to create factual disputes. The Ninth Circuit has made clear that "a court cannot take judicial notice of disputed facts." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Documents,

---

materials were used, only that they were aware of the promotional materials. Unlike *Sneed*, in this case, Defendants were aware of the internal control weaknesses and unauthorized transfer scheme at issue. In *Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *3-4 (D. Ariz. June 23, 2023), the complaint failed to allege any specifics as to what information was learned and how it was learned. Unlike *Palm Harbor*, in this case, Plaintiffs allege that Defendants knew details of the internal control weaknesses and the unauthorized transfer schemes through their own investigation and the Wang Xi lawsuit that was filed against them.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

such as Exhibit 30, that are "subject to varying interpretations[] and [where] there is a reasonable dispute as to what [they] establish[]," are, therefore, not subject to judicial notice. *Id*. at 1000. Thus, the Court did not commit legal error in declining to take judicial notice of Exhibits 30 and 31.

In its Order, the Court specifically addressed the loss causation arguments Defendants raised in their Motion to Dismiss—the same ones they rehash here—and properly found that Plaintiffs adequately alleged loss causation. Order at 18. Relying on binding Ninth Circuit precedent, this Court found loss causation is sufficiently pled where, as here, a complaint alleges a meaningful stock drop following an allegedly corrective disclosure or event. *Las Vegas Sands*, 2023 WL 5052738, at *9 n.8  citing *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 753 (9th Cir. 2018); *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (loss causation sufficiently pled when share price fell 22% and never recovered).

Nevertheless, Defendants recycle the same arguments made in the MTD, and even cite the same legal authority. MTD at 36-40. As set forth in Plaintiffs' opposition, Defendants' arguments lack merit because they misstate the facts and improperly ask the Court to make factual findings at the pleading stage. First, Defendants' purposeful mischaracterization of the SAC (Motion at 11) claiming that LVS's stock price purportedly increased on four of the corrective disclosure dates is simply false and contradicted by Defendants' own Exhibit 30, which shows, as Plaintiffs allege in the SAC, that LVS's stock price *declined* on all but one of the alleged corrective disclosure dates. ¶¶338-46. And on that date, LVS performed worse than its peers in response to negative information disclosed to the market. ¶341. Second, Defendants' criticism that the alleged stock price drops are too small to be meaningful (Motion at 11) is an improper factual dispute, prior to expert discovery and analysis, not properly decided on a motion to dismiss. *See, e.g., In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (holding that "[s]o long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate.").

Finally, Defendants' fault Plaintiffs for not explaining the stock price movement of other, unrelated companies and Defendants' cherry-picked market indices as compared to LVS. Again, these are factual disputes that require expert analysis not appropriately decided on a motion to dismiss. *In re Zynga Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 38722, at *23 (N.D. Cal. Mar. 25, 2015) (finding loss

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

causation was adequately pleaded despite defendants' contention that losses were caused by factors other than the alleged corrective disclosures). As this this Court properly found, at the pleading stage, the "central inquiry is whether a plaintiff's loss was created by 'the very facts about which the defendant lied'" and Plaintiffs satisfy that standard. Order at 18, fn 8.

Defendants' attempt to relitigate these settled issues is nothing more than an improper attempt to get another bite of the apple and should be disregarded. *See e.g.*, *W. Cab Co.*, 2020 WL 2462900, at *3  ("motions for reconsideration are not vehicles for raising arguments that should have been presented in the underlying motion practice").

## C. Defendants' Motion for an Order Certifying an Interlocutory Appeal Should Be Denied

### 1. Standard of Review

Interlocutory appeal of a non-final order pursuant to 28 U.S.C. § 1292(b) is an extraordinary procedure that is only appropriate in "exceptional" circumstances. *Safeco Ins. Co. of Am. v. Air Vent, Inc.*, 2023 U.S. Dist. LEXIS 40238, at *5 (D. Nev. Jan. 25, 2023) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). To certify an order for appeal, a district court "must determine that the order meets the three requirements outlined in § 1292(b): (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate termination of the litigation." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citing *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)) (quotations omitted). As discussed below, Defendants do not satisfy any of the three requirements.

