Patrick G. Byrne (Nevada Bar #7636)
Morgan Petrelli (Nevada Bar #13221)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone:  702.784.5200
Facsimile:  702.784.5252
Email:  pbyrne@swlaw.com
         mpetrelli@swlaw.com

Walter C. Carlson (*Pro Hac Vice*)
Lawrence P. Fogel (*Pro Hac Vice*)
Caroline A. Wong (*Pro Hac Vice* to be filed)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:  312.853.6892
Facsimile:  312.853.7036
Email:  wcarlson@sidley.com
         lawrence.fogel@sidley.com
         caroline.wong@sidley.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| THE DANIELS FAMILY 2001 REVOCABLE TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LAS VEGAS SANDS CORP., DR. MIRIAM ADELSON, in her capacity as Special Administrator of the estate of SHELDON G. ADELSON, PATRICK DUMONT, and ROBERT G. GOLDSTEIN,<br><br>Defendants. | Case No.: 2:20-cv-01958-CDS-EJY<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION, OR FOR AN ORDER CERTIFYING AN INTERLOCUTORY APPEAL**<br><br>**ORAL ARGUMENT REQUESTED\*** |

*\* Pursuant to Sections III(a)-(b) of this Court's Chamber Practices, Defendants state that oral argument on this Motion will be presented by Caroline A. Wong of Sidley Austin LLP, a 2016 law school graduate with approximately five years' experience as a practicing attorney. Defendants are also filing a notice regarding their request for oral argument contemporaneously herewith.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    PLAINTIFFS' ARGUMENTS REGARDING SCIENTER LACK MERIT. ................... 2

    II.    PUBLIC STOCK PRICE INFORMATION FORECLOSES LOSS CAUSATION......... 7

        A.    The Stock Price Information Is Judicially Noticeable Under Binding Authority. ..... 7

        B.    The Stock Price Information Demonstrates that the SAC Fails to Allege Loss Causation for the 2019 and 2020 Challenged Statements. .......................................... 9

    III.    ALTERNATIVELY, AN INTERLOCUTORY APPEAL IS WARRANTED............... 11

CONCLUSION ..................................................................................................................... 13

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

i

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*In re Atossa Genetics Inc Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017)...................................................................................... 8, 9

*Bajjuri v. Raytheon Techs. Corp.*,
2023 WL 3650554 (D. Ariz. May 25, 2023) ........................................................... 10

*Bajjuri v. Raytheon Techs. Corp.*,
641 F. Supp. 3d 735 (D. Ariz. 2022)..................................................................... 8, 11

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)..................................................................................... 12

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ..................................................................................................... 2

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)................................................................................... 11

*Gruber v. Gilbertson*,
No. 16-CV-9727, 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) .............................. 5

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018).......................................................................................8

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001).......................................................................................8

*Lloyd v. CVB Fin. Corp.*,
No. 10-cv-6256, 2012 WL 12883522 (C.D. Cal. Jan. 12, 2012) ............................... 9

*Metzler Inv. GmbH v. Corinthian Coll., Inc.*,
540 F.3d 1049 (9th Cir. 2008).........................................................................*passim*

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014)................................................................................. 9, 11

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
No. 16-CV-12803, 2017 WL 6389573 (E.D. Mich. Dec. 14, 2017)........................... 5

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021)..................................................................................... 6

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008)..................................................................................... 11

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

*Safeco Ins. Co. of Am. v. Air Vent, Inc.*,
No. 20-CV-1579, 2023 WL 2414630 (D. Nev. Jan. 25, 2023) ........................................ 11, 12

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015) ................................................................................. 8

*SEC v. Global Exp. Capital Real Estate Inv. Fund*,
289 F. App'x 183 (9th Cir. 2008) ......................................................................................... 4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ......................................................................................................... 6, 7

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) .......................................................................................... 8, 10

**Statutes**

15 U.S.C. § 78u-4(b)(4) ...................................................................................................... 1

28 U.S.C. § 1292(b) .......................................................................................................... 12

