1

————————TRANSCRIBED FROM DIGITAL RECORDING————————

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

THE DANIELS FAMILY 2001 )
REVOCABLE TRUST, ) Case No. 2:20-cv-01958-CDS-EJY
Individually and On Behalf )
of All Others Similarly ) Las Vegas, Nevada
Situated, ) Monday, October 23, 2023
) Courtroom 3D
        Plaintiff, )
) Motion Hearing *via Zoom*
        vs. )
) **C E R T I F I E D   C O P Y**
LAS VEGAS SANDS CORP., )
SHELDON G. ADELSON, and )
PATRICK DUMONT, )
)
        Defendants. )
)
_____ )

TRANSCRIPT OF **ZOOM** PROCEEDINGS

BEFORE THE HONORABLE ELAYNA J. YOUCHAH,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:                    See next page

DIGITALLY RECORDED:             Liberty Court Recorder (LCR)
                                10:36 a.m. - 11:19 a.m.

RECORDED BY:                    E. Garcia

TRANSCRIBED BY:                 Samantha N. McNett
                                Samantha_McNett@nvd.uscourts.gov

Proceedings recorded by electronic sound recording; transcript produced by machine shorthand and computer-aided transcription.

TRANSCRIBED FROM DIGITAL RECORDING

APPEARANCES:

For the Plaintiff:

**SHANNON L. HOPKINS, ESQ.**
**GREGORY M. POTREPKA, ESQ.**
**DAVID C. JAYNES, ESQ.**
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
203-992-4523

-AND-

**JONATHAN PARK, ESQ.**
POMERANTZ, LLP
600 Third Avenue, Floor 20
New York, New York 10016
212-661-1100

For the Defendants:

**PATRICK G. BYRNE, ESQ.**
**MORGAN T. PETRELLI, ESQ.**
SNELL & WILMER
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

-AND-

**LAWRENCE FOGEL, ESQ.**
**WALTER CARLSON, ESQ.**
**CAROLINE WONG, ESQ.**
SIDLEY AUSTIN, LLP
1 South Dearborn
Chicago, Illinois 60603
312-853-6892

* * *

LAS VEGAS, NEVADA; MONDAY, OCTOBER 23, 2023; 10:36 A.M.

--oOo--

P R O C E E D I N G S

THE COURTROOM ADMINISTRATOR:  This is time set in the case of 2:20-cv-1958-CDS-EJY, The Daniels Family 2001 Revocable Trust versus Las Vegas Sands Corp.

Plaintiff's counsel, please enter your appearance for the record.

MS. HOPKINS:  Good morning, your Honor.  This is Shannon Hopkins with Levi & Korsinksy for the plaintiffs.

MR. POTREPKA:  Good morning, your Honor.  This is Greg Potrepka from Levi & Korsinksy on behalf of the plaintiffs.

MR. JAYNES:  This is David Jaynes, your Honor -- good morning -- with Levi & Korsinksy for the plaintiffs.

MR. PARK:  And good morning, your Honor.  This is Jonathan Park of Pomerantz, LLP, also for the plaintiffs.  And I'll note that my pro hac vice application has not yet been filed, but it will be done promptly.

THE COURT:  Thank you.

THE COURTROOM ADMINISTRATOR:  Defendant's counsel, please enter --

MR. BURNS:  Good morning, your Honor.

THE COURTROOM ADMINISTRATOR:  -- your appearance.

MR. BURNS:  Oh, I'm sorry, your Honor.  Good morning.  It's Patrick Byrne, and with me is Morgan Petrelli from the law

TRANSCRIBED FROM DIGITAL RECORDING

firm of Snell and Wilmer on behalf of the defendants.

With me as lead counsel from the law firm of Sidley Austin -- and as I look as the pictures, we've got Walter Carlson, Lawrence Fogel, and Caroline Wong.  And they'll be taking lead, your Honor.

THE COURT:  Okay.  Thank you, everyone.

UNIDENTIFIED SPEAKER:  Good morning, your Honor.

UNIDENTIFIED SPEAKER:  Good morning.

THE COURT:  So I have defendant's motion for the Rule 16 pretrial conference, an order directing the parties to meet and confer regarding the scheduling conference -- or scheduling ordering, rather, and, of course, the opposition.  And these were briefed submissions.

I did go into Westlaw, pulled up the primary cases cited by the parties:  Powers, which is a 1997 Southern District of California case and then the LeapFrog decision, which is 2017 from the Northern District of California.  I found one other case in the District of -- Northern District of Illinois from 2018.