### 2. Defendants' Motion for Certification for Appeal Should Be Denied Because Defendants Fail to Identify Any Controlling Question of Law

"A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *Int'l Longshore & Warehouse Union*, 22 F.4th 1125 at 1130  (citations and quotations omitted). Moreover, "in the interlocutory-appeal context, a question of law means a 'pure question of law'—not a mixed question of law and fact." *Safeco*, 2023 U.S. Dist. LEXIS 40238, at *6. Additionally, a motion that "merely disagrees with the court's application of law to fact" or "merely challenges the factual basis for the finding […] rather than raising any disputed or

ambiguous question of law" does not raise the prerequisite controlling question of law. *Thomas Weisel Ptnrs. LLC v. BNP Paribas*, 2009 U.S. Dist. LEXIS 592, at *11 (N.D. Cal. Jan. 5, 2009).

Yet, that is exactly what Defendants seek here—interlocutory review of the Court's ***factual findings***. First, Defendants ask this Court to certify for appeal the question of "whether allegations about the Individual Defendants' 'access to information' from the Hogan Lovells investigation and the Wang Xi lawsuit are sufficient to show scienter under the PSLRA" (Motion at 14). While a defendant's access to information can be sufficient to plead scienter (Section III.B., *supra*), that is irrelevant here because the Court did not rely upon the Defendants' "access to information" in finding Plaintiffs adequately alleged scienter for 2019 and 2020. Rather, the Court explicitly found "the SAC sufficiently alleges that ***defendants knew*** of the transfer scheme and the deficiencies in its internal controls[,]" Order at 18. Defendants do not dispute that actual knowledge is sufficient to show scienter. Rather, they disagree with the Court's *interpretation of the facts* as showing Defendants' knowledge.

*Safeco* is instructive. In *Safeco*, the court denied the defendants' motion to certify an order for appeal because the analysis "rested on a nuanced application of the facts under well-settled principles" of law, explaining that the defendant's "framing of the purported legal issue" and disputes of fact raised in the briefing demonstrated that defendant was "attempt[ing] to shoehorn factual issues into legal ones." *Id*. at 6-7. Here, like in *Safeco*, Defendants' arguments rest on disputes of fact.[7]

Defendants' second purported "question of law" is "whether the stock price information in Exhibits 30 and 31 is judicially noticeable and warrants dismissal for failure to allege loss causation." Motion at 14. Much like the Defendants' first purported question of law, the second is a dispute of fact disguised as a legal question. At the heart of Defendants' argument is a factual dispute over what caused LVS' stock price to fall: was the stock price decline caused by the corrective information or did the stock price merely follow the industry? Defendants seek judicial notice of Exhibits 30 and 31 to argue that the reason for the decline in LVS' stock price on certain days was the result of LVS' peers in the industry, not because the market was responding to corrective information. This is a *purely* factual

---

[7] Unlike *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687 (9th Cir. 2011) where interlocutory appeal was granted because the court found there was "inadequate precedent squarely on point," Defendants' here concede that the relevant, controlling authorities "squarely hold" in their favor. Motion at 14.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

argument, and it seeks to usurp the Court's earlier determination that the SAC adequately alleged the corrective information "resulted in [a] drop in the LVS stock price." Order at 17.

District courts typically reject requests to certify for interlocutory review questions that, as here, are nothing more than challenges to the complaint's sufficiency—a challenge that was already litigated on the motion to dismiss. *See, e.g.*, *Safeco,* 2023 U.S. Dist. LEXIS 40238, at *6; *BNP Paribas*, 2009 U.S. Dist. LEXIS 592, at *12 (rejecting defendants' motion to certify for interlocutory appeal when the defendant "merely disagrees with the court's application of law to fact" and "merely challenges the factual basis for the finding […] rather than raising any disputed or ambiguous question of law."); *Ramirez v. Exxon Mobil Corporation*, No. 3:16-cv-3111-K, at ECF 80 (N.D. Tex. 2018) (denying motion for §1292(b) certification where defendants' §1292(b) motion specifically criticized the Court's application of the facts to the requirements for pleading scienter); *Monroe County Emples. Ret. Sys. v. Southern Co.*, 333 F. Supp. 3d 1315, 1321 (N.D. Ga. 2018) (refusing to certify under §1292(b) the question of "[w]hether this Circuit's requirement that a complaint allege facts supporting a strong inference of scienter for each defendant with respect to each violation requires a plaintiff to plead scienter as to each allegedly false or misleading statement."). The same result should apply here.