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

**INTRODUCTION**

Plaintiffs' Opposition (ECF No. 113, "Opp.") fails to engage with the key arguments in Defendants' Motion for Reconsideration (ECF No. 109, "Motion" or "Mot."). Instead, the Opposition attempts to cast aspersions, deriding the Motion as merely seeking a "second bite at the apple" and as proceeding on a "theory that this Court's legal acumen is lacking." Opp. at 5. Those aspersions are untrue and unfounded. As Defendants acknowledged from the outset, Defendants are "mindful that motions for reconsideration should be brought only in limited circumstances." Mot. at 1. Defendants respectfully submit that reconsideration is warranted here, given two key legal issues that the Court's Order (ECF No. 108, the "Order") brought to the fore.

First, as explained in Defendants' Motion, the Order articulated and applied an incorrect test for scienter, by holding that allegations about "mere access to information" suffice to support a strong inference of scienter under the PSLRA. Mot. at 5-6. Plaintiffs argue that allegations about "access to information" could be sufficient, and that in any event the Order did not rely on the "access" prong of the test it articulated. *See* Opp. at 7-9. But Plaintiffs' argument fails to engage with the substance and reasoning of this Court's Order as well as the key Ninth Circuit authority, *Metzler Investment GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008). Under *Metzler*, reconsideration is warranted and the Second Amended Complaint (ECF No. 77, "SAC") should be dismissed in its entirety.

Second, Ninth Circuit authority holds that this Court should take judicial notice of the publicly available stock price information in Exhibits 30 and 31 to Defendants' motion to dismiss. Mot. at 9-13. Plaintiffs do not—and cannot—dispute the accuracy of this stock price information. Instead, they dispute only the *legal consequences* this information has on their ability to plead loss causation. Opp. at 12-13. Plaintiffs' disagreement over that legal issue does not mean the stock price information can be disregarded. Indeed, the Ninth Circuit and other courts have routinely taken judicial notice of stock price information, including in granting motions to dismiss claims under the PSLRA.

This Court should likewise dismiss the claims for failure to allege loss causation. The reason why the PSLRA requires plaintiffs to show loss causation (*see* 15 U.S.C. § 78u-4(b)(4)) is

to ensure that companies are not exposed to liability when the decline in a stock's price was caused not by some fraudulent statement, but instead by some other adverse market event unrelated to the alleged fraud. Put differently, the loss causation requirement is designed "not to provide investors with broad insurance against market losses," but instead "to protect them against those economic losses that misrepresentations *actually cause.*" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (emphasis added). Plaintiffs try to circumvent that requirement: they claim there were eight stock price declines over a 12-month period that sum to a total of $10, and they claim to seek the entire amount. SAC ¶¶ 335–48; Opp. at 3. But the stock price information in Exhibits 30 and 31 shows that Plaintiffs will not be able to prove loss causation for any of their eight alleged corrective disclosure dates. Allowing Plaintiffs to proceed with their claims "would bring about harm of the very sort" that the PSLRA aims to avoid. *Dura*, 544 U.S. at 347.

Defendants respectfully request that the Court grant their Motion.

## ARGUMENT

## I.    PLAINTIFFS' ARGUMENTS REGARDING SCIENTER LACK MERIT.

As explained in Defendants' Motion, the Order erred as a matter of law in holding that mere "access to information" is sufficient to support a strong inference of scienter under the PSLRA. Mot. at 5-6 (citing Order at 18). Plaintiffs argue that the Court should ignore this error because, according to them, the Order "found scienter under the 'knowledge' prong," not under the "access to information" prong of its articulated test. Opp. at 7. Plaintiffs go so far as accusing Defendants of "blatantly misstat[ing]" the Order. *Id.* Plaintiffs are incorrect. Understanding which prong the Order relied on requires analysis of the Order's reasoning—analysis that Plaintiffs refuse to engage in. And that analysis makes clear that the Order did rely on the "access to information" prong. Indeed, that is the distinction the Order made between its holding as to the 2016–2018 challenged statements and its holding as to the 2019–2020 statements.