It is remarkable how little there is out there discussing this issue.  There's a great deal talking about successive motions to dismiss and whether the PSLRA automatic stay applies to subsequent motions to dismiss, but there is virtually nothing about a motion for reconsideration other than what was cited in one case that I found.

5

TRANSCRIBED FROM DIGITAL RECORDING

There are times I found where courts mention the words "motion to reconsider," but they are not ruling on whether the stay applies to a motion to reconsider, often distinguishing a motion to reconsider from a motion to dismiss.  But they're not -- it's dicta, and none of those cases -- and there were only a couple are precedent in this -- in this court.  And in fact, neither the Northern District nor the Southern District of California is really precedent that's controlling.

So I'm happy to hear argument.  I am, you know, leaning towards the more recent decision, not the 1997, 20 years ago decision -- maybe not quite 20 years.

But I also -- to the extent that there is any discovery that would be lost as a result of -- in the event that I change my mind based on argument, I -- you know, if there is any discovery that is essential to take before the motion for reconsideration is decided, you can address that, as well.

I just -- I am -- I guess I'll be making law today for the District of Nevada, or at least for me, maybe.  But then -- but that's -- it's really such a wide open question that I -- you know, you don't come across that often these days.

So with that, it was plaintiff's motion so I will let counsel for plaintiff, whoever is leading that.  If it's Ms. Hopkins, let me tell you that you are cutting in and out a bit, so you need to get closer to your microphone, because if I

6

—————TRANSCRIBED FROM DIGITAL RECORDING—————

can't hear you, I can't be persuaded by what you say.

MS. HOPKINS:  Your Honor, I don't want that to happen. So I will try to speak up, as well.

THE COURT:  Thank you.

MS. HOPKINS:  How's this, your Honor?

THE COURT:  Yes, you're not cutting out.  So that's good.  Thank you.

MS. HOPKINS:  Okay.  So as long as I'm not yelling at your Honor, we're good, I think.

THE COURT:  No.

MS. HOPKINS:  So your Honor, we, obviously, agree with the way your Honor was leaning to the most recent case law which has rejected the defendant's argument here that the PSLRA applies to motions for reconsideration.

I would note, your Honor, this case has been pending for three years now with no discovery.

I think the PSLRA is clear.  It says that all discovery is stayed, "during the pendency of any motions to dismiss."  I think we can all agree that this is not a motion to dismiss that's pending.  This is a motion for reconsideration, which is much different.  The standard is higher.  They're highly disfavored and rarely granted.  And I think with the recent line of cases, these arguments have been rejected.

Your Honor mentioned LeapFrog.  And LeapFrog expressed

concerns about successive motions to dismiss, reconsideration motions, and other types of motions that delay the litigation.

So I would submit, your Honor, that the most recent case law is the appropriate law to follow.

In addition, your Honor, I would note that even if your Honor were to consider a discretionary standard here, this case doesn't fall under that either.  Without getting into the motion for reconsideration here, the preliminary peek element would quickly tell that this case -- that this motion is unlikely to succeed and depends on -- to be successful, depends on a rewriting of the Court's order (unintelligible) of the Ninth Circuit precedent and allowing defendants to reargue their prior arguments.

From a practical standpoint, your Honor, this case involves a foreign casino subsidiary of Las Vegas Sands, and foreign countries do not have the same protections (unintelligible) evidence as our country does.  And so the longer this case goes on, the more likely -- more likely evidence could be destroyed.

We have a lot of third party discovery that's going to need to take place in Singapore.  We're going to -- it's going to take considerable time to file motions for (unintelligible).  I'm sure those will be opposed.  But all this is going to take significant time, and the longer this goes on, the more risks there is in not only of delay but destruction of evidence.  And

8

TRANSCRIBED FROM DIGITAL RECORDING

obviously, the longer this goes on -- it's already been three years now -- the witnesses' memories fade, employees of Marina Bay Sands have likely left the company.  It's a lot harder to track them down.

So not only does this case not fall under the PSLRA, a discretionary stay is inappropriate under this preliminary peek analysis as well as the significant prejudice the plaintiffs would suffer the longer this case -- the longer the discovery in this case is delayed.

THE COURT:  Thank you.

All right.  Counsel for defendant?

MR. CARLSON:  Yes, your Honor.  This is Walter Carlson.  Mr. Fogel will be presenting argument for the defendants.

THE COURT:  All right.  Thank you.

MR. FOGEL:  Good morning, your Honor.  Good afternoon from Chicago.

One -- as an initial matter, this is a point of clarification (unintelligible) we are here today on plaintiff's motion for Rule 16 (unintelligible).