### 3. Defendants' Motion Should Be Denied Because It Does Not Present Novel Legal Issues

The "substantial grounds" prong is satisfied when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Int'l Longshore & Warehouse Union*, 22 F.4th at 1130-31  (citing *Reese*, 643 F.3d at 688). For example, this prong is satisfied if "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id*. (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).

Defendants do not even seek to satisfy this requirement in their Motion and fail to identify any novel, foreign, or complicated legal issues or difficult questions of first impression, as required under *ICTSI*. Instead, Defendants assert the opposite is true, arguing that "*Metzler* and other controlling authorities **squarely hold**" that access to information is insufficient to plead scienter and that "the Ninth Circuit's decisions in *Metzler* and *Wochos* **squarely hold** that" the stock price information in Exhibits

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

30 and 31 is judicially noticeable and warrants dismissal. Motion at 14. Defendants' assertion that the binding legal authorities on these questions are clear precludes satisfaction of this prong of § 1292(b), and the Court should deny Defendants' motion for this reason.

### 4. Defendants' Motion Should Be Denied Because It Will Not Shorten the Time, Effort, or Expense of the District Court Proceedings

The "materially advance" prong is satisfied when the resolution of the question "may appreciably shorten the time, effort, or expense of conducting" the district court proceedings. *Int'l Longshore & Warehouse Union*, 22 F.4th 1131 (citing *In re Cement*, 673 F.2d at 1027). "And an immediate appeal will not materially advance the ultimate termination of litigation where the appeal might postpone the scheduled trial date." *Williams v. Alameda Cty.*, 2023 U.S. Dist. LEXIS 31528, at *7 (N.D. Cal. Feb. 24, 2023) (citation omitted).

Defendants argue that if the Court certifies the Order for appeal, it *could* result in a dismissal of all remaining claims against the Defendants. Motion at 14. But Defendants' Motion is premised on the false assertion that the Court relied upon an incorrect statement of law—it did not—when finding that the SAC adequately alleged each element of the claims for the misstatements in 2019 and 2020. Order at 18. Accordingly, if the Court were to certify the Order for appeal, the Ninth Circuit likely may affirm the District Court's order or some variation thereof as to one or all Defendants and an appeal will not result in dismissal of the claims.

Further, Defendants' argument that the litigation would be materially advanced is premised on the faulty assumption that a dismissal at this stage would be without leave to amend. Given that the Court's Order gave Plaintiffs leave to amend to cure deficiencies in claims asserted for statements made in the years 2016-2018 (Order at 19), and in light of the liberal provision of leave to amend (see Fed. R. Civ. P. 15), it is premature to assume that a dismissal at this juncture would materially advance resolution of this Action by ending it, when in fact it would likely result in Plaintiffs filing a third amended complaint. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Thus, an interlocutory review at this stage will only work to further delay this nearly three-year old case that is only now entering discovery.

In sum, if Defendants fail to satisfy even one of the three required prongs, the Court cannot

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

properly certify the Order for appeal pursuant to 28 U.S.C. § 1292(b) and because none of the prongs have been satisfied, the Court should deny the Motion.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

Dated: September 5, 2023                         Respectfully submitted,

**ALDRICH LAW FIRM, LTD.**

*/s/John P. Aldrich*
John P. Aldrich, Esq.
7866 West Sahara Ave.
Las Vegas NV 89117
Tel.  702.853.5490
Fax.  702.227.1975
Email:  jaldrich@johnaldrichlawfirm.com

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (*Pro Hac Vice*)
Gregory M. Potrepka (To Be Admitted *Pro Hac Vice*)
David C. Jaynes (To Be Admitted *Pro Hac Vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: djaynes@zlk.com

*Counsel for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the email addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

**ALDRICH LAW FIRM, LTD.**

*/s/John P. Aldrich*
John P. Aldrich, Esq.

*Counsel for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
OR FOR AN ORDER CERTIFYING AN INTERLOUTORY APPEAL