The Court articulated its two-prong test for scienter on page 18 of the Order, as follows:

> [T]o plead a strong inference of scienter, the complaint must set forth particularized facts revealing that the individual defendants [i] knew the supposedly false statements challenged by the plaintiffs were false or misleading when made or [ii] had *access to information establishing that the individual defendants were deliberately reckless* in allowing the false statements to be made.

2

Order at 18 (emphasis added) (citing *Metzler*, 540 F.3d at 1068). The Order also held that "deliberate recklessness" is sufficient to show what was "known" to Defendants:

> [R]ecklessness is sufficient to satisfy the scienter requirement. . . . Reckless conduct has also been described as conduct that demonstrates "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either ***known*** to the defendant or is so obvious that the actor ***must have been aware*** of it."

*Id.* (quoting *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990) (pre-PSLRA)).

The Order went on to conclude that "defendants, in fact, *knew* about the scheme" by 2019 and 2020, and that their "*knowledge* is evidenced by their own internal investigation and subsequent report and the Xi lawsuit." Opp. at 7 (quoting and adding emphasis to Order at 17). But these references to "knowledge" do not suggest the Court was relying on the actual-knowledge prong of its test, given its holding that "access to information" can show "deliberate recklessness" and that deliberate recklessness in turn shows what was "known" to Defendants. Order at 17.

Review of the Order's holding regarding the 2016–2018 challenged statements confirms that it relied on the "access to information" prong of its articulated test with regard to the 2019–2020 challenged statements. In particular, the Court concluded that the SAC failed to allege scienter for the 2016–2018 statements because "there is no information about precisely *when* or *which* defendants learned about the scheme"—*i.e.*, there were no allegations about the Individual Defendants' actual knowledge for those years. *Id.* at 16 (emphasis in original). The same is true for 2019 and 2020: there are no allegations in the SAC showing "precisely *when* or *which* defendants learned about the scheme" in 2019 and 2020. *Id.* at 16-18.

Rather, the Court concluded that what is "different" about 2019 and 2020 (*id.* at 17) is that information about the alleged scheme was *available* to Defendants in those years. The Court noted that by that time, the results of the Hogan Lovells investigation were "made known," "LVS was aware of the Xi lawsuit," and "there were news reports regarding the Xi lawsuit and the transfer scheme." *Id.* at 16-17. Like with the 2016-2018 statements, none of those points shows any direct information about any Individual Defendant's actual knowledge, including "when" or "which" Defendants allegedly learned about the Xi lawsuit or the Hogan Lovells investigation.

3

Instead, the Court necessarily inferred the Individual Defendants' knowledge based on their presumed access to information regarding the investigation, the Xi lawsuit, and news reports. *Id.*

Plaintiffs do not engage with any of this. Instead, they try to argue that *Metzler* holds "a defendant's access to information can be sufficient" to show scienter. Opp. at 8 (emphasis omitted). But Plaintiffs' argument is wrong and blatantly mischaracterizes *Metzler*. According to Plaintiffs, the key allegations missing in *Metzler* were "details about what negative information relating to the fraud was **conveyed _in the system_** that would have alerted defendants their statements were false." *Id.* (emphasis added). But that is not what *Metzler* says. As the Opposition elsewhere recognizes (*id.* at 8-9), *Metzler* says instead that the key missing link was "specific information **conveyed _to management_** and related to the fraud." *Metzler*, 540 F.3d at 1068 (emphasis added). That is exactly what is missing here too: a specific, particularized link that directly connects information to each Individual Defendant's state of mind.[1]

Plaintiffs also rehash their arguments about Defendants' alleged actual knowledge of the scheme, pointing to allegations regarding (1) the Hogan Lovells investigation and report, (2) the Xi lawsuit, and (3) other allegations, such as "compliance committee meetings, ongoing regulatory investigations[,] and former employee statements." Opp. at 9-11. Those arguments fall far short of the particularized allegations required to plead scienter under the PSLRA.