THE COURT:  Okay.  Mr. Fogel -- Mr. Fogel, I'm sorry to interrupt you, but you're going to have to turn up your volume or get closer to your microphone.  I -- we do not have what I would consider the best, probably even close to the best technology in the court.  It is the Federal Government.  So

-TRANSCRIBED FROM DIGITAL RECORDING-

it's difficult to hear sometimes.

MR. FOGEL:  Okay.  I'll try again and I'll speak louder.  Is that --

THE COURT:  Yes.

MR. FOGEL:  -- a little bit better?

THE COURT:  Much better.  Thank you.

MR. FOGEL:  Of course.

So as I was starting to say, your Honor, yes, we are here on plaintiff's motion for Rule 16 conference, but as defendants noted in their opposition to that motion, there is also defendant's pending motion for a stay (unintelligible) briefed prior to (unintelligible) motion for Rule 16 conference (unintelligible) briefed and pending with the Court.  And (unintelligible) issues to those that are raised by plaintiff's motion for Rule 16 conference.  And also, we -- the arguments are more fully flushed out within that motion.

So it's defendant's position, as we stated in our opposition to plaintiff's motion, that the motion for stay should be considered and ruled upon at the same time as plaintiff's motion for Rule 16 conference.

But in any event, because the issues are identical, I will be addressing them while responding to plaintiff's motion that is set for argument today.

And it's set forward in both our opposition to plaintiff's motion and in our (unintelligible) stay, there are

10

—————TRANSCRIBED FROM DIGITAL RECORDING—————

two critical reasons why plaintiff's motion should be denied. The first is because of the PSLRA's mandatory automatic stay on discovery, which your Honor referenced, and the second is because of a discretionary stay is appropriate under this Court's inherit power to control its docket in the interest judicial economy committee.

Starting with the first reason, the PSLRA's automatic stay -- and your Honor, I should have mentioned this earlier. Defendant's motion for stay was filed at docket 110 -- (unintelligible) 110, and it seeks a stay of all discovery pending resolution of defendant's motion for consideration, which is at docket 109.  So just wanted to note that if that would be helpful for reference.

But going to the first issue, the PSLRA's (unintelligible) automatic stay on discovery, your Honor referenced the Powers v. Eichen case.  Yes, that is one of the cases defendants cite to.  That is from 1997.

However, defendant's motion for stay also cited additional authority that, likewise, had applied the PSLRA's automatic stay while a motion for reconsideration is pending. That is (unintelligible) case from the Northern District of California.  That is a 2014 case.  We also cited to a 2022 case in the Southern District of New York that also applies (unintelligible) PSLRA's automatic stay.

Granted, those cases are not from the District of

Nevada.  Defendants submit that those cases collectively represent the more precise and accurate reading of the PSLRA's automatic stay.  (Unintelligible) focus behind -- behind the automatic stay.

When Congress enacted the stay, it was for the purpose of trying to avoid the unnecessary imposition of discovery (unintelligible) while a pending motion (unintelligible) petition (unintelligible) allegation was before the Court.

That is exactly where we are, your Honor.  Defendant's motion for reconsideration challenges the legal (unintelligible) of (unintelligible) elements of plaintiff's (unintelligible).  That's the (unintelligible) element and the lost causation element.  And until those arguments are resolved through defendant's motion for reconsideration, challenges to the legal sufficiency of those elements remain open.  And therefore, it is appropriate for the automatic stay to apply.

And that is exactly (unintelligible) that we see in the Powers v. Eichen case and then also in the rulings from the (unintelligible) case and then the Southern District of New York, 2022 case that I referenced earlier.

The courts looked at the (unintelligible) behind the automatic stay and determined that Congress intended for the stay (unintelligible) until the sufficiency of the allegations in the complaint have been fully resolved.  If it was construed more narrowly, as plaintiffs advocate here today, it would not

—————TRANSCRIBED FROM DIGITAL RECORDING—————

serve the purpose behind the PSLRA's automatic stay.

(Unintelligible) know that plaintiff's proposed meeting that an automatic stay should only apply when a motion to dismiss is actually pending (unintelligible) of how other courts have applied the automatic stay (unintelligible). We know, for example -- and this is through case law cited in defendant's motion for the stay -- that the automatic stay is applied even when no motion to dismiss has actually been filed. The (unintelligible) only indicated it may file a motion to dismiss.

It's also been applied to co-defendants who have not filed a motion to dismiss.

As we see in those cases as well as the multiple cases cited by defendant, the weight of authority as well as the purpose behind the PSLRA's automatic stay warrants a stay being applied in the context of a motion for reconsideration.