**Hogan Lovells Investigation and Report.** According to Plaintiffs, "Defendants were aware of the scheme because they initiated the [Hogan Lovells] investigation" and because Bloomberg allegedly reported on the investigation's findings in September 2020. *Id.* at 10. Both assertions are without merit. First, Plaintiffs have absolutely no support for their assertion that Defendants "initiated the [Hogan Lovells] investigation." *Id.* Their only citation is to paragraph 258 of the SAC, but that paragraph cites a September 2020 Bloomberg article discussing the alleged hiring of a *different* law firm in 2020. In other words, it has nothing to do with the Hogan

---

[1] Plaintiffs' citation to *SEC v. Global Express Capital Real Estate Investment Fund*, 289 F. App'x 183 (9th Cir. 2008), only confirms that there must be a specific link to each individual defendant's state of mind. Opp. at 7. There, the court concluded that the evidence at summary judgment showed that one of the individual defendants personally orchestrated the alleged scheme. *Global Exp.*, 289 F. App'x at 187.

4

Lovells investigation. Plaintiffs' second allegation—that Bloomberg reported on the investigation's findings in September 2020—also does not support any inference of scienter, let alone a strong one. That article was published *after* the last alleged misstatement (*see* SAC ¶ 237), and Plaintiffs do not and cannot explain how learning about an investigation *after* making a statement could confer knowledge of falsity at the time the statement was made.

Moreover, not only have Plaintiffs pleaded no particularized facts showing when Defendants learned of the Hogan Lovells investigation, the SAC also fails because knowledge of an investigation does not equate to knowledge of an unauthorized scheme. *See* Mot. at 7-8 (citing cases). Whether the investigation is "internal" or conducted "by outside regulators" (Opp. at 10 n.4) makes no difference.[2] The relevant inquiry is whether there are allegations demonstrating knowledge of the alleged wrongdoing at the time the purported statement is made. There are not.

**The Xi lawsuit.** Plaintiffs do not explain how the Xi lawsuit can show scienter for 2019 and 2020 when, as the Order concluded, the lawsuit only addressed transfers "before the alleged class period." Order at 17. There is no reason to believe that a lawsuit filed in September 2019, *nearly four years after* the alleged transfers in question, could suggest knowledge that an alleged scheme continued to exist through 2019 (much less 2020). Moreover, Plaintiffs' contention that the Individual Defendants must have known of the purported scheme because the lawsuit was "filed against them" (Opp. at 11) is meritless: the Xi complaint, which this Court has judicially noticed, did not name any Individual Defendant, or even mention them (*see* ECF No. 92-5 at 2).

In fact, Plaintiffs' theory regarding the Xi lawsuit is undercut by the SAC's own allegation that Singapore's Casino Regulatory Authority ("CRA") investigated Xi's claims of unauthorized transfers and "concluded that [MBS] did not breach [any regulatory] requirements." SAC ¶ 260. Plaintiffs attempt to dismiss this point, first falsely accusing Defendants of "injecting new facts outside the pleadings." Opp. at 10. But as just explained, this fact is alleged in Plaintiffs' own

---

[2] The two cases Plaintiffs cite relating to investigations (Opp. at 7-8) are not to the contrary. *Gruber v. Gilbertson* had allegations that defendants were *told* about "findings of the internal investigation." No. 16-CV-9727, 2018 WL 1418188, at *12 (S.D.N.Y. Mar. 20, 2018). Similarly, in *Palazzolo v. Fiat Chrysler Autos. N.V.*, plaintiffs alleged that the defendants "confirmed that they were made aware of the allegations" involving the purported scheme. No. 16-CV-12803, 2017 WL 6389573, at *9 (E.D. Mich. Dec. 14, 2017). No similar allegations appear in the SAC.

SAC. Plaintiffs also contend that the CRA's finding is "inapposite" because the CRA undertook a review for "compliance with regulatory requirements" rather than "compliance with LVS's internal credit lending and internal control policies." *Id.* at 11. But Plaintiffs are missing the point, which is that the "holistic[]" assessment required under the PSLRA shows that all the potentially relevant allegations point away from fraudulent intent—not toward it, much less toward a "strong inference" of fraudulent intent. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007). Plaintiffs also conveniently fail to acknowledge the CRA's statement that Marina Bay Sands was "undertak[ing]" efforts to "strengthen its control measures." SAC ¶¶ 30, 261, 286. This fact, too, points away from scienter.