I want to (unintelligible) briefly, your Honor, the (unintelligible) case which your Honor alluded to and plaintiff's (unintelligible) to in the motion. And I think that case can be distinguished (unintelligible) appropriately distinguished on multiple grounds.

The first thing that the defendants in that case (unintelligible) motion for reconsideration six months after the Court had ruled on the motion to dismiss. And it was after discovery had already taken place. The defendants in that case

—————TRANSCRIBED FROM DIGITAL RECORDING—————

had already produced documents.  And that stands in stark contrast, your Honor, to where we are here today where defendants filed a motion for reconsideration only two weeks after the Court ruled on defendant's motion to dismiss.  And of course, no discovery had taken place.

And I also want to address one of the points that plaintiff's counsel raised that this case has been pending for three years.  And yes, that is true, your Honor.  It has been three years, but I think it's important to put those three years in context.

Plaintiff (unintelligible) filed two amended complaints.  The first complaint -- amended complaint was in 2021 which -- after defendants filed their motion to dismiss.  Approximately a year later, the District Court dismissed the complaint in its entirety.  Thereafter, plaintiffs filed another amended complaint, which defendants moved to dismiss, and the District Court, just recently in August, so approximately another year or so after the motion to dismiss was filed, granted in part and denied in part the motion to dismiss.

So, yes, while there has been some amount of time, but it's not due to any delay on defendant's part.

And on that note, your Honor, I think it's also important to recognize that when passing the PSLRA's automatic stay (unintelligible), Congress recognized that a motion to

—————————— TRANSCRIBED FROM DIGITAL RECORDING ——————————

dismiss may be pending for a lengthy amount of time, but that was one of the balances or considerations (unintelligible) Congress balancing when it considered the potential unnecessary imposition of discovery (unintelligible) on defendants.

And so to help conquer (unintelligible), Congress required defendants to preserve evidence, to issue document holds, and to make sure that discovery -- relevant discovery would be preserved.  And defendants have certainly done that here.  There is no challenge by plaintiffs that we have not satisfied that obligation.

So, your Honor, on that point, I want to transition to the second reason.  It's an independent basis for the Court to deny plaintiff's motion and grant defendant's motion for stay is that there can be no showing of prejudice by plaintiffs if a stay is granted.

Indeed, when defendant filed the motion for stay, the plaintiffs, in their opposition, did not even point to prejudice and made no assertion whatsoever of prejudice.  It's significant, your Honor, because (unintelligible) balance the lack of showing of prejudice against the significant cost of discovery (unintelligible) resources that can be experienced if discovery was allowed to go forward while a (unintelligible) motion for reconsideration (unintelligible) fully briefed and pending before the Court.  And those significant costs that would be (unintelligible) by the Court and by the parties

---TRANSCRIBED FROM DIGITAL RECORDING---

(unintelligible) in this case.

As I stated earlier, Congress specifically recognized the significant (unintelligible) when passing the PLSRA.  And therefore, when you balance those (unintelligible) and that burden that could be experienced (unintelligible) no reason when (unintelligible) motion for reconsideration is pending, we balance that against plaintiff's lack of showing of any prejudice whatsoever, it merits in favor of a discretionary stay and (unintelligible) resolution of the motion for reconsideration.

And your Honor, defendants have cited to authority in their motion to stay as well as their opposition to plaintiff's motion for Rule 16 conference.  And we believe similar circumstances support the granting of the stay (unintelligible) the Court acknowledged the (unintelligible) discovery that could be experienced in class action cases and (unintelligible) was an (unintelligible) case that determined that the balance weighed in favor of a stay.  And we believe the same outcome is appropriate here.

The other factor that courts typically consider the motion, the motion for reconsideration is (unintelligible).

THE COURT:  Mr. Fogel.  Mr. Fogel.

MR. FOGEL:  Yes, your Honor.

THE COURT:  I am not considering the motion for reconsideration.  I don't need an education on what the factors

```
-TRANSCRIBED FROM DIGITAL RECORDING-
```

are.  I understand what they are.

MR. FOGEL:  Yes, your Honor.

THE COURT:  You're talking to somebody who's been practicing for more than 30 years.  Okay?

And you're also cutting in and out, so I have no idea what the name of the cases are that you're referring to in the motion to stay because that motion isn't before me.  So I haven't looked at it because it's not appropriate for me to do so.  The motion to stay requires a preliminary peek of a complaint, but I don't have the motion to stay before me.  So it's not appropriate for me to have reviewed that.  You did not put those citations in your opposition.