Finally, Plaintiffs suggest that the "sheer volume" of alleged transfers demonstrates that patrons other than Xi "likely did complain." Opp. at 10. That is pure speculation and falls well short of establishing scienter. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1107 (9th Cir. 2021) (rejecting "speculative" theory of scienter). The SAC does not allege other lawsuits, and in the nearly four years since Xi filed his claim, no other patron has alleged a single unauthorized transfer, and no regulator has commenced any proceeding, much less found any transfer to have been unauthorized.

**The Already-Rejected Allegations.** Plaintiffs also point to allegations that the Court already rejected—not just for the challenged statements from 2016 to 2018, but also for the challenged statements from 2019 and 2020. These include allegations regarding "compliance committee meetings, ongoing regulatory investigations[,] and former employee statements." Opp. at 9; *see also* Order at 16-17.[3] The allegations are still deficient.

*       *       *

---

[3] Plaintiffs assert that the Court relied on "*more* than" the Hogan Lovells investigation and report and Xi lawsuit "when conducting its scienter analysis." Opp. at 9 (emphasis in original). Yet rather than cite the Order's scienter analysis, Plaintiffs cite the Order's "law-of-the-case" analysis, which had nothing to do with the legal requirements for alleging scienter and where the Court rejected Plaintiffs' position. *See id*. (citing Order at 14). Moreover, the Order made clear that Plaintiffs' allegations regarding the two confidential witnesses were insufficient to plead scienter because the allegations do not address the "what . . . when, and how" regarding the Individual Defendants' purported awareness of the alleged scheme. Order at 17.

Plaintiffs fail to meet the strict standard for alleging scienter: they do not plead a "strong inference" of scienter that is "cogent and at least as compelling" as any nonfraudulent inference. *Tellabs*, 551 U.S. at 314. Tellingly, in wrapping up their scienter arguments, Plaintiffs misstate the applicable standard. They say that the Court should "consider[] all reasonable inferences in Plaintiffs' favor." Opp. at 11. That standard would apply if this case were governed merely by the plausibility pleading standard of Rule 8. But it is not. It is governed by the "exacting" requirements of the PSLRA—which means that, to evaluate scienter, the Court must engage in a "comparative," "holistic" analysis by weighing competing inferences from the totality of the facts, including inferences that favor Defendants. *Tellabs*, 551 U.S. at 323, 326. In other words, as the Court recognized, the PSLRA requires "*all* reasonable inferences to be drawn from the allegations, including inferences *unfavorable to the plaintiffs*." Order at 18 (emphases added). When all the inferences are weighed under this standard, the SAC fails to plead a strong inference of scienter.

## II.   PUBLIC STOCK PRICE INFORMATION FORECLOSES LOSS CAUSATION.

Plaintiffs do not dispute the accuracy of the stock price information in Exhibits 30 and 31. Nonetheless, they insist that this publicly available information cannot be considered at the motion-to-dismiss stage. That is contrary to controlling authority, which Plaintiffs simply ignore. There is no point in proceeding to discovery when undisputed, publicly available information shows that there is no loss causation.

### A.   The Stock Price Information Is Judicially Noticeable Under Binding Authority.

**Exhibit 30.** Exhibit 30 shows publicly available information regarding LVS's historical stock prices. Mot. at 9. Defendants used this stock price information for their arguments about 7 of the 8 alleged corrective disclosures set forth in the SAC. *Id.* at 11. The Court erred by refusing to take judicial notice of the stock prices shown in this exhibit.