So all of the arguments in the motion to stay are not before me either.

I understand the issue of prejudice, but the Court has a tremendous amount of discretion to control its docket and discovery.  So -- and delay is, in and of itself, prejudicial when it's substantial.  Plaintiff did not cause the delay.  It takes the Court a long time to get to motions because of how much work we have.

Try to be focused on issue that's before me today and not on everything that's pending before the Court because I'm not deciding everything before the Court.

MR. FOGEL:  Absolutely, your Honor.  And I apologize (unintelligible) more specifically on (unintelligible) motion

-------- TRANSCRIBED FROM DIGITAL RECORDING --------

for the conference.

And your Honor, the issues there that it's -- plaintiff's motion (unintelligible) one, defendants (unintelligible) respectfully submit (unintelligible) premature until the motion for stay, which I understand is not presently before the Court.

We would submit that plaintiff's motion is premature and, therefore, should be either stayed or deferred or dismissed with prejudice until the motion for stay is ripe and presently before the Court. And so therefore, that is one potential resolution of the motion that's presently before the Court.

But even if the Court was prepared to rule on that motion right now, defendants believe that there is no need to proceed with a Rule 16 conference at this time. For one, defendant's answer has not even been filed. The plaintiff in this case stipulated that defendants do not need to file their answer. And this is a point we made in our opposition to plaintiff's motion for Rule 16 conference. (Unintelligible) November (unintelligible).

So at a minimum, we believe that plaintiff's motion should be -- or any idea of a conference should be deferred until after defendants have an opportunity to file their answer and plaintiffs have an opportunity to review it. In that time, perhaps, a motion for stay would be before the Court or even

18

—————————————TRANSCRIBED FROM DIGITAL RECORDING—————————————

the motion for reconsideration would be (unintelligible).  So that is one potential outcome.

But as for the reasons stated in our opposition to the motion for Rule 16 conference, we also believe that there is no need to proceed with the conference until the motion for reconsideration is ruled upon.  There has been no showing of prejudice.  Any (unintelligible).  And yes, while there has been some delay, that is not a delay caused by defendants either.  We are simply seeking reconsideration on two elements of plaintiff's claim that we believe (unintelligible) ruling on defendant's motion (unintelligible) clearly (unintelligible) federal Ninth Circuit precedent.

(Unintelligible) the Court have an opportunity to rule on that motion for reconsideration before the parties undertake (unintelligible) discovery.

And your Honor, I'll stop there unless your Honor has any specific questions.

THE COURT:  Not at this time.  Thank you, Mr. Fogel.

All right.  Ms. Hopkins, is there anything you wish to tell me more?

MS. HOPKINS:  Your Honor, I'd just like to make a couple of quick points in response.

One of them is with respect to the purpose of PSLRA.  The PSLRA was to prevent undue expense and waste of resources until the Court has determined the sufficiency of the

19

——————TRANSCRIBED FROM DIGITAL RECORDING——————

complaint. Here, the Court has done that. Defendant's reconsideration motion is their view on the Court's order. So I would just like to point that out. That is the purpose of the PLSRA. The Court has determined the sufficiency of the complaint.

Secondly, with respect to discovery, practically speaking, your Honor, as I mentioned before, we're going to need to serve a lot of foreign discovery. So practically speaking, the parties would probably take a couple of weeks to engage -- or to negotiate a schedule.

And to address Mr. Fogel's concern, we're happy to put the Rule 26 disclosures and the RFPs due after their answer, which is less than a month from now, but I don't see any issues that, your Honor.

And then, by the time a lot of this discovery is served (unintelligible) negotiated search protocol (unintelligible) defendants and whatnot, the reconsideration motion will likely be decided anyway. And defendants will not have had to engage significant resources by that time most likely anyway.

So practically speaking, your Honor, the prejudice to the plaintiffs far outweighs that to defendants given this particular situation requires a lot of foreign discovery through the Hague Convention, letters (unintelligible), and things like that.

TRANSCRIBED FROM DIGITAL RECORDING

And as a practicality, it's going to take us some time to negotiate with defendants.  Once we serve RFPs, you get 30 days to respond and object.  (Unintelligible) have to negotiate.

So I think (unintelligible) practical realities of this are important, as well, your Honor.  And I just wanted to point out those couple of things.

THE COURT:  Ms. Hopkins, you said you were agreeing to defer the production of Rule 26 initial disclosures until after the answer?  Is that what you said?  I'm not asking to you explain, but you're all not that clear when you're speaking and it's not because you are mumbling or anything.  It's the system that doesn't allow the clarity that I wish it did.  So I wanted to make sure I understood what you said.