Notably, in their briefing on Defendants' motion to dismiss, Plaintiffs *did not dispute* that the Court may consider this exhibit at this stage. ECF No. 94 at 8. Even now, Plaintiffs admit (as they must) that "historical stock prices may be the subject of judicial notice." Opp. at 12. That is because historical information showing the price of LVS's stock on any given day is not, and

cannot reasonably be, disputed. As the Ninth Circuit has stated time and again, such information is "not subject to reasonable dispute" because it can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017). As a result, courts routinely take judicial notice of historical stock prices. *See, e.g.*, *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021); *Metzler*, 540 F.3d at 1064 n.7; *Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735, 745 (D. Ariz. 2022); *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1231 (C.D. Cal. 2015).[4]

Exhibit 30 is also properly before the Court for an independent reason: it is incorporated by reference into the SAC. Mot. at 10; *see also* ECF No. 100 (Defs.' Reply in Support of Judicial Notice) at 2-3 (citing *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1117 (D. Nev. 2020), and *Habelt v. iRhythm Techs., Inc.*, No. 21-CV-007762022 WL 971580, at *5 (N.D. Cal. Mar. 31, 2022)). By citing and relying on LVS's stock price information (*see, e.g.*, SAC ¶¶ 337, 339, 341), Plaintiffs have put the stock price information at issue and thus incorporated it by reference.

Nevertheless, Plaintiffs contend that these well-established rules do not apply to Exhibit 30 because stock prices cannot be used "to create factual disputes," citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018). Opp. at 12. Plaintiffs' argument, however, conflates the difference between undisputed facts and the legal consequences of those facts, and their reliance on *Khoja* is accordingly off point. Contrary to Plaintiffs' argument, Defendants are not urging the Court to wade into questions of fact; again, Plaintiffs *do not dispute* the accuracy of the stock prices in Exhibit 30.

**Exhibit 31.** To support their arguments about the sole remaining alleged corrective disclosure (*i.e.*, the corrective disclosure on September 16, 2020), Defendants put forth Exhibit 31, which shows publicly available stock price information for LVS and its peer companies. Mot.

---

[4] Plaintiffs contend that *Metzler*'s holding on this issue is "dicta" (Opp. at 5), but *Metzler* is unequivocal: "judicial notice for [defendant's] reported stock price history . . . was proper." *Metzler*, 540 F.3d at 1064 n.7 (citing *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006)). And more importantly, Plaintiffs fail to address the numerous other cases squarely holding that stock price information is judicially noticeable (*see* Mot. at 10-11), nor do they cite even a **single** decision reaching the opposite conclusion. For example, *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) (cited in Opp. at 12), had nothing to do with the stock price information or the PSLRA and is thus irrelevant.

at 12. The Court should have considered this exhibit, too. Like the stock prices for LVS, the stock prices of its peer companies are "not subject to reasonable dispute" and are derived from "sources whose accuracy cannot reasonably be questioned." *Atossa*, 868 F.3d at 799. Plaintiffs do not contend otherwise or challenge the accuracy of the stock prices, nor do they dispute which companies are the relevant peers.

Instead, Plaintiffs contend that Exhibit 31 cannot be considered because the peer companies are "not parties to this litigation" and because "the SAC nowhere even mentions them." Opp. at 12. Plaintiffs do not explain why it matters that the peers are not parties, and they fail to cite a single case finding that point relevant. Moreover, Plaintiffs are flat wrong about their own allegations—the SAC *does* mention LVS's peers. As the Motion explained, the SAC put the peer companies at issue by referring to their stock price information multiple times, and by relying on it for Plaintiffs' loss causation allegations. *See, e.g.*, SAC ¶ 337 (alleging in the context of loss causation that "the price of LVS's shares fell or traded lower than the market and LVS's peers"), ¶ 339 (comparing LVS's stock price "to its peer index" and "to its peers"), ¶ 341 ("LVS stock underperform[ed] compared to its peers . . . [and] compared to the return of its peer index"). Moreover, the SAC expressly referred to LVS's competitor MGM Resorts by name. *Id.* ¶ 32. And Plaintiffs simply ignore *Lloyd v. CVB Financial Corp.*, which holds that because the SAC put the stock price performance of LVS's peers "at issue," the Court may consider it at this stage. No. 10-cv-6256, 2012 WL 12883522, at *13 (C.D. Cal. Jan. 12, 2012).