You were saying you were deferring --

MS. HOPKINS:  Yeah.

THE COURT:  -- until after the answer was filed?

MS. HOPKINS:  Right.  So -- yes, your Honor.

The answer is due in less than a month.  And I was saying that it would take us at least two weeks to do a schedule, and at that point, the answer's due in two weeks, so we would be happy to have initial disclosures due (unintelligible) after the answer.

THE COURT:  Was there anything else you were deferring until after the answer?

-TRANSCRIBED FROM DIGITAL RECORDING-

MS. HOPKINS: We're happy to defer the -- the service of our initial requests for production until after the answer, as well.

THE COURT: All right. So for reasons that I -- you know, I do not control --

UNIDENTIFIED SPEAKER: (Unintelligible).

THE COURT: -- and therefore, don't know, the motion to stay discovery, which is often referred to me -- and this case is not referred to me for decision, I suspect, because it will be decided hand-in-hand with the motion for reconsideration because, of course, reconsideration could obviate the need for any discovery or substantially limit it, and I suspect Judge Silva is wanting to decide those things together. But that is merely a guess, counsel. Please understand I haven't spoken to her nor do we ever speak about our cases in -- in specifics or substance for purposes of decisions.

Of course, a motion for reconsideration and a motion to dismiss do not automatically stay discovery. If they did, the rules would say so. You have to substantially -- the Court takes a preliminary peek -- I understand. I've decided many of these -- to determine whether the motion to dismiss is likely to be dispositive of all issues that are pending and whether that -- that motion can be decided without discovery. I have not taken that preliminary peek here because the motion is not

before me.  But I understand the standard.

I also understand the case has been pending for three years.  I understand there was an initial dismissal, a right to amend -- that's not all that unusual -- an amendment, and now another motion to dismiss, a decision on that one that did not dispose of the entire case.

Motions for reconsideration, as stated by counsel for plaintiff, are rarely granted, but I can't say in this case whether it will be or won't be.  I just have no idea whatsoever.  The issue before me is whether discovery should proceed in any manner while all of this is pending.

My reading of the PLSRA is that it is specific on its face.  The Court, unless there is ambiguity with the intent of the statute or the wording in the statute, is to take the statute at face value.  I am not a literalist.  I am not an originalist, but I am somebody who reads a statute and says when a motion for summary -- a motion to dismiss is pending, understands what those words mean.  And there is no motion to dismiss pending at this time.

So discovery should proceed.  That, however, does not mean discovery should proceed wholesale in every respect no holds barred, that sort of thing.  The Court has the authority to manage discovery irrespective of granting the plaintiff's motion for a Rule 16 conference and a scheduling order.

So first, from plaintiff's counsel, what -- what is it

—————————TRANSCRIBED FROM DIGITAL RECORDING—————————

that is essential, that you believe you must do before the motion for reconsideration is decided in order to prevent the prejudice that you identified, which is the passage of time that has been substantial?  Whatever memories have already faded, you can't recover.  But -- but to the extent that there would be something essential that you felt the need to do while the motion for reconsideration and motion to stay remain pending, what would that be?

And I have to tell you, counsel, the likelihood of the motion for reconsideration being decided in the next two or three months, I would guess, is a zero.  You're going wait a lot longer than that.  We are an incredibly overburdened court, and the number of things that are pending at any one time and that are filed on a daily basis is astounding.  And a motion that was filed in August, my guess, would be decided probably sometime before March of next year.  That's how it works.  It's unfortunate.  We wish we could move faster.

So Ms. Hopkins, is there something that you can identify for the Court now that you believe is essential to get started with?

MS. HOPKINS:  Yes, your Honor.  I would say initial disclosures, third party discovery, our initial requests for production and a protective order, and ESI protocol that would relate to any discovery that would be produced including from third parties.

TRANSCRIBED FROM DIGITAL RECORDING

And I would ask that we at least get the ball rolling with defendants on their objections to our requests for production and a search protocol.

THE COURT:  Yeah, that's very broad.  I wanted specifics.  Is there a specific third party?  Are there two or three of them?  Are there specific requests for production?

I'm not suggesting that if I -- allowing discovery to go forward, that you should be propounding a 100 or 150 RFPs to which their -- plaintiffs are -- defendants are going to have to respond.  I'm looking for a much more curtailed, detailed style of initial disclosures at this point -- initial -- well, not initial disclosures.  Poorly-worded.  Initial discovery at this point.