**B.      The Stock Price Information Demonstrates that the SAC Fails to Allege Loss Causation for the 2019 and 2020 Challenged Statements.**

Plaintiffs do not and cannot dispute that loss causation is subject to a heightened pleading standard. *See* Mot. at 12; *see also Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) ("Rule 9(b) applies to . . . loss causation."). That standard requires loss causation to be pled with particularity, including with specific facts showing that a stock price decline was "proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." Mot. at 12 (quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014)).

The SAC comes nowhere close to meeting this requirement. Rather than grapple with that issue, Plaintiffs argue that the stock prices for the alleged corrective disclosure dates show something they do not. Opp. at 13. They claim that "LVS's stock price *declined* on all but one of the alleged corrective disclosure dates." *Id.* But that is flat wrong. The stock prices in Exhibit 30, the accuracy of which Plaintiffs do not dispute, plainly show that LVS's stock price *increased* on four of the alleged corrective disclosure dates: October 10, 2029; June 4, 2020; June 5, 2020; and June 7, 2020. ECF No. 93-4.[5] Moreover, taking judicial notice of this stock price information would not require the Court to make "factual findings at the pleading stage." Opp. at 13. As explained above, the Ninth Circuit has squarely held that stock price information may be used to dismiss claims based on a failure to allege loss causation. *See*, *e.g.*, *Wochos*, 985 F.3d at 1198.

Exhibit 30 also undisputedly shows that stock price declines on three disclosure dates were small and that the prices fully recovered within a few days. *See* ECF No. 93-4. Plaintiffs attempt to dismiss this argument as "an improper factual dispute," Opp. at 13, but ignore the Ninth Circuit's decision in *Wochos v. Tesla, Inc.* (discussed in Mot. at 11)—a controlling decision that is directly on point and that precludes Plaintiffs' claims for these alleged corrective disclosures. *Wochos* commands that a "quick and sustained price recovery" following a "modest" decline in stock price forecloses loss causation as a matter of law because it means investors did not sustain any actual losses connected to the alleged fraud. *Wochos*, 985 F.3d at 1198; *see also Metzler*, 540 F.3d at 1065 (same conclusion); *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *17 (D. Ariz. May 25, 2023) (explaining that a stock's "behavior after the drop [is] highly relevant" and that a "quick and sustained recovery . . . negate[s] an inference of loss causation").[6]

Finally, the SAC fails to allege loss causation for the remaining alleged corrective disclosure date (*i.e.*, September 16, 2020). *See* Opp. at 12. The stock price information in Exhibit

---

[5] Although not set forth in their Opposition, Plaintiffs have previously used LVS's "residual stock price declines" for the June 2020 dates. ECF No. 95 at 36 n.13, 36-37. But Plaintiffs provide no legal authority to support this novel approach to pleading a "loss" for loss causation.

[6] Plaintiffs cite *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008), but that case did not involve a "rebounding" stock and also pre-dates *Apollo Group*, 774 F.3d at 605, which makes clear that Rule 9(b) applies to pleading loss causation.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

31 shows that rather being caused by fraud, there is "a far more plausible reason for the stock's decline" on that date—namely, "significant issues stemming from the COVID-19 pandemic." *Bajjuri*, 641 F. Supp. 3d at 770 (dismissing claims for failure to allege loss causation). Plaintiffs repeat their argument that the stock price information in Exhibit 31 cannot be considered at this stage. Opp. at 13. But again, they do not dispute the accuracy of this information, or that LVS's stock declined in tandem with its peers. *See id.*

For these reasons, Defendants respectfully request that the Court reconsider its decision with regard to judicial notice of the stock price information and, upon considering that information, dismiss the SAC in its entirety for failure to plead loss causation.

### III.    ALTERNATIVELY, AN INTERLOCUTORY APPEAL IS WARRANTED.

Plaintiffs' central argument in opposing Defendants' request for an order certifying interlocutory appeal is that Defendants are seeking interlocutory review of the Court's "factual findings." *Id*. at 15. Not so.