And, perhaps, it's not fair because you haven't thought about it at that level of detail at this point.  And that -- that is -- that is something that I am going to require you to do if you haven't done now.  Because we're not -- we're not just going forward with 40 different third party -- and I use the large number on purpose -- third party subpoenas out of the country.  We're not going forward with 150 RFPs.

We're talking about making sure that the documents and the information that you think is essential to your case is preserved and is in your position so that if the motion for reconsideration is denied, that you are not prejudiced more as a result of passage of time than you have been which is

—TRANSCRIBED FROM DIGITAL RECORDING—

nobody's fault.  Nobody has caused this passage of time.  The Court caused it.  And I understand that.

MS. HOPKINS:  Your Honor, I haven't given full thought to this, so I would ask -- I can tell your Honor -- I can name about three different third parties at the moment, but I would like the opportunity to make sure.  That would be the casino regulatory authority, the parties that have done the investigation into the alleged wrongful conduct (unintelligible) vendors (unintelligible), I think.

And the initial disclosures would be, obviously, useful because we need to understand defendant's view of the -- who has discoverable information.

But I would appreciate it, your Honor, if I could not be held to that.  I understand your Honor's point (unintelligible) to the essential items, but those are what come to mind at the moment.

THE COURT:  All right.  So the Court --

MR. FOGEL:  Your Honor, may I --

THE COURT:  Yes, you can, but -- yes, you can, Mr. Fogel.  One second.

A protective order and an ESI proposal can be worked on by the parties.  That does not require any discovery. So I'm going to allow --

MS. HOPKINS:  Right.  Yes, your Honor.

THE COURT:  So I'm going to allow those two things to

-TRANSCRIBED FROM DIGITAL RECORDING-

move forward.

Initial disclosures, I want to hear from Mr. Fogel because, you know, that can be -- some cases, it can be two pieces of paper, sometimes it can be two million. So I -- you know, I'm a little concerned about what that means.

And then third party, we've got -- we've got a few entities that Ms. Hopkins has identified.

But Mr. Fogel, please -- please go ahead on all of that.

MR. FOGEL:  Yes, your Honor.

I think the -- the most efficient path forward is (unintelligible) schedule (unintelligible) for the parties to (unintelligible).  That is the relief requested by plaintiff's motion, that the parties confer --

THE COURT:  I understand --

MR. FOGEL:  -- so defendants --

THE COURT:  -- but I have more authority than that and I'm trying to -- to short cut another hearing on more disputes around discovery -- initial -- initial discovery, if you will.

MR. FOGEL:  I -- I absolutely understand.  And it's, of course, defendant's (unintelligible) commitment to engage in all proceedings in this case in good faith.

And what we would respectfully request is time for the parties to confer, for us to confer internally, for plaintiff to reflect and confer internally on their side, and then the

-TRANSCRIBED FROM DIGITAL RECORDING-

two parties can get together and discuss and then come back with -- not to come back to the Court but work collaboratively between themselves to hopefully avoid having to come back to the Court. And I think that would probably be the most efficient path forward.

As I understand what the -- unless I misunderstood what the Court was saying, that would be something that would happen after defendants have filed their answer and after plaintiffs have had an opportunity to review defendant's answer. Then the parties could hold a conference and then come back again (unintelligible) collaboratively on what would be the (unintelligible) and appropriate path on discovery.

So that would be defendant's suggestion at this point, your Honor.

THE COURT: Thank you. Mr. Fogel, you agree that the answer is due in approximately a month; is that correct?

MR. FOGEL: It's due November 20th. That's correct, your Honor.

THE COURT: November 20th. Thank you. Somebody said the date before; I didn't hear it.

And you are not intending to seek a further -- I hate putting people on the -- on the -- you know, on the defensive or asking them the reveal strategy.

Let me ask it this way. As of right now, is the intent to file an answer on the 20th of November?

28

—————TRANSCRIBED FROM DIGITAL RECORDING—————

MR. FOGEL:  Yes.  With the (unintelligible) with two caveats.  One, I can't predict everything unforeseeable that might happen, despite by my efforts, and second, what (unintelligible) caveat, as mentioned, we have a motion for stay that I understand is not before your Honor but it's before Judge Silva.  We all know, as you referenced (unintelligible) uncertainty (unintelligible), but if there is a -- a stay is granted before the November 20th deadline, we, of course, will not go forward with filing (unintelligible) on that date.

THE COURT:  Right.  Of course.  Okay.

All right.  So I'm ordering the parties to meet and confer.  They are to select a date for the submission of a protective order, because that will come to me, the date for ESI proposal, which will also come to me, and if it's stipulated to, then you can be generally certain that I'll grant it.