Plaintiffs' argument fundamentally misunderstands the nature of a court's inquiry at the motion-to-dismiss stage. A ruling on a Rule 12(b)(6) motion to dismiss does not make any "factual findings"; it reaches legal conclusions based on the allegations in the complaint, documents incorporated by reference therein, and judicially noticeable materials. That is why the Ninth Circuit's review of Rule 12(b)(6) decisions—whether on interlocutory appeal or appeal from a final judgment—applies the *de novo* standard of appellate review, rather than the "clear error" or "abuse of discretion" standards that are reserved for review of factual determinations. *See, e.g.*, *Metzler*, 540 F.3d at 1061 (explaining that the court "reviews dismissal under Rule 12(b)(6) *de novo*"); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008) (same).[7]

Plaintiffs' argument about § 1292(b)'s "substantial grounds" prong is also off base. They contend that this prong is not satisfied because Defendants' Motion "does not present novel legal

---

[7] Plaintiffs' reliance on *Safeco Insurance Company of America v. Air Vent, Inc.*, No. 20-CV-1579, 2023 WL 2414630 (D. Nev. Jan. 25, 2023) (Opp. at 16), is misplaced. That decision did not address a Rule 12(b)(6) motion. Instead, the decision ruled on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, which "rested on a nuanced application of the facts." *Id.* at *2. By contrast, the questions here arise from a Rule 12(b)(6) motion and involve pure legal issues: whether mere "access to information" is enough to plead scienter, and whether stock price information is judicially noticeable to evaluate whether loss causation has been pled. Mot. at 14.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

issues." Opp. at 16 (capitalization altered). But the Opposition's examples of novel issues satisfying the "substantial grounds" prong are just that—examples. *See id.* Legal issues can also satisfy that prong when "controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). To be sure, Defendants believe that the controlling legal authorities on scienter and loss causation are clear and settled—and that, for all the reasons explained above and in their Motion, those authorities require reconsideration of the Court's Order. But in the event this Court disagrees, Defendants respectfully submit that the Court's disagreement would itself evince "substantial ground for difference of opinion" on these issues. 28 U.S.C. § 1292(b).

Finally, Plaintiffs ignore the cases cited in the Motion holding that an interlocutory appeal "materially advances" the proceedings if it would potentially dispose of all the claims, as here. *See* Mot. at 14. Plaintiffs boldly claim that they might be able to amend their complaint a third time on remand, and thus that the litigation would continue even if Defendants won on an interlocutory appeal. Opp. at 17. But Plaintiffs do not cite any case holding that such a possibility weighs against an interlocutory appeal. Moreover, Plaintiffs' argument disregards the Court's Order. The Order already allowed Plaintiffs the opportunity to file a third amended complaint by August 30, 2023—and stated that "this will be [Plaintiffs'] final opportunity to amend [their] pleadings." Order at 19. Plaintiffs chose not to amend their complaint. They have no basis to seek yet another opportunity to amend, especially when the Court already told them that further leave would not be granted.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12

**CONCLUSION**

Defendants respectfully request that the Court reconsider the Order and dismiss the SAC in its entirety, or in the alternative, certify the Order for interlocutory appeal.

Dated: September 12, 2023                    SNELL & WILMER, L.L.P.


By: */s/ Patrick Byrne*
    Patrick G. Byrne, Esq.
    Morgan Petrelli, Esq.
    3883 Howard Hughes Parkway, Ste. 1100
    Las Vegas, NV 89169

    Walter C. Carlson (*Pro Hac Vice*)
    Lawrence P. Fogel (*Pro Hac Vice*)
    Caroline A. Wong (*Pro Hac Vice* to be filed)
    SIDLEY AUSTIN LLP
    One South Dearborn Street
    Chicago, IL 60603

    *Attorneys for Defendants*

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

13

## CERTIFICATE OF SERVICE

On September 12, 2023, I served the foregoing document on all parties appearing in this case when filing said document through the court's PACER system with automatic e-service on all persons who have registered for e-service on PACER for this case.


/s/ Lyndsey Luxford
An employee of Snell & Wilmer LLP

4879-6653-8111

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

14