For protective orders, I like to make sure that the parties include any dispute resolution process for inadvertent disclosures or failure to identify something initially as confidential or attorney's eyes only, or however it is, whatever language you -- you -- the parties together decide to use and/or -- you know, for -- generally for the rules of evidence as it applies to disclosure of attorney/client privilege and work-product doctrine.  Because there is now a rule of evidence and lots of case law interpreting that rule of

29

—————————TRANSCRIBED FROM DIGITAL RECORDING—————————

evidence around that inadvertent disclosure.

Then, of course, initial disclosures would be due, as plaintiff has said, after the answer would be due.  The plaintiff said one week.  I will give defendants two weeks after the -- the answer is due.  And, of course, if the answer ends up not to be due because of a stay or some other action by defendants between now and then that would change that date, then the date for -- the due date for the initial disclosures would also be suspended or advanced in any way that is concomitant with the out -- with the change.

If there's a stay, nothing's due.  If the date is advanced for some reason, then the two weeks are advanced likewise.  Right now, that would make the due date for the initial disclosures March -- March -- why am I saying March? -- November -- December 4th, which is -- gives a full week after the Thanksgiving week for those disclosures.

And to the extent that the parties can agree on this, I would highly recommend that all disclosures be done through either Dropbox or some other electronic fashion so that people don't have to mail large numbers of documents to one another.

With respect to third party discovery or any other aspects of discovery including RFPs, interrogatories, requests for admissions, whatever avenues -- depositions you want to go with, the parties are to meet and confer regarding that schedule by or before December 4th as well and present to the

—————TRANSCRIBED FROM DIGITAL RECORDING—————

Court by December 18th either a stipulated discovery plan and scheduling order or each party, in a single document, each party's view of what the discovery plan and scheduling order should be moving forward.

Keeping in mind, Ms. Hopkins, and Mr. Fogel, to the extent that your clients want to do discovery, as well, that what I'm looking for is sort of that essential initial discovery in order to prevent prejudice to either side. Because, you know, it is -- this is for the prevention of prejudice. It's not to get every document, every deposition, every third party. Right?

We're going to -- it's not a phase necessarily, but what I'm talking about is sort of, you know, stacking, if you will, so that with -- the passage of time doesn't continue to prejudice plaintiff merely because the passage of time is prejudicial for all litigation from a plaintiff's perspective. And it can be from defense's perspective too because memories do fade and things are lost accidentally and sometimes accidentally on purpose.

So keep in mind that essential initial discovery pre-decision motion for reconsideration/motion to stay so that can you move forward initially. That's all.

And I am happy to talk about that in greater detail with the parties after they have considered it without briefing. I don't need -- you know, you can put it in a

TRANSCRIBED FROM DIGITAL RECORDING

stipulated -- in a discovery plan and scheduling order with your respective positions.

I don't need -- I don't need briefing on relevance or proportionality. I understand what those two things mean. I could recite them in my sleep. If you put me under and woke me up from anesthesia, probably a reasonable question rather than "Who's president," is, "What does relevance mean and what is proportionality for discovery?" I could answer those questions and you'd know I was fully awake.

So I don't need that kind of briefing. It is only as to the specifics of the things that are requested in dispute that I need to understand why there is a dispute. So plaintiff wants X; defense says, "X is not appropriate at this stage because." That's all I need. And I can move forward.

I'm trying to strike an appropriate balance here that allows the case to inch forward rather than stand still after three years. And I understand that a motion for reconsideration is pending, but I -- I have a -- a duty to the Court and to Judge Silva as well, generally, to keep cases moving as much as possible. And that's what this order is intended to do.

Any questions from you, Ms. Hopkins, on behalf of plaintiff?

MS. HOPKINS: No. Thank you, your Honor.

THE COURT: Mr. Fogel, any questions from you on

—————————TRANSCRIBED FROM DIGITAL RECORDING—————————

behalf of defendant?

MR. FOGEL:  No, your Honor.

THE COURT:  All right.  Again, ECF number 12 -- I'm sorry, 120 -- sorry, everyone.  I'm just making a record here.  ECF number 121 is granted in part as stated on the record.  The transcript of the proceeding is the order of the Court.

We are adjourned.  Thank you, everyone.

(The proceedings concluded at 11:19 a.m.)

* * *


--o0o--

COURT REPORTER'S CERTIFICATE


I, SAMANTHA N. MCNETT, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


Date:  October 30, 2023


/s/ Samantha N. McNett
Samantha McNett, RPR, CRR, CCR